## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CIVIL ACTION NO: 1:20-CV-1072

| | |
|---|---|
| MARTHA HOELZER and all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>THE BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL and RAYMOND FARROW, in his individual and official capacity, BARBARA J. STEPHENSON, in her individual and official capacity, DANIEL LEBOLD, in his individual and official capacity, DAVID ROUTH, in his individual and official capacity, and DEBBIE DIBBERT, in her individual and official capacity,<br><br>Defendants. | **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>**Fed. R. Civ. P. 12(b)(1), 12(b)(2), & 12(b)(6)** |

## Introduction

In February 2019, the University of North Carolina at Chapel Hill terminated Martha Hoelzer because of poor job performance. Hoelzer disagrees. She contends that she was terminated because she requested accommodations under the Americans with Disabilities Act (ADA) and took leave under the Family Medical Leave Act (FMLA) for a concussion she suffered in February 2018.

1

Hoelzer's position overlooks several key facts. UNC-Chapel Hill knew that Hoelzer had a history of concussions. Her February 2018 concussion was her third concussion while working for UNC-Chapel Hill. UNC Global Organization at UNC-Chapel Hill chose to hire Hoelzer, who was working at UNC-Chapel Hill's business school at the time, even though UNC Global knew that Hoelzer suffered a concussion in February 2016. Finally, the entire time that Hoelzer worked at UNC-Chapel Hill, she was provided with every accommodation she requested or a reasonable alternative accommodation.

Regardless of UNC-Chapel Hill's efforts to accommodate Hoelzer, she is now asserting that Defendants violated her due process rights, violated ADA, and violated FMLA. All of these claims fail.

First, the doctrine of sovereign immunity prevents Hoelzer from suing Defendants for alleged due process violations. In addition, even if she could sue Defendants, her claim would be time barred because this lawsuit was filed more than three years after her alleged property interest was taken. Furthermore, Hoelzer does not have a protected property interest in her continued employment because she was an at-will employee.

Second, there is no stand-alone claim for failure to engage in the interactive process. Moreover, the amended complaint demonstrates that UNC-Chapel Hill engaged in the interactive process with Hoelzer to identify

2

and provide her with reasonable accommodations. Additionally, there is no causal link between Hoelzer's request for accommodations and her termination, which occurred 8 months after she last requested an accommodation.

Finally, there is no causal connection between Hoelzer's FMLA leave and her termination. Again, there were 8 months between the time that Hoelzer's FMLA leave ended and her termination.

For these reasons, Hoelzer's amended complaint should be dismissed with prejudice.

## Statement of the Case

On December 1, 2020, Hoelzer filed a complaint against the Board of Governors of the University of North Carolina, UNC-Chapel Hill, Raymond Farrow, Barbara Stephenson, and Daniel Lebold. Compl. p 1; ECF 1. The Individual Defendants were all sued in their individual and official capacities. The complaint asserts five causes of action against all Defendants:

1. Discrimination Based on Disability—Failure to Engage in the Interactive Process;

2. Discrimination Based on Disability—Failure to Accommodate;

3. Retaliation—For Requesting a Reasonable Accommodation Under the ADA;

4. FMLA Violation—Retaliation; and

3

5.      42 U.S.C. § 1983—Deprivation of Due Process.

Compl. pp 25-27.

Twenty-two days later, Hoelzer amended her complaint to add David
Routh and Debbie Dibbert as defendants.  Am. Compl. p 1, ECF 4.  These
individual defendants were also sued in their individual and official
capacities.  The amended complaint includes the same five causes of action.

All Defendants waived service and subsequently requested an
extension of time to file their responsive pleading, making their responsive
pleading due April 15, 2021.  ECF 5-11; Consent Mot. for Extension of Time,
ECF 13.

## Summary of the Facts[1]

### A.      Hoelzer's history of head injuries.

In 2002, Hoelzer was involved in a car accident while working for UNC-
Chapel Hill.   Am. Compl. ¶ 23.  This is when Hoelzer sustained her first
concussion.  Am. Compl. ¶ 22.  Since this accident, Hoelzer has received and
continues to receive workers compensation benefits.  Am. Compl. ¶ 23.

