IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No.: 1:20-cv-1072

| | |
|---|---|
| MARTHA HOELZER and all similarly situated individuals,<br><br>               Plaintiff,<br><br>      v.<br><br>THE BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL and RAYMOND FARROW, in his individual and official capacity, BARBARA J. STEPHENSON, in her individual and official capacity, DANIEL LEBOLD, in his individual and official capacity, DAVID ROUTH, in his individual and official capacity, and DEBBIE DIBBERT, in her individual and official capacity,<br><br>               Defendants. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

NOW COMES Plaintiff Martha Hoelzer, by and through the undersigned counsel, and responds to the Defendants' Motion to Dismiss the Amended Complaint as follows:

I.    **ARGUMENT ON JURISDICTION OVER CLAIMS AND DEFENDANTS**

    A.  **This Court has personal and subject matter jurisdiction over Plaintiff's Section 1983 claims for injunctive relief against the Defendant Board of Governors and the individual Defendants Farrow, Stephenson, LeBold, Routh, and Dibbert in their official capacities.**

The Board of Governors as a body politic and the individually named defendants in their official capacity are subject to liability under § 1983 for injunctive relief under *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 44152 L. Ed. 71 (1908) because "(1) the violation

- 1 -

for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998) (analyzing the *Ex Parte Young*).    The policy approved by the members of the Board of Governors is ongoing because it continues to this day to allow the erroneous designation as "exempt" from the protections of Chapter 126, including the right to appeal their termination, to be applied to certain State employees of the constituent institutions of the University of North Carolina who are not "instructional or research staff," the only exemption allowed by exempt from due process appeals under Chapter 126.   The injunctive relief sought against the official capacity defendants and the Board of Governors as a body politic is to cease the practice of misclassifying such employees as exempt.

## B. This Court has personal and subject matter jurisdiction over Plaintiff's Section 1983 claims for damages against the individual members of the Defendant Board of Governors and the individual Defendants Farrow, Stephenson, LeBold, Routh, and Dibbert.

Plaintiff's section 1983 claims for damages are brought against the two groups of individual defendants in their individual capacity: 1) the individual unnamed Board of Governors[1] members as they shall be currently be and have been from time to time since their approval (or delegation of approval)[2] of the unconstitutional practice of depriving

---

[1] The Board is composed of 24 individual voting members, N.C. Gen. Stat. § 116-6(a). The Board is also itself a body politic and corporate, id. § 116-3. These individuals as of the date of this Memorandum are: Randy Ramsey, Wendy Floyd Murphy, Pearl Burris-Floyd, W. Louis Bissette, Jr., Kellie Hunt Blue, C. Philip Byers, Jimmy D. Clark, Carolyn Coward, N. Leo Daughtry, Joel Ford, Thomas C. Goolsby, Isaiah Green, Reginald Ronald Holley, James L. Holmes, Jr., Mark Holton, Terry Hutchens, W. Marty Kotis, III, Steven B. Long, J. Alex Mitchell, Anna Spangler Nelson, R. Doyle Parrish, Art Pope, David Powers, Temple Sloan, Dwight D. Stone, Michael Williford.

[2] The Board of Governors elects a President to serve as it chief administrative officer and who may be assisted by staff "to carry out the provision of this Article" and who shall also "be elected by the Board on nomination of the President." N.C. Gen. Stat. § 116-14(a), (b).

- 2 -

certain State employees of the constituent member institutions of the University of North Carolina of their rights to due process[3] and 2) the individual defendants employed by the University of North Carolina at Chapel Hill who acted specifically with regard to Defendant Hoelzer in particular to deprive her of her constitutional rights to due process.

Plaintiff alleged that the Board of Governors' action of approving (or delegating the approval) of a policy which deprived Plaintiff of her due process rights, along with other employees of the University of North Carolina constituent institutions, by allowing these employees to be erroneously designated as exempt. This designation was and continues to be in violation of N.C. Gen. Stat. § 126-5(c1)(8) and has resulted and continues to result in the both pre- and post-deprivation rights to due process. Amended Complaint ("Am Comp"), ¶¶ 3, 6, 7.

