IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No.: 1:20-cv-1072

| | |
|---|---|
| MARTHA HOELZER and all similarly situated individuals,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>THE BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL and RAYMOND FARROW, in his individual and official capacity, BARBARA J. STEPHENSON, in her individual and official capacity, DANIEL LEBOLD, in his individual and official capacity, DAVID ROUTH, in his individual and official capacity, and DEBBIE DIBBERT, in her individual and official capacity,<br><br>　　　　Defendants. | **PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO AMEND AMENDED COMPLAINT** |

NOW COMES Plaintiff, by and through the undersigned counsel, replying to Defendants' Response opposing Plaintiff's Motion to Amend her Amended Complaint and show moves this Court as follows:

Defendants' urge this Court to deny the Motion to Amend for four reasons: (1) a previous amendment failed to "fix" this issue, (2) the motion was not promptly filed, (3) the amendment is futile, and (4) the amendment is unduly prejudicial.

　　I.　　<u>The Amendment is Not Unduly Prejudicial nor Futile</u>.

The University of North Carolina Board of Governors (UNC BOG) and its

-1-

individual members in their individual capacity are only germane to Plaintiff's § 1983 claim on behalf of herself and the class of individuals terminated from employment with all of the constituent UNC institutions. Plaintiff and the prospective class seek damages and injunctive relief from the UNC system-wide practice of misclassifying them as exempt from the due process protections of the State Human Resources Act, Chapter 126 of the N.C. General Statutes to which they are entitled under N.C. G.S. § 126-5(c1)(8). The statute of limitations of three years has not lapsed against a claim against the UNC BOG and its individual members. Amended Complaint ¶ 135 (Plaintiff was termination February 22, 2019)[1]. Therefore, Plaintiff could bring a separate action against the UNC BOG and its individuals members in their individual capacity for due process deprivations on behalf of Plaintiff and the class. The amendment adding the individual UNC BOG members to this case not only is not prejudicial and not futile, but the amendment promotes judicial economy by ensuring resolution of all related claims issues in one case.

II. Plaintiff Did Not Delay in Moving to Amend and the Prior Amendment was Unrelated to the UNC BOG and not Intended to "Fix" Issues .

The Fourth Circuit has also made it clear that leave to amend should be "given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). In fact, "[t]he

---

[1] Defendants' contend the statute of limitations should run from Plaintiff's notification that she was exempt. In fact, the notification that she was exempt caused Plaintiff no damages; she could not have sued until she had and injury causing damages. *See S.C. Wildlife Fed'n v. Limehouse*, 549 F.2d 324 (4th Cir. 2008) (cited by Defendants for its argument that suing individuals requires an exception to *Ex parte Young,* 209 U.S. 123 (1908). The *Limehouse* court also noted that *Ex parte Young* "permits suits against state officer for prospective relief where there is an ongoing violation of federal laws, *id.* at 332, and that the first element of standing is injury, *id.* at 329.

law is well settled 'that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.' Delay alone is an insufficient reason to deny leave to amend. Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citations omitted) (emphasis in original).

Defendants' cite the "four month delay" in Plaintiff's filing the Motion to Amend. A review of the timeline shows that this delay was not due to any dilatoriness on Plaintiff's behalf. Plaintiff's original Complaint was filed December 7, 2020. Plaintiff filed an Amended Complaint on December 23, 2020, to add two defendants in their individual and official capacity, David Routh and Debbie Dibbert, both employees of the UNC at Chapel Hill, with authority over the development function at UNC, where Plaintiff worked. This amendment was for clarification only with regard to Defendant UNC at Chapel Hill and its actions and was and for the purpose of adding individuals in against whom the injunctive relief of reinstatement would relate.

In fact, it was Defendants' delay of four months in filing their motion to dismiss and memorandum in support on April 21, 2021, after the First Amended Complaint was filed. Thus, the four month delay was on Defendants' part, not Plaintiff's, and it was not until Plaintiff learned that Defendants contended that the individual members of the UNC BOG needed to be named in order to get damages and injunctive relief against all of the constituent institutions, that Plaintiff became aware of the need to name and serve the individual members individually. In fact, in the case cited by Defendants for

its argument that the individual UNC BOG members do not have a sufficiently "special relation" to the challenged State action to be properly named as defendants, the Fourth Circuit rejected a similar argument.

In *S.C. Wildlife Fed'n v. Limehouse*, 549 F.2d 324 (4th Cir. 2008)[2], Limehouse, the Director of the S.C. Department of Transportation (SC DOT), was sued under 42 U.S.C. § 4321 et seq. (the National Environmental Policy Act ("NEPA") in his official capacity for violations of the NEPA. The Court denied the motion to dismiss the claims against Limehouse finding that "'[a]t At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [to satisfy these elements], for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 329 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992)). In permitting the claims against Limehouse to proceed, the Court rejected his argument that as Director of the SC DOT he lack a "special relation" and that the Court looks to state law to determine whether it imposes duties on the defendant sufficient to find a "special relation." *Id.* at 333.