In February 2016, Hoelzer injured her head at home.  Am. Compl. ¶ 28.
Due to this injury, Hoelzer took FMLA leave from February 28, 2016, until

---

[1]      For the motion to dismiss, the facts in Hoelzer's amended complaint are
treated as true.

July 8, 2016, when she returned to work full time.  Am. Compl. ¶¶ 29-30, 47-48.

On April 1, 2016, while working to extend her FMLA leave, Hoelzer identified herself as disabled to UNC-Chapel Hill.  Am. Compl. ¶ 35.  Four days later, she provided additional documentation to UNC-Chapel Hill about her disability.  Am. Compl. ¶ 37.

In April and May of 2016, Hoelzer worked with UNC-Chapel Hill's ADA office on her accommodation requests.  Am. Compl. ¶¶ 43-45.  She returned to work part-time on May 20, 2016, and returned to work full time on July 8, 2016.  Am. Compl. ¶¶ 47-48.

Two years after her 2016 concussion in February 2018, Hoelzer was rear-ended and suffered a third head injury.  Am. Compl. ¶¶ 84-85.  Following this accident, Hoelzer took FMLA leave until April 4, 2018.  Am. Compl. ¶ 87.  On April 5, 2018, she returned to work for four hours a day.  Am. Compl. ¶ 93.  Two months later, she returned to work full time.  Am. Compl. ¶ 96.

Hoelzer's third head injury is the one that gives rise to this lawsuit.

**B.  Hoelzer's employment with UNC Global at UNC-Chapel Hill.**

In December 2015, Hoelzer applied to work for UNC Global Organization at UNC-Chapel Hill.  Am. Compl. ¶ 25.  Hoelzer had one

informal interview for the position before going out on FMLA leave for her February 2016 concussion. Am. Compl. ¶¶ 26-30.

While out on leave, Hoelzer had several formal interviews for the UNC Global position.[2] Am. Compl. ¶¶ 39-41. During these interviews, it was clear that Hoelzer was currently recovering from her 2016 concussion. Am. Compl. ¶ 41. At the end of May 2016, UNC Global offered Hoelzer the position. Am. Compl. ¶ 49. Hoelzer started working for UNC Global at the end of August 2016. Am. Compl. ¶ 52.

Hoelzer's performance issues started shortly thereafter. Yet, instead of acknowledging these issues, she blames poor training, unreasonable timelines, and management for her failures. *See, e.g.*, Am. Compl. ¶¶ 61, 65, 72.

Regardless, for the entire time that Hoelzer worked for UNC Global, the fundraising materials for the Chancellor's Global Education Fund never went out on time. This campaign is conducted through a mass mailing. In 2016, the Chancellor's Global Education Fund "solicitations were delayed." Am. Compl. ¶ 66. In the fall of 2017, the mailing was again delayed. Am Compl. ¶ 75.

---

[2] This position is exempt from the State Human Resources Act. Am. Compl. ¶ 52.

6

Both of these mailings occurred before Hoelzer's February 2018 concussion. Following this concussion, the 2018 mailing was also delayed. Am. Compl. ¶ 105.

In 2018, Hoelzer's supervisor informed her that she was not meeting expectations in her annual performance review. Am. Compl. ¶ 111. As a result, she was placed on a performance improvement plan. Am. Compl. ¶ 124. Ultimately, Hoelzer was terminated in February 2019 due to performance issues. Am Compl. ¶ 135.

## Questions Presented

I. Can Hoelzer assert a section 1983 claim against Defendants?

II. Has Hoelzer alleged sufficient facts to support any claim under the ADA against Defendants?

III. Has Hoelzer alleged sufficient facts to plausibly show that UNC-Chapel Hill retaliated against her for taking FMLA leave?

## Argument

## Legal Standard for Dismissal

Hoelzer's section 1983 claim is barred by sovereign immunity. Under federal law, when a defendant raises the issue of sovereign immunity, it may be addressed under either Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Fleming v. Va. State Univ.*, No. 3:15-cv-268, 2016 WL 927186, at *1 n.4 (E.D. Va. Mar. 4, 2016). Under North Carolina law, it is

7

unsettled "whether sovereign immunity is grounded in a lack of subject matter jurisdiction or personal jurisdiction." *M Series Rebuild, LLC v. Town of Mt. Pleasant, Inc.*, 222 N.C. App. 59, 62, 730 S.E.2d 254, 257 (2012). As a result, Defendants move to dismiss Hoelzer's section 1983 claim under Rules 12(b)(1), 12(b)(2), and 12(b)(6).