The Board of Governors is composed of 24 individual members who each vote on the policies implemented across all of the 16 constituent institutions of the University of North Carolina as provided in N.C. Gen. Stat. §§ 116-1, -2, -4. N.C. Gen. Stat. § 116-5(a) (specifying that "the Board of Governors shall consist of the following members . . ." and describing the election process). *See also* N.C. Gen. Stat. § 116-6 (providing for the election and terms for individual members succeeding other serving members). The members of the Board of Governors from time to time as they shall be elected and selected "shall be deemed members-at-large," N.C. Gen. Stat. § 116-7(a), and shall be

---

[3] The three year statute of limitation for Plaintiff on her section 1983 claims against the individual members of the BOG began when she was discharged and provided no due process on February 22, 2019; thus, these allegations are well within the three-year statute of limitation.

"responsible for the general determination, control, supervision, management and governance of all affairs of the constituent institutions. For this purpose the Board may adopt such policies and regulations as it may deem wise," N.C. Gen. Stat. § 116-11. Thus, the individual members of the Board of Governors whomever they shall be from time to time are liable in their individual capacities for any of the affairs of the constituent institutions, including the policy either adopted, or delegated to be adopted, that has resulted in the deprivation of due process to Plaintiff and others similarly situated to her.[4]

### C. This Court has personal and subject matter jurisdiction over the ADA and FMLA claims of Plaintiff against the University of North Carolina at Chapel Hill and the individual defendants in their official capacity.

Plaintiff asserts her ADA and FMLA claims against Defendants only in their official or representative capacity. *See Baird ex rel. Baird v. Rose,* 192 F.3d 462, 472 (4th Cir. 1999) ("Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA."

## II. STATEMENT OF FACTS DEEMED TRUE FOR NON-JURISDICTIONAL MOTIONS TO DISMISS

Plaintiff worked as a development officer raising money for Defendants, Am Comp ¶ 15, and was neither research nor instructional staff under N.C. Gen. Stat. §

---

[4] Nonetheless, because counsel for Defendants' has indicated that it believes Plaintiff must move to amend the pleadings to name the individual members of the Board of Governors, contemporaneously with this Memorandum, Plaintiff has done so and has also requested defendants to waive service of the summons for each individual Board member under Fed. R. Civ. P 4(d).

- 4 -

126-§ 126-5(c1)(8).  Plaintiff was terminated on February 22, 2019, and told at that time she had no appeal rights because she was an exempt employee under Chapter 126 of the NC General Statutes.  Am Comp ¶ 135.

Plaintiff suffered from a disability at the time she was discharged, which was known to Defendants, and she had requested accommodations for her disability, as admitted by Defendants in their Memorandum in support of their Motion to Dismiss ("Def Mem"),  including but not limited to being transferred to another position working for Defendant University of North Carolina at Chapel Hill,  Complaint, ¶¶ 117-119.

Plaintiff had also taken leave under the Family and Medical Leave Act between February 14, 2018, and June 7, 2018.  Am Comp ¶¶ 87-109.  On the day after she returned to work full-time from FMLA, June 8, 2018, Plaintiff's supervisor met with her and informed her that she was not meeting his expectations.  Am Comp ¶¶ 11—114.

Despite ongoing conversations[5] with the UNC ADA Office regarding potential accommodations for Plaintiff's disability including the availability of another position within the University, Am Comp ¶¶ 117, 119, 127, 133,  Defendants continued to subject Plaintiff to adverse actions:  she received a negative performance review dated July 31, 2018, Am Comp ¶¶ 123-24, and a performance improvement plan (PIP) on December 14, 2018, Am Comp ¶¶ 124, 131.  On February 12, Plaintiff learned that her department would not permit her to transfer within her department and that she needed to look for a position outside of her department.  Am Comp 133.  Ten days later,

---

[5]  Between June 26, 2018, and February 12, 2019, the interactive process was ongoing.

Case 1:20-cv-01072-LCB-LPA   Document 16   Filed 05/06/21   Page 5 of 22

Defendants terminated her.  Am Comp ¶ 135.

## III.   STANDARD OF REVIEW OF MOTION TO DISMISS

"To survive a 12(b)(6) motion, a complaint must contain enough facts ' "'to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face.'"" *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).  *Accord Maryland Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 361 (4th Cir. 2020)(citing *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)).