The Court found that under South Carolina law, Limehouse had "supervisory authority" over the State's participation in the FEIS[3] process. *Id.* It also found that Limehouse's agency was "deeply involved in the preparation of the challenged FEIS" and that the FEIS listed employees of his agency who were responsible for its

---

[2] This case is arguably inapposite as it deals with a lawsuit filed under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq.

[3] The FEIS is the final environmental impact statement.

preparation. *Id.* Finally, the Court found that "[a]s the administrative head of the agency with responsibility for carrying out its policies and representing the agency in its dealings with the federal government, the Director possesses a sufficient connection to the alleged violation of federal law." *Id.*

In this case, State law makes it abundantly clear that the individual members of the UNC BOG have the requisite special relation and administrative authority to be enjoined from continuing to mis-classify Plaintiff and the members of the prospective class as exempt from the due process protections contained in State law. N.C. G.S. § 116-7 states clearly that

> [a]ll members of the Board of Governors shall be selected for their interest in, and their ability to contribute to the fulfillment of, the purposes of the Board of Governors, and all members shall be deemed members-at-large, charged with the responsibility of serving the best interests of the whole State. In electing members, the objective shall be to obtain the services of the citizens of the State who are qualified by training and experience to administer the affairs of The University of North Carolina."

Moreover, the members of the UNC BOG are "responsible for the general determination, control, supervision, management and governance of all affairs of the constituent institutions. For this purpose the Board may adopt such policies and regulations as it may deem wise." N.C. G.S. § 116-11(2). Finally, the legislature provided that the members of the UNC BOG "shall possess all powers not specifically given to institutional boards of trustees." N.C. G.S. § 116-10(14).

The boards of trustees for each of the constituent institutions are composed of 13 members, eight of whom are elected by the members of the UNC BOG, one of whom is the student government president ex officio, and the remaining four are appointed by

-5-

Case 1:20-cv-01072-LCB-LPA   Document 20   Filed 06/10/21   Page 5 of 13

the legislature. N.C. G.S. § 116-31 (d). The board of trustees of each constituent institution "shall serve as advisor to the Board of Governors on matters pertaining to the institution and shall also serve as advisor to the chancellor concerning the management and development of the institution. The powers and duties of each board of trustees, not inconsistent with other provisions of this Article, shall be defined and delegated by the Board of Governors." N.C. G.S. § § 116-33. Thus, not only does the UNC BOG choose the majority of each institution's board of trustees, but the UNC BOG also defines and delegated to the trustees' any power they wield.

The chancellors who are advised by the trustees are wholly under the control of the members of the UNC BOG. The members of the UNC "elect, on nomination of the President, the chancellor of each of the constituent institutions and fix his compensation." N.C. G.S. § 116-11(4). The chancellors of each institution makes "recommendations for the appointment of personnel within the institution" "[s]ubject to policies prescribed by the Board of Governors and by the board of trustees." N.C. G.S. § 116-34(d). The Chancellor "shall be the administrative and executive head of the institution and shall exercise complete executive authority therein, subject to the direction of the President. He shall be responsible for carrying out policies of the Board of Governors and of the board of trustees." N.C. G.S. § 116-34(a). As for the actions taken by the individual UNC universities, the members of the UNC BOG "shall determine the functions . . . of the constituent institutions." N.C. G.S. §116-11(3).

The legislature has permitted the members of the UNC BOG to delegate their powers to both the President of the University, or the chancellors or trustees of any of

the constituent institutions:

> The Board may delegate any part of its authority over the affairs of any institution to the board of trustees or, through the President, to the chancellor of the institution in any case where such delegation appears necessary or prudent to enable the institution to function in a proper and expeditious manner. The Board may delegate any part of its authority over the affairs of The University of North Carolina to the President in any case where such delegation appears necessary or prudent to enable The University of North Carolina to function in a proper and expeditious manner. Any delegation of authority may be rescinded by the Board at any time in whole or in part.

N.C. G.S. § 116-11(13). The President of the University is elected by the UNC BOG and serves as the "chief administrative officer" of UNC. N.C. G.S. § 116-14(a). The President may hire staff "who shall be elected by the Board on nomination of the President." N.C. G.S. § 116-14(b). The members of the UNC BOG also may hire staff members deemed necessary by the Board to report directly to the Board." N.C. G.S. §116-11(2a). However, from state statute, it is clear that all powers related to the administration of the UNC system, including its personnel matters, are controlled by the members of the UNC BOG, either directly or indirectly.

### III. Arguably, Only Process, Not Service Of Process, Needs To Be Amended.

This is not a case where Plaintiff, after the fact, concluded that the Board of Governors was necessary to obtain damages and prospective relief. The UNC BOG, comprised on its individual members, *see* N.C. G.S. §§ 116-5. -6, -6.1, and -7, was included from the initial filing of the Complaint. Defendants' insistence that without the addition of each of the individual members of the UNC BOG, neither Plaintiff nor the Class is entitled to damages is the reason for Plaintiff's Motion to Amend. This Amendment to add the name of each individual board member is cumbersome and is

- 7 -

Case 1:20-cv-01072-LCB-LPA   Document 20   Filed 06/10/21   Page 7 of 13

arguably not even necessary for the award of damages against them and for Plaintiff and the class in this case.