Under Rules 12(b)(1) and 12(b)(6), the Court should grant Defendants' motion to dismiss because the amended complaint fails to allege sufficient facts to establish that this Court has subject-matter jurisdiction. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

Under Rule 12(b)(2), this Court should dismiss Hoelzer's claim because she has failed to prove by a preponderance of the evidence that this Court has personal jurisdiction over Defendants. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

Defendants move to dismiss Hoelzer's ADA and FMLA claims under Rule 12(b)(6). This Court should dismiss these claims because even if all factual inferences are drawn in her favor, Hoelzer has not pleaded sufficient factual content to allow this Court to reasonably infer that Defendants violated the ADA or FMLA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

# I. Hoelzer Has Failed to Allege Sufficient Facts to Support Her Section 1983 Claim Against Defendants.

Hoelzer's section 1983 claim against Defendants purports to be a class action on behalf of employees who are classified as exempt from the State Human Resources Act and are not instructional or research staff. Am. Compl. ¶ 5. This claim fails for at least four reasons.

First, Hoelzer cannot bring a section 1983 claim against the Board or UNC-Chapel Hill because they are immune from suit under the doctrine of sovereign immunity.

Second, under section 1983 Hoelzer can sue *a person* acting under color of state law who interferes with her constitutional rights. However, State agencies like the Board and UNC-Chapel Hill and individuals sued in their official capacity are not considered "persons" within the meaning of section 1983.

Third, the *Ex Parte Young* exception that would allow Hoelzer to sue individuals acting in their official capacity does not apply because the violation is not ongoing: Hoelzer has been terminated. Because the injury already occurred, the relief that Hoelzer is seeking is not prospective but retrospective.

Fourth, Hoelzer cannot sue the individual defendants in their individual capacities because her claim is untimely. Also, even if her claim

9

were timely, she does not possess a protected property interest in her continued employment because she was an at-will employee.

### A. The doctrine of sovereign immunity bars Hoelzer's section 1983 claim against the Board and UNC-Chapel Hill.

Generally, the State is immune from suit unless it has waived its immunity. *Virginia Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-54 (2011); *see also* 33 Richard Murphy, Federal Practice and Procedure § 8351 (2d ed. 2020). In addition, Congress may abrogate a state's sovereign immunity with appropriate legislation. *Stewart*, 563 U.S. at 253-54. However, without a "waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 254.

With respect to section 1983 claims, the State has not waived its immunity, and "Congress did not intend to abrogate state sovereign immunity" when it passed section 1983. *Quinn v. N.C. Dep't of Health & Hum. Servs.*, No. 3:19-cv-00391-FDW-DCK, 2020 WL 369290, at *4 (W.D.N.C. Jan. 22, 2020) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-68 (1989)).

Here, the Board and UNC-Chapel Hill are agents of the State. The Board is created in section 116-3 of the general statutes "to foster the development of a well-planned and coordinated system of higher education." N.C. Gen. Stat. § 116-1. To achieve this goal, the University of North

10

Carolina System is made up of 17 educational institutions.  N.C. Gen. Stat. § 116-4.  UNC-Chapel Hill is one of the 17 institutions listed in section 116-4.  When considering this statutory structure, other courts have held that the Board and its constituent institutions are an agency of the State.  *See, e.g.*, *Bd. of Governors of Univ. of N.C. v. U.S. Dep't of Labor*, 917 F.2d 812, 816 (4th Cir. 1990); *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1139 n.6 (4th Cir. 1990); *Mitchell v. Winston-Salem State Univ.*, No. 1:19-CV-130, 2020 WL 1516537, at *6 (M.D.N.C. Mar. 30, 2020); *Costello v. Univ. of N.C. at Greensboro*, 394 F. Supp. 2d 752, 756 (M.D.N.C. 2005).  Thus, as an agency or arm of the State, the Board and UNC-Chapel Hill are immune from a section 1983 lawsuit.