In *Walters*, the Fourth Circuit affirmed that a court must "accept as true all factual allegations contained in a complaint" but noted that there must be more than a "mere recital of the elements of a cause of action." *Id.* at 439. "The determination whether a complaint adequately states a plausible claim is a 'context-specific task,'. . ., in which the factual allegations of the complaint must be examined to assess whether they are sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). Plaintiffs do not need to forecast sufficient evidence to prove each claim or even show that the right to relief is probable, but must only "allege sufficient facts to establish" the elements of its claims. *Id.* (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 288 (4th Cir. 2012)).

Employment discrimination complaints must meet the plausibility standard;

however, the plaintiff is not required to make out a prima facie case of discrimination or satisfy any heightened pleading requirements at the motion to dismiss stage. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *McCleary-Evans v. Md. Dep't of Transp.,* 780 F.3d 582, 584–85 (4th Cir. 2015). The plaintiff need only plead facts that permit the court to reasonably infer each element of the prima facie case. *McCleary-Evans,* 780 F.3d at 585; *see also Coleman v. Md. Ct. of App.*, 626 F.3d 187, 191 (4th Cir. 2010) (stating that a complaint must "assert facts establishing the plausibility" that plaintiff was terminated based on race). If a plaintiff makes such a showing, the claim will usually survive a motion to dismiss, and the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the disparate treatment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)

The Fourth Circuit has also recently warned against too stringent treatment of discrimination claims under these standards:

> In reaching our conclusion, we note that discrimination claims are particularly vulnerable to premature dismissal because civil rights plaintiffs often plead facts that are consistent with both legal and illegal behavior, and civil rights cases are more likely to suffer from information-asymmetry, pre-discovery. See, e.g., Suzette M. Malveaux, The Jury (or More Accurately the Judge) Is Still Out for Civil Rights and Employment Cases Post–Iqbal, 57 N.Y.L. Sch. L. Rev. 719, 722–23 (2012–2013). There is thus a real risk that legitimate discrimination claims, particularly claims based on more subtle theories of stereotyping or implicit bias, will be dismissed should a judge substitute his or her view of the likely reason for a particular action in place of the controlling plausibility standard.

*Woods v. City of Greensboro*, 855 F.3d 639, 652 (4th Cir.), *cert denied*, 138 S. Ct. 558 (2017).

## IV. ARGUMENT ON NON-JURISDICTIONAL ARGUMENTS

### A. Plaintiff's ADA discrimination claim is pled sufficiently to avoid dismissal under Rule 12(b)(6).

The elements of an ADA cause of action[6] are established: "that (1) the employee is a qualified individual with a disability; (2) the employer has notice of the employee's disability and request for accommodation; and (3) the employer failed to accommodate the employee." *See Jacobs*, 780 F.3d at 579–80. *Accord Equal Emp. Opportunity Comm'n v. Advanced Home Care, Inc.*, 305 F. Supp. 3d 672, 675 (M.D.N.C. 2018). With regard to the second element, Defendants admit that they knew of Plaintiff's disability and her request for an accommodation. Def Mem p 2 ("UNC-Chapel Hill knew that Hoelzer had a history of concussions. Her February 2018 concussion was her third concussion while working for UNC-Chapel Hill.") The first element (qualified individual with a disability) and third element (failure to accommodate) are discussed below.

1. <u>Plaintiff alleges, and Defendants' admit that Plaintiff was a qualified individual with a disability.</u>

Plaintiff has made sufficient allegations to show that she was qualified in that despite her disability, she more than met the performance benchmarks set for her with regard to the essential job function of raising development funds. In June 2017, Plaintiff was provided an overall positive review. Am Comp ¶ 69. In January 2018 after being asked to help at the eleventh hour with a project with the business school in danger of collapsing, Plaintiff also received a positive mid-year review. Am Comp ¶¶ 80-81.

---

[6] However, the plaintiff is not required to make out a prima facie case of discrimination or satisfy any heightened pleading requirements at the motion to dismiss stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–85 (4th Cir. 2015).

- 8 -

Even after being out on FMLA both full-time and intermittently from February 14, 2018, to June 7, 2018, on June 6, 2018, Defendant LeBold responded to an email from Plaintiff positively. Am Comp ¶ 106. And significantly, at the end of the year review meeting between Defendant LeBold and Plaintiff on June 8, the day after she returned to work full-time, Plaintiff provided Defendant LeBold with statistics showing that three weeks prior to the end of the fiscal year, she had raised $647,411.37 (94.13%) of her total goal for the year, again despite being on FMLA both full-time and intermittently from February 14, 2018, to June 7, 2018.