Because the Complaint makes it clear that Plaintiff and the class are seeking damages and injunctive relief against the officials of the UNC system who have approved policies misclassifying Plaintiff and the class as exempt and therefore not entitled to pre- or post-deprivation due process, it is not necessary to add each and every individual name of each and every individual member of the UNC BOG. Defendants argue that Plaintiff should have named "placeholder" defendants for the individual members of the UNC BOG in their individual capacity in her first amendment even though Plaintiff did not know at the time that Defendants would argue that no damages for prospective class members from the other constituent institutions could be awarded without naming the individual members in their individual capacity. However, Plaintiff could more easily amend the summons and the caption on the Amended Complaint to include say "the Board of Governors of the University of North Carolina, *and its members in their official and individual capacity*." If the court determines that process and service of process is defective, then Plaintiff's motion to amend can resolve that issue as well.

Where "the style of the plaintiffs' complaint makes it clear enough that a Section 1983 claim is pursued against the defendants in their personal capacities," a plaintiff can still state a claim for damages. *Ellis v. Thornsbury*, No. 2:14-CV-24641, , at 6 (S.D.W. Va. Sept. 25, 2015) (unpublished) (attached as Exhibit A). Moreover, the Fourth Circuit has made it clear that the rule in this Circuit is that "a plaintiff need

not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows*, 66 F.3d 56, 59 (4th Cir. 1995). The Court further noted that "[u]nder the standard we now adopt, when a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. Factors to be considered in include allegations that the defendant acted contrary to law and the customary provision of pre-and post-deprivation due process to State employees, that the plaintiff sought compensatory damages "since such relief is unavailable in official capacity [only] suits," *id.,* and from the "nature of any defenses raised in response to the complaint," *id.*.

In this case, Plaintiff alleged that the UNC BOG acting through its individual members approved the personnel policies which resulted in the misclassification of Plaintiff and members of the class which deprived them of pre- and post-deprivation due process. The only individuals who can provide Plaintiff and the class with injunctive relief and damages are those individuals who are in charge of the system-wide policies by the constituent institutions other than UNC at Chapel Hill, the UNC BOG and its members acted to approve the pre- and post-deprivation due process violations by approving or empowering unknown individuals within the UNC system administration to authorize the misclassification of Plaintiff and the class members at all of the constituent institutions as exempt in violation of N.C. G.S. § 126-5(c1)(8). *See* N.C. G.S. §§ 116-3 (incorporation and corporate powers of the UNC BOG); 116-4

(constituent institutions of UNC); 116-5 (membership of the UNC BOG); 116-6 (election and terms of the members of the UNC BOG). In addition, the General Assembly clearly stated its intention that the UNC BOG "administer the affairs of the University of North Carolina." N.C. G.S. § 116-7. It is hard to identify more appropriate individuals responsible for the UNC system-wide due process deprivation than the individual members of the UNC BOG.

In addition, Plaintiff evidenced her intent to seek damages by identifying all of the named Defendants in their individual capacity. Finally, the fact that the Defendant UNC BOG has raised the defense that Plaintiff has not sued the individual members in their individual capacity and is thus not entitled to damages and injunctive relief on behalf of all employees of all of the constituent institutions of the UNC system is a factor indicating that the Plaintiff intended to name the individual members of the Board of Governors in their individual capacity to obtain such relief.

As the United States Supreme Court has held, § 1983 is "not itself a source of substantive rights" but rather "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Here, Plaintiff and the prospective class members complain that their due process rights were violated, and they seek relief for those violations against the individuals responsible for the deprivation throughout the UNC system.

For the foregoing reasons, Plaintiff respectfully requests that this Court allow Plaintiff to file a Second Amended Complaint.

Respectfully submitted, this the 10th day of June 2021.

/S/ VALERIE BATEMAN
NC State Bar: 13417
T/F 919-436-3592
FORREST FIRM, P.C.
406 Blackwell St., Suite 420
Durham, NC 27701
valerie.bateman@forrestfirm.com

/S/ RACHEL M. BLUNK
NC State Bar: 42694
T/F 336-663-1052
FORREST FIRM, P.C.
125 S Elm St., Suite 100
Greensboro, NC 27401
rachel.blunk@forrestfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I certify, in reliance upon the word processing software used to prepare this document on a computer that, in accordance with Rule 7.3(d)(1) of the Local Civil Rules of Practice and Procedure, this reply to a response to a motion does not exceed 3,125 words, including the body of the brief, headings and footnotes, but not including the caption, signature lines, certificate of service, and any cover page or index are not included.

This the 10th day of June 2021.

/s/ VALERIE L. BATEMAN
FORREST FIRM, P.C.



## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed or caused to be filed the foregoing **REPLY** to the Defendants' Response to the Plaintiff's Motion to Amend the Amended Complaint with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel listed below:

> Kenzie Rakes
> Assistant Attorney General
> N.C. Dep't of Justice
> P.O. Box 629
> Raleigh, NC 27602-0629
>
> krakes@ncdoj.gov

This the 10th day of June 2021.

                                        /s/    VALERIE L. BATEMAN
                                              FORREST FIRM, P.C.