Accordingly, the doctrine of sovereign immunity bars Hoelzer's section 1983 claim against the Board and UNC-Chapel Hill.

**B.**     **The Board, UNC-Chapel Hill, and the Individual Defendants in their official capacities are not "persons" within the meaning of section 1983.**

To state a claim under section 1983, Hoelzer "must aver that *a person* acting under color of state law deprived [her] of a constitutional right or a right conferred by a law of the United States."  *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009) (emphasis added).  Hoelzer cannot do this with respect to the Board, UNC-Chapel Hill, and the

11

Individual Defendants in their official capacity because they are not considered persons.

As explained above, the Board and UNC-Chapel Hill are agencies of the State. *See supra* I(A). As agencies of the State, they are not considered "a person within the meaning of [section] 1983." *Will*, 491 U.S. at 64. Hence, Hoelzer cannot assert a section 1983 claim against the Board or UNC-Chapel Hill.

Likewise, "officials acting in their official capacities are" not considered "'persons' under [section] 1983." *Id.* at 71. Here, all of the Individual Defendants are or were employed by a State agency at the time Hoelzer claims that they violated her rights. Accordingly, the Individual Defendants were or are officials acting in their official capacity, meaning that Hoelzer cannot assert a section 1983 claim against them.

Thus, Hoelzer cannot state a section 1983 claim against the Board, UNC-Chapel Hill, or the Individual Defendants in their official capacity.

C. **The *Ex Parte Young* exception to section 1983 claims does not apply because there is no ongoing violation of constitutional rights.**

Under *Ex Parte Young*, Hoelzer can assert a section 1983 claim against the Individual Defendants in their official capacities if "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only

prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998) (analyzing the *Ex Parte Young*).

This exception does not apply here because the violation is not ongoing. According to Hoelzer, the violation occurred when she was "improperly classified as exempt from the State Human Resources Act." Am. Compl. ¶ 150. The allegedly "improper classification" occurred in August of 2016. Am. Compl. ¶ 52. In addition, Hoelzer is no longer a UNC-Chapel Hill employee. Thus, the alleged violation is not ongoing.

Moreover, because there is no ongoing violation, Hoelzer cannot seek prospective relief. She must seek retrospective relief intended to remedy a past wrong. As a result, the *Ex Parte Young* exception is inapplicable.

To the extent Hoelzer plans to rely on her "class action" to satisfy the *Ex Parte Young* exception, that reliance is misplaced. Hoelzer cannot be a member of the class because her claim is time-barred. As alleged on the face of the amended complaint, Hoelzer was told she was in a position that was exempt from the State Human Resources Act on August 29, 2016. Am. Compl. ¶ 52. Hoelzer never challenged this classification, but now claims over four years later that she should not have been exempt from the State Human Resources Act. Am. Compl. ¶ 150.

Based on her allegations, Hoelzer contends that her exempt classification breached her employment contract. The statute of limitations

13

for contract claims in North Carolina is three years. N.C. Gen. Stat. § 1-52(1); *see also Wolsky v. Med. Coll. of Hampton Roads*, 1 F.3d 222, 223 (4th Cir. 1993) (explaining that for 1983 claims you apply the analogous statute of limitations from the state). Thus, Hoelzer had to file her section 1983 claim by August 2019. She filed her complaint in December 2020, well after the three year statute of limitations expired. As a result, her claim is untimely.

For these reasons, Hoelzer cannot allege that there is an ongoing violation or that she is seeking only prospective relief.

### D. Hoelzer's claim against the Individual Defendants in their individual capacity is untimely.

While Individual Defendants can be sued in their individual capacities under section 1983, *Hafer v. Melo*, 502 U.S. 21, 23 (1991), Hoelzer has failed to allege sufficient facts to state a claim against them for at least two reasons.

First, as explained above, Hoelzer's claim is time barred. Specifically, she claims that her classification as an exempt employee violated her employment contract. *See* Am. Compl. ¶¶ 52, 150-51. Hoelzer accepted what she knew to be an exempt position in August 2016. Am. Compl. ¶ 52. She had three years or until August 2019 to file her claim. N.C. Gen. Stat. § 1-52(1). This lawsuit was filed in December 2020. Thus, her claim is untimely.