Defendants' argument that she was not able to perform the essential functions of her position (raising money) are in total contrast to the allegations of Plaintiff's complaint, which is taken as true at this stage of the litigation. "A job function is essential when 'the reason the position exists is to perform that function.' " *Jacobs,* 780 F.3d at 579 (quoting 29 C.F.R. § 1630.2(n)(1)). Despite Plaintiff meeting her fund-raising goals, the reason her job existed, Defendant LeBold placed her on a PIP, Am Comp ¶ 124, upon which he relied along with her July 2018 unjustified[7] performance review, when he terminated Plaintiff.

2. <u>Defendants provided some accommodations to Plaintiff but violated the ADA by failing to consider if there were other positions with UNC that Plaintiff could have worked in prior to taking a series of adverse actions against her which culminated in her termination.</u>

With regard to the third element of whether Defendant provided Plaintiff with reasonable accommodations, Defendants argue that "the entire time that Hoelzer

---

[7] Plaintiff alleges that Defendant LeBold never provided Plaintiff her review in writing. Nor was she given an opportunity to respond to it. Am Comp ¶¶ 112-124.

worked at UNC-Chapel Hill, she was provided with every accommodation she requested or a reasonable alternative accommodation." This flies in the face of Defendants' other arguments that even if she requested an accommodation from the UNC ADA Office, her supervisor was unaware of it and therefore excused from dealing with it. Def Mem p 23. It also flies in the face of allegations in the complaint that between June 26, 2018, and February 12, 2019, Defendants (through the UNC ADA office) and Plaintiff were engaged in the interactive process, Am Comp ¶¶ 117-19, 127, 133, and that as of February 12, 2019, Plaintiff was denied an inter-departmental transfer and told to pursue other jobs within the University, Am Comp ¶ 133.

Defendants admit that "[w]hen Hoelzer requested an accommodation, UNC-Chapel Hill had a duty to engage in the interactive process with her to identify a reasonable accommodation. See 29 C.F.R. § 1630.2(o)(3). UNC can in fact be held liable for its failure to engage in an interactive process for a number of reasons. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013)(detailing reasons interactive process can be derailed). Lack of good faith is one reason: UNC failed to act in good faith to ascertain whether a reasonable accommodation existed that would permit Plaintiff to "perform the essential functions of the employment position that such individual holds **or desires**." 42 U.S.C. § 12111(8). (emphasis added). "The statute expressly contemplates that a reasonable accommodation may require 'job restructuring,' " i*d*. (quoting 42 U.S.C. § 12111(9)(B), and that "[r]eassignment to a vacant position may be a reasonable accommodation," 42 U.S.C. § 12111(9)(B).

During her discussion with Defendant LeBold on June 8, 2018, the day after she

returned full-time from FMLA (which she was on due to her disability), LeBold told Plaintiff she was not meeting LeBold's expectations for the position. However, he also stated that he knew she was working hard and he then contemplated that maybe her current role was not the best fit for her. Am Comp ¶ 111. At that time, at least, LeBold was aware of Plaintiff's disability and her need for accommodation, and thus he was obligated to engage in discussions with Plaintiff, or refer her to the ADA office to have those discussions, about finding a reasonable accommodation to avoid the adverse action of a negative performance evaluation, which he subsequently issued to her at the end of July. Am Comp ¶¶ 120-124. There was no obligation on Plaintiff's part during that discussion to identify a specific, reasonable accommodation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015) ("This duty [to engage in the interactive process] is triggered when an employee communicates her disability and desire for an accommodation—*even if the employee fails to identify a specific, reasonable accommodation.*")(emphasis added))

Nonetheless, Plaintiff on her own initiative reached out to the UNC ADA office on June 26, 2018, and inquired about the possibility of finding another position within the University which would be more accommodating to her brain injury. Am Comp ¶ 117. Defendants admit that they knew that Plaintiff was willing to accept a transfer to another position within the University as a reasonable accommodation for her disability. Def Mem p 18.[8] Defendants also admit that they are aware that "[r]eassignment to a

_____

[8] Defendants argue that Plaintiff did not allege that "she looked for or applied for other positions with UNC-Chapel Hill that were compatible with her disability," or that she asked for or needed help in "identifying other positions that were compatible with her disability." Def Mem p 19. On a motion to

vacant position may be a reasonable accommodation." 42 U.S.C. § 12111(9)(B). Even though Plaintiff was told that the ADA Office would inquire about other job possibilities, no one ever got back to her about any such position in the time period immediately following her initial request in June 2018. Am Comp ¶ 119.