14

Second, Hoelzer has not alleged that she has a protected property interest that entitles her to procedural due process.

To state a procedural due process claim, Hoelzer must allege that she has been deprived of a property interest by the State without adequate procedure. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Hoelzer claims that her property interest is her employment status as a career state employee. Am Compl. ¶ 151. To have a protected property interest in her employment, Hoelzer has to have "a legitimate claim of entitlement to it—created, for example, by contract or state law." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d, 292, 307 n.14 (4th Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577-78 (1972)).

Based on her own allegations, Hoelzer accepted an exempt, at-will position. Am. Compl. ¶¶ 52, 135. At-will employees do "not have a property right in continued employment." *Beck v. City of Durham*, 129 F. Supp. 2d 844, 850 (M.D.N.C. 2000) (citing *Evans v. Cowan,* 132 N.C. App. 1, 6, 510 S.E.2d 170, 174 (1999)). As a result, Hoelzer's termination from an at-will position did not deprive her of any property right.

\*     \*     \*

For these reasons, Hoelzer's section 1983 claim against all Defendant should be dismissed.

Case 1:20-cv-01072-LCB-LPA   Document 15   Filed 04/15/21   Page 15 of 29

## II. Hoelzer Has Not Alleged Sufficient Facts to Support Any ADA Claim Against Defendants.

Hoelzer has asserted three claims against Defendants[3] under the ADA.

Her first claim asserts that Defendants failed to engage in the interactive process to identify reasonable accommodations. Her second claim asserts that Defendants failed to provide her with reasonable accommodations. Her final claim is that she was fired in retaliation for asking for an accommodation. All three of these claims fail.

First, there is no stand-alone legal claim for failure to engage in the interactive process. In any event, UNC-Chapel Hill did engage in the

---

[3] The amended complaint does not clearly identify which Defendants this claim is asserted against. Regardless, the discussion in this section is limited to UNC-Chapel Hill because Hoelzer cannot assert her ADA claim against the Individual Defendants.

The ADA makes it unlawful for an "employer," defined as "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such a person," to discriminate against its employees. 42 U.S.C. § 12111(5)(A); *see also* 42 U.S.C. § 12112. In addition, courts have concluded that the ADA does not permit a cause of action against individuals. *See, e.g., Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999). For these reasons, all ADA claims against the Individual Defendants should be dismissed.

To the extent Plaintiff intends to attempt a separate recovery against the Board in addition to UNC-Chapel Hill, her ADA claims must fail because there are absolutely no allegations in her amended complaint indicating that anyone at the Board or UNC System had any notice or information at any time prior to the filing of this lawsuit about Hoelzer's allegations or had any involvement in the matters alleged in her amended complaint.

16

interactive process.  In fact, the interactive process broke down because of Hoelzer, not UNC-Chapel Hill.

Second, Hoelzer's accommodation claim fails because UNC-Chapel Hill did provide her with every accommodation she requested or a reasonable alternative accommodation.  In addition, she could not perform the essential functions of her job, even with accommodations.

Finally, UNC-Chapel Hill did not retaliate against Hoelzer.  The amended complaint fails to allege facts that show a causal connection between Hoelzer's protected conduct and her termination.  In addition, Hoelzer's own allegations dispel any suggestion of a retaliatory motive necessary to support her claim.

## A. UNC-Chapel Hill engaged in the interactive process with Hoelzer.

As an initial matter, there is no independent cause of action for failure to engage in the interactive process.  *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013); *see also Dressel v. Safeway, Inc.*, No. ELH-19-1556, 2020 WL 5880860, at *7 (D. Md. Oct. 2, 2020) (collecting cases). However, even if there were an independent cause of action, Hoelzer's claim would still fail.

When Hoelzer requested an accommodation, UNC-Chapel Hill had a duty to engage in the interactive process with her to identify a reasonable

accommodation. *See* 29 C.F.R. § 1630.2(o)(3); *Wilson*, 717 F.3d at 346-47 (describing the duty). UNC-Chapel Hill did engage in this process in good faith.