It was not until February 12, 2019, more than six months and two adverse actions later, that the UNC ADA office finally informed her that her Department had rejected an inter-Department transfer, but that she could look for positions elsewhere in the University, Plaintiff had ten days to do so, given that she was terminated on February 22, 2019. Am Comp ¶ 135. Between June 26, 2018, and February 12, 2019, LeBold took two adverse actions: a negative performance evaluation (July 31, 2018) and a PIP (December 14, 2019). Defendants' argument that "there is no evidence to show that it was possible to reassign Hoelzer," is both premature on a motion to dismiss and inconsistent with their own argument and directive to her on February 12, 2019, that she needed to look for and identify a position for which she was qualified and to which she could transfer.

Defendants' failure to explore the possibility of placement in other jobs at the University between June 26, 2018, and February 12, 2019, is sufficient to meet Plaintiff's burden of pleading on a motion to dismiss that her employer failed to make a good faith effort to engage in the interactive process as is her allegations that she was terminated only ten days after being told to look outside of her department in the University for a position. Not only does it meet Plaintiff's pleading burden, it is also

dismiss, Plaintiff is not required to make such allegations and Defendants' attempt to excuse its failure to in this regard is premature.

- 12 -

"evidence of bad faith." *Jacobs*, 780 F.3d at 581 ("Two of our sister circuits have held that failure to "discuss a reasonable accommodation in a meeting in which the employer takes an adverse employment action" against a disabled employee is evidence of bad faith.") (citing *Rorrer v. City of Stow*, 743 F.3d 1025, 1040 (6th Cir.2014) (citing *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 622 (5th Cir.2009))).

### B. Plaintiff's retaliation claims under the ADA and the FMLA are pled sufficiently to avoid dismissal under Rule 12(b)(6).

In order to establish a prima facie case of retaliation[9] under the ADA or the FMLA, a plaintiff must allege (1) that she has engaged in conduct protected by the the statute; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action. *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002) (citing *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir.2001) (ADA). *See also Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550–51 (4th Cir. 2006) (citing *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir.2001) and *Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir.1998).

Defendants do not dispute that Plaintiff alleged that she engaged in protected activity under the ADA (she sought a reasonable accommodation for her disability) and under the FMLA (she took FMLA leave); Defendants' do not dispute that she actually did these things either. Defendants also do not dispute that Plaintiff alleged that she

---

[9] However, the plaintiff is not required to make out a prima facie case of discrimination or satisfy any heightened pleading requirements at the motion to dismiss stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–85 (4th Cir. 2015).

suffered an adverse action, or that she did in fact suffer an adverse action, i.e. she received a negative performance review, a PIP, and ultimately was terminated. Defendants' only argue that the adverse actions were not caused by her protected activity under the ADA and the FMLA.

The Fourth Circuit agreed in *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017), "that, for purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation." Plaintiff's Amended Complaint and Defendants' Memorandum on their face show a temporal proximity between Plaintiff's taking FMLA and the adverse actions taken against her.

Specifically, one day after returning full-time from FMLA leave, on June 7, Plaintiff's supervisor Defendant LeBold met with her and told her that she was not meeting his expectations as the beginning of a series of meetings between them related to Plaintiff's annual review. On July 31, 2018, Defendant LeBold actually formally uploaded a negative review for Plaintiff despite her providing him with documentation that she had met her fund-raising goals despite being on FMLA for almost half of the annual review period. On December 14, 2018, based on the negative review, Defendant LeBold issued Plaintiff a PIP, and six weeks later, issued her a negative mid-year review on January 31, 2019. Finally, on February 22, 2019, Defendant LeBold terminated Plaintiff.