There is no "hard and fast rule" to determine if UNC-Chapel Hill took part in the interactive process in good faith. *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 Fed. Appx. 314, 322-23 (4th Cir. 2011) (quoting *Beck v. Univ. of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1135-36 (7th Cir.1996)). Rather, courts look to see if one party failed "to make reasonable efforts to help the other party determine" a specific reasonable accommodation. *Beck,* 75 F.3d at 1135. It is the party who causes the interactive process to break down who is not acting in good faith. *See id.*

Here, Plaintiff requested and received FMLA leave, shorter work days until she could return to work full time, the ability to go to the doctor as needed, and a professional organizer. Am. Compl. ¶¶ 87, 93, 107, 127. According to the amended complaint, there is only one accommodation that Hoelzer requested and did not receive: a transfer to another position in her division. Am. Compl. ¶ 133. Yet, UNC-Chapel Hill's ADA office did inform her that she could apply for other positions at UNC-Chapel Hill. Am. Compl. ¶ 133. Hoelzer was familiar with this process because she moved to UNC Global from UNC-Chapel Hill's business school. Am. Compl. ¶ 25.

Nevertheless, Hoelzer does not even allege that she looked for or applied for other positions with UNC-Chapel Hill that were compatible with her disability. Furthermore, she did not ask for help, nor does she allege that she needed help identifying other positions that were compatible with her disability. Thus, UNC-Chapel Hill cannot be liable for failing to engage in the interactive process in good faith.

To the extent Hoelzer intends to argue that UNC-Chapel Hill did not engage in the interactive process in good faith because she was not reassigned, that argument fails.

Reassignment to a *vacant* position may be a reasonable accommodation. 42 U.S.C. § 12111(9)(B). Here, Hoelzer has not alleged that there was a vacant position to which she could be reassigned. As a result, there is no evidence to show that it was possible to reassign Hoelzer.

For all of these reasons, Hoelzer's claim that UNC-Chapel Hill failed to engage in the interactive process to identify reasonable accommodations should be dismissed.

## B. Hoelzer cannot establish her failure to accommodate claim as a matter of law.

Hoelzer's claim that UNC-Chapel Hill failed to accommodate her disability is unsuccessful.

To state a claim for failure to accommodate under the ADA, Hoelzer must show that: (1) she is disabled within the meaning of the ADA; (2) UNC-Chapel Hill had notice of her disability; (3) she could perform the essential functions of her job with or without a reasonable accommodation; and (4) UNC-Chapel Hill refused to make a reasonable accommodation. *See Wilson*, 717 F.3d at 345.

Here, Hoelzer has not alleged facts to show that she was qualified to perform her job without a reasonable accommodation or that UNC-Chapel Hill refused to make a reasonable accommodation.

First, Hoelzer must allege facts to demonstrate that she was qualified to perform the essential functions of her job with or without a reasonable accommodation. 42 U.S.C. § 12111(8). This includes satisfying the position's "requisite skill, experience, education and other job-related requirements." 6 C.F.R. § 15.3(e)(3).

Here, the facts alleged by Hoelzer, defeat any suggestion that she was qualified for her position or could perform her position with or without a reasonable accommodation. According to the amended complaint, UNC-Chapel Hill provided Hoelzer with several accommodations to enable her to perform the functions of her position including: exhaustion of FMLA leave, shorter work days until she could return to work full time, the ability to go to the doctor as needed, and a professional organizer. Am. Compl. ¶¶ 87, 93,

20

107, 127. Despite these accommodations, Hoelzer was unable to perform the essential functions of her position.

For example, Hoelzer began working for UNC Global at the end of August in 2016. Am. Compl. ¶ 52. Almost one year later in the fall of 2017, the Chancellor's Global Education Fund campaign did not start on time because the mass mailing was delayed. Am. Compl. ¶ 75. Hoelzer did not have any accommodations in place at that time, and blames this delay on the management of her boss and not on her disability or lack of accommodation. Am. Compl. ¶¶ 74-76.