As for retaliation against Plaintiff for requesting a reasonable accommodation, after her conversation with her supervisor Defendant LeBold on June 8, 2018, Am Comp

- 14 -

¶ 110, she followed up with Defendants' ADA office, Am Comp ¶ 115, and on June 26, 2018, and discussed whether a transfer to another position would be possible, Am Comp ¶ 117. Again, subsequently on July 31, 2018, LeBold uploaded a negative performance review for Plaintiff. Am Comp ¶¶ 120-24. At some point after her negative review, the ADA Office continued to work with Plaintiff by providing her various accommodations such a professional organizing assistance. Am Comp ¶ 127. Despite the ongoing interactive process, Defendant LeBold issued Plaintiff a PIP on December 14, 2018, Am Comp ¶ 131, and a negative mid-year review, Am Comp ¶ 132, on January 31, 2019. The interactive process resulted in Plaintiff begin informed on February 12, 2019, that her department had rejected the accommodation of an internal departmental transfer, but that she was free to look outside of her department for a position. Am Comp ¶ 133. Finally, and again, despite the ongoing interactive process, Defendant LeBold terminated Plaintiff on February 22, 2019, Am Comp ¶ 135.

Given the temporal proximity of the adverse actions taken against Plaintiff to her FMLA leave (negative review one day after the end of her FMLA leave) and to her requests during the interactive process (termination ten days after being denied inter-departmental transfer and being told to look elsewhere in the University for a position), Plaintiff's allegations more than meet her pleading standard for her ADA and FMLA retaliation claims on a motion to dismiss.

### C. Plaintiff's claim that Defendants' violated her rights under Section 183 by depriving her of due process is deprived her is pled sufficiently to avoid dismissal under Rule 12(b)(6).

To recap Plaintiff's factual allegations regarding her section 1983 claim,

Plaintiff alleged that she was terminated on February 22, 2019, while working as a development officer raising money for the Defendants. Am Comp ¶¶ 49, 57, 66, 73, 83, 103, 112, 126, 128, 129. Upon her termination, she was given no appeal rights and told she had no right to appeal because she was "at will," Am Comp ¶ 135, presumably because she was "exempt," Am Comp ¶ 52, and therefore not entitled to the protections of Chapter 126, specifically Article 8 "Employee Appeals of Grievances and Disciplinary Action." Plaintiff has alleged that regardless of whether UNC had considered or classified her as exempt under Article 8 of Chapter 126, in fact she was not "exempt" under State law and she had a statutorily created property interest in her position.

N.C. Gen. Stat. § 126-5 is entitled "Employee subject to the Chapter; exemptions." Section (a) provides that the provisions of the Chapter apply to "[a]ll State employees not herein exempt; . . . ." Subsection (c) provides that the provisions of Chapter 126 shall not apply to "[a] State employee who is not a career State employee as defined by this Chapter." N.C. Gen. Stat. § 126-1.1(a) requires continuous employment for twelve months to obtain "career State employee" status. Plaintiff, and many other employees of the University with twelve months of continuous service meet the definition of career State employee entitled to the protections of the provisions of Chapter 126, including Article 8. *See Pittman v. Wilson Cty.*, 839 F.2d 225, 226–27 (4th Cir. 1988) ("The procedural safeguards encompassed by the due process clause extend to appellant's continued employment only if she had a property interest in that employment.") (citing *Board of Regents v. Roth*, 408 U.S. 564, 569, 92

S. Ct. 2701, 2705, 33 L.Ed.2d 564 (1972).

The *Pittman* Court explained that "a legitimate claim of entitlement" to a "property interest in one's employment," *Roth*, *id.* at 577, 92 S. Ct. at 2709, can be created by for example, statute, *Bishop v. Wood*, 426 U.S. 341, 344, 96 S. Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). In this case, both Article 1 and Article 8 of the Chapter 126 create the legitimate expectation of continued employment as career State employees absent "just cause" for their dismissal, which must be shown by their State employer in a due process hearing upon challenge.

It is "well-settled" under North Carolina law that "[b]ecause petitioner was a permanent State employee, . . . he enjoyed a "property interest of continued employment created by state law and protected by the Due Process Clause of the United States Constitution." *Nix v. Dep't of Admin.*, 106 N.C. App. 664, 666, 417 S.E.2d 823, 825–26 (1992) (quoting *Leiphart v. North Carolina Sch. of the Arts*, 80 N.C.App. 339, 348, 342 S.E.2d 914, 921, *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986), (citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Faulkner v. North Carolina Dep't of Corrections*, 428 F. Supp. 100 (W.D.N.C.1977)). *Accord Peace v. Employment Sec. Comm'n of N. Carolina*, 349 N.C. 315, 321, 507 S.E.2d 272, 277 (1998) ("Under North Carolina law, an employee has a protected 'property' interest in continued employment only if the employee can show a legitimate claim to continued employment under a contract, a state statute or a local ordinance.")