In 2018, the mass mailing for the Chancellor's Global Education Fund was again delayed according to Hoelzer because "Lebold changed his mind." Am. Compl. ¶ 77. In 2018, Hoelzer did have some accommodations in place. Thus, regardless of whether Hoelzer had an accommodation, she was unable to ensure that the mass mailings were sent on time.

Furthermore in 2018, she received a year end performance review stating that she was "not meeting expectations." Am. Compl. ¶ 111. Based on this performance review, she was placed on a performance improvement plan. Am. Compl. ¶ 124. These facts demonstrate that she was not qualified for her position as a development officer. As a result, Hoelzer has failed to state a claim for failure to accommodate. *See e,g., Spivey v. TIMCO Aviation Servs.*, No. 14-CV-625, 2015 WL 5511056, at *3 (M.D.N.C. Sept. 17,

2015), *aff'd*, 629 F. App'x 575 (4th Cir. 2016) (dismissing claim when alleged facts showed employee was not qualified for position based on job performance).

To the extent Hoelzer intends to rely on her request that UNC-Chapel Hill reassign her to save her claim, that reliance is misplaced. Even if UNC-Chapel Hill were required to consider reassignment as a reasonable accommodation, Hoelzer has to establish that she was qualified for a vacant position. *See Petty v. Freightliner Corp.*, 123 F. Supp. 2d 979, 984 (W.D.N.C. 2000).

Here, Hoelzer's amended complaint contains no facts showing that she was qualified for a vacant position at UNC-Chapel Hill or that UNC-Chapel Hill refused to consider her for a vacant position. As a result, Hoelzer's claim fails. *See Petty,* 123 F. Supp. 2d at 984.

### C. UNC-Chapel Hill did not retaliate against Hoelzer because she requested a reasonable accommodation.

To establish a prima facie case of retaliation under the ADA, Hoelzer must show that: (1) she engaged in conduct protected under the ADA; (2) she suffered an adverse employment action after engaging in the protected conduct; and (3) there is "a causal link . . . between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Here, Hoelzer has not alleged facts to show a causal connection

22

between her request for accommodations under the ADA and her termination.

One way Hoelzer can allege a causal connection is if there was "close temporal proximity" between the protected conduct and the adverse action. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 575 (4th Cir. 2015). According to the amended complaint, Hoelzer had a meeting with the UNC-Chapel Hill ADA office on June 26, 2018, to discuss accommodations. Am. Compl. ¶ 117. There are no allegations that her supervisor knew about this meeting or took part in the meeting. Also, Hoelzer has not alleged that she requested any further accommodations following that meeting.

UNC-Chapel Hill terminated Hoelzer 8 months later in February 2019. Am. Compl. ¶ 135. A time period of 8 months between the protected activity and the adverse action is too long to adequately allege a causal connection. *See, e.g.*, *Brown v. Sears Auto. Ctr.*, 222 F. Supp. 2d 757, 764 n. 10 (M.D.N.C. 2002), aff'd, 51 Fed. Appx. 427 (4th Cir. 2002) (three months is too long to infer causation); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (two-and-a-half months is too long to infer causation, unless other circumstances explain the gap); *cf Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562,

23

575 (4th Cir. 2015) (holding three weeks created "a genuine dispute as to causation.").[4]

A long gap in time between the protected activity and the adverse action can be explained if the retaliation occurred at the first opportunity to retaliate. *Schmitz v. Alamance-Burlington Bd. of Educ.*, No. 1:18-CV-910, 2020 WL 924545, at *11 (M.D.N.C. Feb. 26, 2020). As alleged in the amended complaint, Hoelzer is an at-will employee, meaning that she could be terminated at any time for any reason. Thus, Hoelzer's eventual termination after the protected activity was not the first opportunity to retaliate.

Finally, Hoelzer's acknowledged performance deficiencies rebut any causal connection between Hoelzer's protected activity and her termination. As noted above, Hoelzer admits that she received a poor performance review and that she was placed on a performance improvement plan. Am Compl. ¶ 124. In addition, Hoelzer consistently had issues with ensuring that the Chancellor's Global Education Fund campaign started on time because of mass-mailing delays. Am. Compl. ¶¶ 74-76. While Hoelzer attempts to

---

[4] When evaluating ADA retaliation claims, courts use retaliation case law for other types of retaliation claims. *See, e.g.*, *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) ("Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases.").

blame her performance issues on poor management, that does not change the fact that she had performance issues.