Therefore, his State employer cannot "rightfully take away this interest without first complying with appropriate procedural safeguards . . .," *Nix*, 106 N.C. App. at

666, 417 S.E.2d at 825–26, which "include adequate notice pursuant to N.C.G.S. § 126–35," being discharged only for "just cause," *Peace*, 349 N.C. at 321-22, 507 S.E.2d at 277-78, two warnings as provided by 25 N.C.A.C. 1J .0605(b), a pre-dismissal conference as provided by 25 N.C.A.C. 1J .0605(c), notice of the specific reasons for his dismissal and his appeal rights in writing, as provided by 25 N.C.A.C. 1J .0605(d). The "[t]ime limits for filing a grievance do not start until the employee receives written notice of any applicable appeal rights." 25 N.C.A.C. 1J .0605(e).

Defendants rely upon N.C. Gen. Stat. § 126-5(c1)(8) for their argument that Plaintiff is "at will" and "exempt" from the provisions of Chapter 126. This statute provides that "[e]xcept as to the provisions of Article 6 and Article 7 of this Chapter, the provisions of this Chapter shall not apply to: . . . "[i]nstructional and research staff, information technology professionals, physicians, and dentists of The University of North Carolina, including the faculty of the North Carolina School of Science and Mathematics." Neither Plaintiff, nor thousands of other employees who have been told they are "exempt" under Chapter 126, are "instructional" or "research" staff or "information technology professionals, physicians, and dentists." Thus, Plaintiff has sufficiently alleged that she had a property interest in her position as a career State employee under Chapter 126 and she was deprived of that property interest without due process. Plaintiff's claim is timely because the deprivation of due process occurred on February 22, 2019, less than three years prior to her filing her claims. *Wolsky v. Med. Coll. of Hampton Roads,* 1 F.3d 222, 223 (4th Cir. 1993) (explaining that for 1983 claims you apply the analogous statute of limitations from the state).

**D. Plaintiff's breach of contract is adequately pled to defeat Defendants' Rule 12(b)(6) motion.**

Plaintiff adequately pled that she had a contract with Defendants created by State law that she could not be discharged without due process and without just cause. Defendants breached that contract by discharging her without due process and without just cause and as a result Plaintiff has suffered damages. Defendant's argue only that Plaintiff's contract claim is untimely. Plaintiff's contract claim is timely because it was breached when she was discharged without due process and without just cause on February 22, 2019. As Defendants admit, the statute of limitations for contract claims in North Carolina is three years. N.C. Gen. Stat. § 152(1).

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Plaintiff's ADA discrimination claim, ADA and FMLA retaliation claim, Section 1983 deprivation of civil rights claim, and breach of contract claims should be denied.[10]

---

[10] Plaintiff did not move to dismiss Plaintiff's state law claim for violation of Chapter 168A of the North Carolina General Statutes (North Carolina Persons with Disabilities Protection Act.

- 19 -

Respectfully submitted, this the 6th day of May 2021.

/S/ VALERIE BATEMAN
 NC State Bar: 13417
 T/F 919-436-3592
 FORREST FIRM, P.C.
 406 Blackwell St., Suite 420
 Durham, NC 27701
 valerie.bateman@forrestfirm.com

/S/ RACHEL M. BLUNK
 NC State Bar: 42694
 T/F 336-663-1052
 FORREST FIRM, P.C.
 125 S Elm St., Suite 100
 Greensboro,  NC 27401
 rachel.blunk@forrestfirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that, in accordance with Rule 7.3(d)(1) of the Local Civil Rules of Practice and Procedure, the foregoing document (excluding the parts excluded by rule) contains fewer than 6250 words.

This the 6th day of May 2021.

/s/    VALERIE L. BATEMAN
FORREST FIRM, P.C.

## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed or caused

to be filed the foregoing **MEMORANDUM IN OPPOSITION TO DEFENDANTS'**

**MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will

send notification of such filing to counsel listed below:

> Kenzie M. Rakes
> N.C. Dep't of Justice
> P.O. Box 629
> Raleigh, NC  27602-0629
> krakes@ncdoj.gov

This the 6th day of May 2021.

/s/     VALERIE L. BATEMAN
FORREST FIRM, P.C.

- 22 -