Based on these facts, the amended complaint fails to contain "at least minimal support for the proposition that [UNC-Chapel Hill] was motivated by [retaliatory] intent" when it terminated Hoelzer. *Schmitz*, No. 1:18-CV-910, 2020 WL 924545, at \*9 (quoting *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 470 (2d Cir. 2019)).

As a result, the Court should dismiss Hoelzer's claim for retaliation under the ADA.

\*     \*     \*

For these reasons, all of Hoelzer's ADA claims should be dismissed.

## III. Hoelzer Has Failed to Alleged Facts to Plausibly Show that Defendants Retaliated Against Her for Taking FMLA Leave.

Hoelzer also asserts a claim for retaliation under the Family Medical Leave Act. This claim fails for the same reasons as her ADA retaliation claim.

To state a claim for retaliation under the FMLA, Hoelzer must show that: (1) she engaged in conduct protected under the FMLA; (2) she suffered an adverse employment action after engaging in the protected conduct; and (3) there is a causal connection between the adverse action and the protected

conduct.  *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006).

Here, Hoelzer did take FMLA leave and was terminated.  Am Compl. ¶¶ 87, 135.  However, there is no causal connection between those two events.  According to the amended complaint, Hoelzer went out on FMLA leave on February 14, 2018.  Am. Compl. ¶ 87.  She returned to work for four hours a day on April 5, 2018, and took four hours of FMLA leave for the rest of the day.  Am. Compl. ¶ 93.  This arrangement continued until she returned to work full time on June 7, 2018.  Am. Compl. ¶ 107.  Hoelzer was terminated over 8 months later on February 22, 2019.  Am. Compl. ¶ 135.

A time period of 8 months between the protected activity and the adverse action is too long to adequately allege a causal connection.  *See, e.g.*, *Brown*, 222 F. Supp. 2d at 764 n. 10 (three months is too long to infer causation); *King*, 328 F.3d at 151 n.5 (two-and-a-half months is too long to infer causation, unless other circumstances explain the gap); *cf Jacobs*, 780 F.3d at 575 (holding three weeks created "a genuine dispute as to causation."). [5]

---

[5]      Unlike under the ADA, "whether the FMLA imposes liability on employee supervisors in their individual capacities is an open question in this circuit."  *Jones v. Sternheimer*, 387 Fed. Appx. 366, 368 (4th Cir. 2010).

26

Furthermore, as explained above, the face of the amended complaint reveals a legitimate reason for Hoelzer's termination: her poor job performance. *See supra* II(D).

As a result, the Court should dismiss Hoelzer's claim for retaliation under the FMLA.

## Conclusion

For these reasons, Hoelzer's entire amended complaint should be dismissed.

This 15th day of April, 2021.

JOSHUA H. STEIN
Attorney General

/s/ Kenzie M. Rakes
Kenzie M. Rakes
Assistant Attorney General
NC State Bar No. 46349
krakes@ncdoj.gov

North Carolina Department of Justice
PO Box 629
Raleigh, NC  27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorney for Defendants*

27

**CERTIFICATE OF COMPLIANCE**

I certify that, in accordance with Rule 7.3(d)(1) of the Local Civil Rules

of Practice and Procedure, the attached brief (excluding the parts excluded by

rule) contains fewer than 6250 words.

This 15th day of April, 2021.

 /s/ Kenzie M. Rakes
Kenzie M. Rakes
Assistant Attorney General

Case 1:20-cv-01072-LCB-LPA   Document 15   Filed 04/15/21   Page 28 of 29

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** with

the Clerk of Court using the CM/ECF system, which will send notification of

such filing to all registered CM/ECF users, including Plaintiff's counsel,

Valerie Bateman (Valerie.bateman@forrestfirm.com) and Rachel M. Blunk

(Rachel.blunk@forrestfirm.com).

This 15th day of April, 2021.

 /s/ Kenzie M. Rakes
Kenzie M. Rakes
Assistant Attorney General

29