IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARTHA HOELZER and all similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:20CV1072 |
| THE BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff Martha Hoelzer brings this action for wrongful termination, among other claims, under Title I of the American Against Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and 42 U.S.C. § 1983 against Defendants, The Board of Governors of the University of North Carolina ("UNC Board"), The University of North Carolina at Chapel Hill ("UNC-CH"); and five administrators: Raymond Farrow, Barbara J. Stephenson, Daniel Lebold, David Routh, and Debbie Dibbert, (collectively, "Individual Defendants"). (ECF No. 4 ¶¶ 1–3, 6–12, 136–154.) Individual Defendants are being sued in both their individual and official capacities. Before the Court are Defendants' Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, (ECF No. 14); and Plaintiff's motions: (1) Motion to Amend the Amended Complaint, (ECF No. 17); and (2) Consent Motion to Extend Time to File Motion Under

Local Rule 23.1(b) to Certify Class, (ECF No. 21).

For the reasons stated below, Defendants' Motion to Dismiss will be granted in part and denied in part, Plaintiff's Motion to Amend Amended Complaint will be denied, and Plaintiff's Consent Motion to Extend Time to File Motion Under Local Rule 23.1(b) to Certify Class will be granted in part.

## I. BACKGROUND

Plaintiff, a former employee of Defendant UNC-CH, worked for the university off and on from 2002 until her termination on February 22, 2019. (ECF No. 4 ¶¶ 20, 135.) While working as a part-time researcher at UNC in 2002, Plaintiff was involved in a car accident which resulted in Plaintiff suffering significant injuries including a concussion and spending several weeks in the hospital. (*Id.* ¶¶ 21, 22.) "UNC-CH accepted responsibility and liability for [Plaintiff's] injuries under its worker compensation program and provided her with benefits thereunder." (*Id.* ¶ 23.)

Plaintiff returned to work at UNC-CH in August 2005 and worked approximately 9 months, before leaving UNC-CH to work elsewhere. (*Id.* ¶ 24.) In May 2010, Plaintiff returned to UNC-CH for a full-time position in the Alumni Relations and Development department at the Kenan Flagler Business School. (*Id.* ¶ 25.) In addition, and of particular significance here, in December 2015, Plaintiff sought a new position with UNC Global Organization ("UNC Global") as a development officer. While waiting to hear about the new position, she began experiencing concussion symptoms as a result of injuring her head in her home. (*Id.* ¶¶ 25, 28.) The next day, she received medical treatment and was formally diagnosed with a concussion. (*Id.* ¶ 29.) She began FMLA leave the same day. (*Id.* ¶ 30.)

On May 31, 2016, Plaintiff was informed that she received the UNC Global development position, and on August 29, 2016, began her new role as a full-time employee at UNC Global. (*Id.* ¶¶ 49, 52.) At that time, Plaintiff was informed that "she was exempt from the protections of the State Human Resources Act." (*Id.* ¶ 52). Further, while in her new role, Plaintiff continued to suffer symptoms related to her earlier concussions and "was continuing to receive treatment for both her concussion and her original worker's compensation injury." (*Id.* ¶ 54.) Despite her health issues, in June 2017, Plaintiff received an overall positive review during her year-end review. (*Id.* ¶ 69.) Likewise, on January 22, 2018, Plaintiff received another positive mid-year review from her supervisor, Defendant Lebold. (*Id.* ¶ 81.)

Less than a month after her mid-year review, Plaintiff was involved in another car accident, and two days later, she was diagnosed with a third concussion. (*Id.* ¶¶ 84–85.) Following the accident, from February 14, 2018 until April 4, 2018, Plaintiff was out on continuous full-time FMLA leave due to her concussion. (*Id.* ¶ 87.) While out on leave, Plaintiff "provided UNC-CH with a doctor's note requesting reasonable accommodations for her concussion." (*Id.* ¶ 90.) The next day, Plaintiff filled out and submitted a work accommodation form, and the day after that she "submitted a self-identification of disability." (*Id.* ¶¶ 91–92.) Plaintiff returned to work on April 5, 2018. (*Id.* ¶ 93.) Upon returning to work, Plaintiff was only allowed to work part-time for four hours a day excluding breaks, while remaining on FMLA the other four hours. (*Id.*) She worked this schedule from April 5, 2018 until June 4, 2018. (*Id.* ¶ 96.) On June 5 and June 6, 2018, Plaintiff's schedule changed and she "worked two 6-hour days, taking 2 hours of FMLA on each of those days," before returning to work full-time the next day, and only taking FMLA leave intermittently for

Case 1:20-cv-01072-LCB-LPA   Document 24   Filed 03/31/22   Page 3 of 34

medical appointments.  (*Id.* ¶¶ 107, 109.)

On June 8, 2018, Plaintiff met with Defendant Lebold for her year-end review.  (*Id.* ¶ 110.)  During this meeting, Lebold informed her that "she was not meeting expectations for the job, that he understood she was working hard, but perhaps the current role was not the best fit."  (*Id.* ¶ 111.)  He also told her that "the job was not going to change."  (*Id.*)  According to Plaintiff, Lebold did not explain how she was failing to meet expectations.  (*Id.* ¶ 113.)  In response, Plaintiff informed Lebold that "she was still suffering from a brain injury and that she needed some assistance in performing the duties of her position."  (*Id.*)  Plaintiff's negative review from Lebold resulted in her being placed on the Performance Improvement Plan ("PIP") on December 14, 2018.  (*Id.* ¶ 124.)  Throughout her time at UNC Global, "Plaintiff never received any written warnings or counseling sessions."  (*Id.* ¶ 125.)

Plaintiff later "inquired about the possibility of finding another position at [UNC-CH] that would be more accommodating of her brain injury and FMLA needs."  (*Id.* ¶ 117.)  To address the concerns raised by Plaintiff, the "ADA office provided [her] with a professional organizer."  (*Id.* ¶ 127.)  "The ADA office did not, however, discuss a job change with Plaintiff or indicate that other positions within UNC-CH might be available."  (*Id.*)  On February 12, 2019, Plaintiff was informed by the ADA office "that her department had denied a request to allow her to move to positions within her department and that as a result, she could look for positions in other departments with UNC-CH."  (*Id.* ¶ 133.)  The next day, Lebold sent Plaintiff a request for a meeting with HR on February 22, 2019.  (*Id.* ¶ 134.)  During the February 22, 2019 meeting, Plaintiff was informed "that she was an 'at will' employee and that her employment was ending."  (*Id.* ¶ 135.)  Plaintiff "filed a Charge with the Equal

4

Employment Opportunity Commission alleging violations of Title VII and . . . the ADA by Defendant." (*Id.* ¶ 14.) On September 3, 2020, she was "issued a right to sue letter." (*Id.*)

## II.   DEDENDANTS' MOTION TO DISMISS

Defendants bring this Motion to Dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 14.)

### A.   Standard of Review

#### 1.   Rule 12(b)(1)

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). A motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of proving subject matter jurisdiction rests with the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Furthermore, when evaluating a Rule 12(b)(1) motion to dismiss, the court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Though "not a true limit on the subject-matter jurisdiction of the federal courts, the Eleventh Amendment is a block on the exercise of that jurisdiction." *Roach v. W. Va. Reg'l Jail*

5

*& Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996) (internal quotation omitted); *accord Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) (stating that Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction"). Once asserted by the state, such immunity becomes a threshold issue that must be resolved before the court can address any of a plaintiff's claims. *See Constantine*, 411 F.3d at 482 ("Given the States' unique dignitary interest in avoiding suit, it is no less important to resolve Eleventh Amendment immunity questions as soon as possible after the State asserts its immunity." (citation and footnote omitted)).

### 2. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, a court must draw all reasonable inferences in the plaintiff's favor. *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013). A claim is plausible when the complaint alleges facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

6

However, "mere conclusory and speculative allegations" are insufficient, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013), and a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Vitol*, 708 F.3d at 548 (quoting *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)).

## B. Discussion

Defendants move to dismiss each count of Plaintiff's Amended Complaint which include: (1) Count One: Discrimination Based on Disability (Failure to Engage in the Interactive Process); (2) Count Two: Discrimination Based on Disability (Failure to Accommodate); (3) Count Three: Retaliation (For Requesting a Reasonable Accommodation Under the ADA); (4) Count Four: FMLA Violation (Retaliation); and (5) Count Five: 42 U.S.C. § 1983 (Deprivation of Due Process). (ECF No. 4 ¶¶ 136–154.) Because Plaintiff's § 1983 implicates this Court's jurisdiction, the Court will address this claim first.

### 1. Plaintiff's § 1983 Claims (Count Five)

Defendants first argue that Plaintiff's § 1983 claims should be dismissed because: (1) the claim against UNC-CH and the UNC Board is barred by the doctrine of sovereign immunity; (2) UNC-CH, the UNC-Board, and "individuals sued in their official capacity are not considered 'persons' within the meaning of section 1983"; (3) the *Ex Parte Young* exception "does not apply because the violation is not ongoing"; (4) Plaintiff's claims against the individual Defendants in their individual capacities is untimely; and (5) Plaintiff was an at-will employee and therefore "does not possess a protected property interest in her continued employment." (ECF No. 15 at 9–10.)

7

*Sovereign Immunity*

In support of its motion to dismiss Plaintiff's claims, Defendants argue that this Court lacks the ability to address Plaintiff's claims because UNC-CH and the UNC Board "are immune from suit under the doctrine of sovereign immunity." (*Id.* at 9; *see also id.* at 10–11.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This immunity "extends beyond the literal text of the Eleventh Amendment to prevent a state from being sued by one of its own citizens without its consent." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001). Simply put, "Eleventh Amendment immunity protects the States, their agencies, and officials from suit in federal court." *Allen v. Cooper*, 895 F.3d 337, 347 (4th Cir. 2018) (emphasis omitted), *aff'd*, 140 S. Ct. 994, 206 L. Ed. 2d 291 (2020). Ultimately, the "guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

Under the well-settled doctrine of sovereign immunity, "a state may not be sued in its own courts or elsewhere unless by statute it has consented to be sued or has otherwise waived its immunity from suit." *Smith v. Hefner*, 68 S.E.2d 783, 787 (N.C. 1952); *see Will v. Mich. Dep't of St. Police*, 491 U.S. 58, 66 (1989). Likewise, an agency of the state may only be sued when it has authorized such suits by statute. *Hefner*, 68 S.E.2d at 787. While 42 U.S.C. § 1983 does allow for suits for damages against state officials in their individual capacities, it does not allow for suits for money damages against state agencies considered "arms of the State" or state

8

officials in their official capacities. *Will*, 491 U.S. at 70–71. "Numerous courts have decided whether public state universities are 'arms of the state.' Almost universally, the answer has been in the affirmative." *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 262 (4th Cir. 2005); *see also Huang v. Bd. of Govs. of Univ. of N.C.*, 902 F.2d 1134, 1138 (4th Cir. 1990) (finding that North Carolina State University was an arm of the state and, therefore, entitled to Eleventh Amendment immunity). The UNC Board is also entitled to Eleventh Amendment immunity. *Huang*, 902 F.2d at 1138.

Here, Plaintiff has alleged § 1983 claims against Defendants UNC Board and UNC-CH, as well as Individual Defendants in their official capacities. The Court finds that UNC Board and UNC-CH, a public university, are arms of the state and, therefore, Eleventh Amendment immunity bars Plaintiff's claims against them. *See McAdoo v. Univ. of N.C. at Chapel Hill*, 248 F. Supp. 3d 705, 719 (M.D.N.C. 2017) ("Considering the four factors articulated by the Fourth Circuit, UNC, and its constituent institutions, including UNC-Chapel Hill, are arms and alter egos of the State of North Carolina.").

Plaintiff's claims against Individual Defendants in their official capacities likewise fail. "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal quotation omitted). Where a plaintiff has sued a state entity, claims against that entity's agents in their official capacities are "wholly duplicative" and "redundant." *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 721 (W.D.N.C. 2012). Here, Plaintiff has sued UNC-CH under § 1983; therefore, her claims against Individual Defendants in their official capacities are redundant and will be dismissed.

Nor is Plaintiff's argument that the *Ex Parte Young* exception saves her § 1983 claims against UNC-CH, UNC Board, and Individual Defendants acting in their official capacity persuasive. Under this exception a federal court may "issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). The Fourth Circuit has explained that this exception "is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act." *Id.* (emphasis omitted) (quoting *Ex Parte Young*, 209 U.S. 123, 155–56 (1908)). Plaintiff has alleged that she "was improperly classified as exempt from the protections of the State Human Resources Act." (ECF No. 4 ¶ 150.) Further, in her Prayer For Relief, Plaintiff requests "[t]hat this Court enjoin the Defendants from improperly classifying all employees . . . from being treated as exempt from . . . the State Human Resources Act." (*Id* at 31.) First, it is not state law that is being challenged here, rather Plaintiff is challenging what she calls a policy of the Board in applying state law. Next, while the requested relief is couched in "prospective" terms, such relief would not benefit Plaintiff who is no longer an employee of UNC-CH. Only retrospective relief would address Plaintiff's alleged injury in this case. Finally, in order for the exception to apply, a "special relation" must exist "between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar." *Waste Mgmt.*, 252 F.3d at 331. Plaintiff has not alleged such special relationship, nor does the Court find one. Thus, the Court concludes that viewing the allegations in Plaintiff's Complaint related to her § 1983 claims, she has failed to allege sufficient facts to demonstrate that the *Ex Parte Young* exception is applicable here.

Accordingly, Plaintiff's § 1983 claims against Defendants UNC-CH, UNC Board, and as well as Individual Defendants in their official capacities, are barred by the Eleventh Amendment and will be dismissed.

### ii. Statute of Limitations

Defendants also argue that Plaintiff's § 1983 claims against Individual Defendants in their individual capacity fails because Plaintiff's claims are time barred. (ECF No. 15 at 14.)

"[T]here is no federal statute of limitations applicable to suits under § 1983." *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1161 (4th Cir. 1991). The applicable statute of limitations must consequently "be borrowed from the analogous state statute of limitations," *id.*, meaning the statute of limitations governing suits "for the recovery of damages for personal injuries," *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *see also Battle v. Ledford*, 912 F.3d 708, 713 n. 4 (4th Cir. 2019) ("[T]he Supreme Court has unequivocally held that personal injury limitations periods apply to § 1983 claims."). In North Carolina, the statute of limitations for personal injury actions is three years. N.C. Gen. Stat. § 1-52(5); *see Nat'l Adver. Co.*, 947 F.2d at 1162 (holding that § 1-52(5) governs 42 U.S.C. § 1983 claims). "A cause of action generally accrues, and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." *Bissette v. Harrod*, 738 S.E.2d 792, 799 (N.C. Ct. App. 2013); *see also Hadley v. City of Mebane*, 1:18CV366, 2020 WL 1539724 at *12 (M.D.N.C. Mar. 31, 2020) ("The cause of action accrues when a plaintiff knows or has reason to know of the injury which is the basis of the action." (internal quotations omitted)).

Here, Defendants argue that Plaintiff's claim is time barred because "she claims that her classification as an exempt employee violated her employment contract." (ECF No. 15 at

14.)  According to Defendants, because Plaintiff "accepted what she knew to be an exempt position in August 2016," the statute of limitations began to run on that date.  (*Id.*)  Because Plaintiff filed this lawsuit more than three years after she learned of her exempt status in August 2016, Defendants argue that this claim is untimely.  (*Id.*)

This Court disagrees.  Plaintiff alleges that she suffered an injury when Defendants violated her constitutional rights by terminating her without due process.  (ECF No. 4 ¶¶ 149–154.)  Thus, Plaintiff's cause of action accrued—and the statute of limitations began to run—once she was terminated.  Plaintiff was terminated on February 22, 2019.  Therefore, she had three years from that date to initiate this action.  Plaintiff filed her initial complaint on December 1, 2020, which is within the three-year statute of limitations for § 1983 claims.  Thus, Plaintiff's § 1983 claims against Individual Defendants in their individual capacities are not time barred.

### iii.    *Deprivation of Property Interest*

Defendants argue that Plaintiff's § 1983 claims against Individual Defendants in their individual capacities fail because Plaintiff "has not alleged that she has a protected property interest that entitles her to procedural due process."  (ECF No. 15 at 15.)  Specifically, Defendants argue that Plaintiff lacks this property interest because she "accepted an exempt, at-will position."  (*Id.*)

For an employee to "invoke Due Process protection under the United States Constitution, an employee must demonstrate a 'property interest' in continued employment under State law."  *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 816 (M.D.N.C. 2005) (citing *Bishop v. Wood*, 426 U.S. 341, 344–45 (1976); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564,

570–71 (1972)).  "Under North Carolina law, an employee has a protected 'property' interest in continued employment only if the employee can show a legitimate claim to continued employment under a contract, a state statute or a local ordinance."  *Peace v. Emp't Sec. Comm'n*, 507 S.E.2d 272, 277 (N.C. 1998).  The North Carolina Human Resources Act (the "Act") provides that a "career State employee" who is subject to the Act cannot be discharged "except for just cause."  N.C. Gen. Stat. § 126-35(a).  The Act defines a "career State employee" as a State employee who: "(1) Is in a permanent position with a permanent appointment, and (2) Has been continuously employed by the State of North Carolina . . . in a position subject to the [Act] for the immediate 12 preceding months."  N.C. Gen. Stat. § 126-1.1(a).

At the time of Plaintiff's termination, the Act stated in relevant part that it applied to "[a]ll State employees not herein exempt."  N.C. Gen. Stat. § 126-5(a)(1) (Effective: July 1, 2018, to June 30, 2019).  Exempted employees included "[i]nstructional and research staff, information technology professionals, physicians, and dentists of The University of North Carolina, including the faculty of the North Carolina School of Science and Mathematics."  N.C. Gen. Stat. § 126-5(c1)(8) (Effective: July 1, 2018, to June 30, 2019)[1].

Here, the parties do not dispute that Plaintiff was a permanent employee.  *See* 25 N.C. Admin. Code 1C.0402.  In addition, Plaintiff worked continuously in her position at UNC Global from August 29, 2016, until her termination on February 22, 2019, which exceeds the 12-month requirement necessary for her to be a career State employee.  As such, Plaintiff has alleged that she was a career State employee at the time of her termination.  As a career State

_____

[1] The portion of the Act providing which employees are subject to it has been amended several times since Plaintiff's termination.  Neither party raises the fact that this law has been amended, nor does either party argue that a subsequent amendment to the law should apply in this case.

employee, Plaintiff has a protected property interest in her continued employment and could not have been terminated without just cause. Plaintiff alleges that she was terminated without receiving the procedural due process afforded to her by the Act. Section 126-35 of the Act provides:

> No career State employee subject to the North Carolina Human Resources Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause. In cases of such disciplinary action, the employee shall, before the action is taken, be furnished with a statement in writing setting forth the specific acts or omissions that are the reasons for the disciplinary action and the employee's appeal rights.

N.C. Gen. Stat. § 126-35(a). Plaintiff has alleged sufficient facts to show that she was terminated without receiving "a statement in writing setting forth the specific acts or omissions that are the reasons for the disciplinary action and the employee's appeal right." *See id.* Thus, Plaintiff has alleged that her termination deprived her of her property interest in her employment without due process.

Even though Plaintiff has alleged a due process violation pursuant to § 1983, she has only plausibly alleged this violation against Defendant Lebold in his individual capacity. "In order to sufficiently allege personal liability under § 1983, a plaintiff must assert [that] a defendant acted directly in violating the plaintiff's constitutional rights." *Miller v. Union Cnty. Pub. Schs.*, No. 3:16-cv-00666, 2017 WL 3923977, at *7 (W.D.N.C. Sept. 7, 2017) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th. Cir. 1977)); *see also Loughlin v. Vance Cnty. Dep't of Soc. Servs.*, No. 5:14-CV-219-FL, 2015 WL 11117120, at *4 (E.D.N.C. Mar. 31, 2015) ("Suits against officials in their individual capacities require allegations of personal involvement in the deprivation of rights."). To prevail in a § 1983 personal capacity suit, Plaintiff must show that the defendant acted personally in the deprivation of her constitutional rights. *See Wright v.*

*Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." (internal quotation marks omitted)). The defendant "must have had personal knowledge of and involvement in the alleged deprivation of [the plaintiff's] rights in order to be liable." *Id.*

Here, Plaintiff has alleged sufficient facts to state a claim against Defendant Lebold under § 1983. However, Plaintiff has failed to state a claim against the other Individual Defendants under § 1983. Notably absent from her Amended Complaint are specific allegations of any other Individual Defendants personal involvement in the deprivation of her rights. Plaintiff's Amended Complaint is devoid of allegations regarding the personal acts or involvement of these Individual Defendants in her termination and the deprivation of her due process rights under the Act. Nor does she allege that these Individual Defendants had personal knowledge of this deprivation. As such, Individual Defendants Farrow, Stephenson, Routh, and Dibbert cannot be held liable under § 1983 for the violation of Plaintiff's rights, and therefore, Plaintiff's § 1983 claims against them will be dismissed.

Accordingly, Defendants' motion will be granted with respect to Plaintiff's § 1983 claims against all Individual Defendants in their individual capacities except Individual Defendant Lebold. Only the § 1983 claim against Individual Defendant Lebold survives Defendants 'motion.

2.    ADA Claims (Counts One, Two, and Three)

Next, Defendants seek to dismiss Plaintiff's ADA claims arguing that (1) "there is no stand-alone legal claim for failure to engage in the interactive process," and that UNC-CH

"did engage in the interactive process"; (2) UNC-CH provided Plaintiff "with every accommodation she requested or a reasonable alternative accommodation," and that Plaintiff "could not perform the essential function of her job, even with accommodations"; and (3) Plaintiff failed "to allege facts that show a causal connection between [her] protected conduct and her termination." (ECF No. 15 at 16–17.)

Plaintiff asserts her ADA "claims against Defendants only in their official or representative capacity." (ECF No. 16 at 4.) However, as discussed above in Part II.B.1.i, these claims against Individual Defendants in their official capacities are wholly duplicative and redundant because Plaintiff has sued UNC-CH. Accordingly, Plaintiff's ADA claims against Individual Defendants in their official capacities will be dismissed.

        *i.*    *Failure to Engage in the Interactive Process*

Defendants argue that Plaintiff's ADA claim for failure to engage in the interactive process should be dismissed, because there is no separate, independent claim for failure to engage in the interactive process, and that Defendant UNC-CH did engage in the interactive process with Plaintiff. (ECF No. 15 at 17–18.)

As an initial matter, Plaintiff's response brief is unclear whether she is still asserting a separate, independent claim for failure to engage in the interactive process. (*See* ECF No. 16 at 9–13.) Rather, Plaintiff appears to be arguing her failure to engage in the interactive process claim as part of her ADA discrimination claim for failure to accommodate. To the extent that Plaintiff is still pursuing this claim, it fails because Defendants are correct that there is no stand-alone claim for failure to engage in the interactive process. *See Dressel v. Safeway, Inc.*, No. ELH-19-1556, 2020 WL 5880860, at *7 (D. Md. Oct. 2, 2020) ("Although an employer's

deficient participation in the statutorily-mandated interactive process may furnish a claim for failure to provide reasonable accommodation, it does not give rise to a separate, independent claim."); *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) ("[T]he interactive process 'is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought.'" (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000)).

Accordingly, Plaintiff's stand-alone claim for failure to engage in the interactive process will be dismissed.

### ii. *Disability Discrimination: Failure to Accommodate*

Defendants next argue that Plaintiff's failure to accommodate claim fails, because she "has not alleged facts to show that she was qualified to perform her job without a reasonable accommodation or that [UNC-CH] refused to make a reasonable accommodation." (ECF No. 15 at 20.)

To state a prima facie case for failure to accommodate under the ADA, Plaintiff must show: (1) that she was an individual who had a disability within the statute; (2) that the employer had notice of the disability; (3) that, with reasonable accommodation, she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *Wilson*, 717 F.3d at 345. Although a plaintiff does not have to specifically plead every element of a prima facie case of discrimination in her complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), she must still plead "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.

17

Here, the first two elements are not in dispute.  Plaintiff has alleged that she has a disability within the statute: "Plaintiff has a traumatic brain injury which is a disability as defined in 42 U.S.C. § 12102(2)."  (ECF No. 4 ¶ 136.)  Plaintiff has also alleged several facts, and UNC-CH does not dispute, that UNC-CH had notice of her disability.  (*See id.* ¶¶ 35, 37, 43–45, 90–92, 113, 115, 117, 127, 133.)   Rather, the parties contest the third and fourth elements.

Defendants argue that even with an accommodation Plaintiff could not perform the essential functions of her position.  A function is essential to the position when "'the reason the position exists is to perform that function,' when there aren't enough employees available to perform the function, or when the function is so specialized that someone is hired specifically because of his or her expertise in performing that function." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 579 (4th Cir. 2015) (quoting 29 C.F.R. § 1630.2(n)(2)).   An accommodation is reasonable if it enables a qualified "individual with a disability . . . to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).  A reasonable accommodation can include "job restructuring, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B) (emphasis added).  "An employer is not required to grant even a reasonable accommodation unless it would enable the employee to perform *all* of the essential functions of her position." *Jacobs*, 780 F.3d at 581.  Under the ADA, employers have a good-faith duty "to engage [with their employees] in an interactive process to identify a

18

reasonable accommodation." *Wilson*, 717 F.3d at 346. "[A]n employer will not be liable for failure to engage in the interactive process if the employee ultimately fails to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position." *Jacobs*, 780 F.3d at 581.

In her Amended Complaint, Plaintiff has not specifically articulated the essential functions of her job. However, Plaintiff has alleged facts from which the Court can reasonably infer that some of the essential functions of her job include: fundraising, (ECF No. 4 ¶¶ 59, 64, 66, 77, 94, 103, 104, 112); planning events, (*id.* ¶¶ 57, 59, 126, 128); and sending out "CGEF fall appeals," (*id.* ¶¶ 66, 70, 75, 77, 78, 105, 128).

Plaintiff also failed to allege that she was able to perform the essential functions of her job with or without a reasonable accommodation. As Defendants note in their brief, Plaintiff has alleged that she was provided with several accommodations including: "exhaustion of FMLA leave, shorter work days until she could return to work full time, the ability to go to the doctor as needed, and a professional organizer." (ECF No. 15 at 20.) Plaintiff asserts several allegations that she was successful in her job. However, Plaintiff's allegations also show that, both with and without accommodations, her job performance was poor. *See Jacobs*, 780 F.3d at 581 (stating that an employee who is a "poor performer" is "unable to perform the essential functions of the position").

Plaintiff alleges that she received several negative reviews and was placed on the Performance Improvement Plan. In addition, she alleges facts showing that her performance of the essential function of sending out the CGEF appeals was unsatisfactory because the mailings were repeatedly delayed. This delay occurred both when Plaintiff did and did not

19

have accommodations. For instance, in fall 2017, when Plaintiff did not have any accommodations, she was delayed in mailing the CGEF appeals. The mailings were likewise delayed in 2018, when Plaintiff did have some accommodations in place. Plaintiff, however, failed to allege that there would not be a delay if she had an accommodation. She also does not allege that her disability was the reason for the delay, but rather blames both of the delays on Defendant Lebold's actions, and the 2018 delay on the lack of additional staffing while she worked reduced hours. In addition, Plaintiff has not identified any accommodation that would have remedied her poor performance. Thus, because Plaintiff has alleged facts showing poor job performance unrelated to her disability, she has failed to show that she was able to perform the essential functions of position with or without a reasonable accommodation.

Furthermore, Plaintiff has failed to allege facts that show that Defendants refused to provide her with reasonable accommodations that would have allowed her to perform the essential functions of her position. Plaintiff concedes in her response brief that UNC-CH did engage in the interactive process with her to identify a reasonable accommodation: (1) "between June 26, 2018, and February 12, 2019, Defendants (through UNC ADA office) and Plaintiff were engaged in the interactive process, (ECF No. 16 at 10); (2) "[d]espite the ongoing interactive process, Defendant Lebold issued Plaintiff a PIP on December 14, 2018, and a negative mid-year review on January 31, 2019," (*id.* at 15); (3) "[t]he interactive process resulted in Plaintiff being informed on February 12, 2019, that her department had rejected the accommodation of an internal departmental transfer," (*id.*); and (4) "despite the ongoing interactive process, Defendant Lebold terminated Plaintiff on February 22, 2019," (*id.*). Plaintiff contends that Defendants did not grant her a reasonable accommodation because

Defendants failed "to explore the possibility of placement in other jobs at" UNC-CH. (*id.* at 12.) However, Plaintiff has failed to allege that she was qualified for a vacant position at UNC-CH meaning that she would be able to perform *all* of the essential functions of that position. *See Petty v. Freightliner Corp.*, 123 F. Supp. 2d 979, 984 (W.D.N.C. 2000) ("[T]he Plaintiff has the burden of showing that reasonable accommodations are available and that he is qualified for the position to which he seeks reassignment." (citing *Reed v. Heil Co.*, 206 F.3d 1055, 1062 (11th Cir. 2000))). Nor has she alleged facts that UNC-CH refused to consider her for any vacant position for which she was qualified. Thus, Plaintiff has failed to allege facts to state a plausible claim for relief for failure to accommodate.

Accordingly, Defendants' Motion to Dismiss is granted as to Plaintiff's disability discrimination claim under the ADA.

### iii.   *ADA Retaliation*

Defendants next move to dismiss Plaintiff's ADA retaliation claim arguing that she "has not alleged facts to show a causal connection between her request for accommodations under the ADA and her termination." (ECF No. 15 at 22–23.)

Retaliation under the ADA is prohibited by § 12203(a) which provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). For an ADA retaliation claim, "[a] plaintiff need not show that she is disabled within the meaning of the ADA." *Jacobs*, 780 F.3d at 577 (citing *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001)); *see Colon-Fontanez v. Mun. of San Juan*, 671 F. Supp.

2d 300, 331 (D.P.R. 2009) ("A plaintiff may assert a claim for retaliation, even where the underlying claim for disability discrimination fails."), *aff'd*, 660 F.3d 17 (1st Cir. 2011); *see also Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997) ("Unlike a plaintiff in an ADA *discrimination* case, a plaintiff in an ADA *retaliation* case need not establish that he is a 'qualified individual with a disability.' By its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." (quoting § 12203(a))).

To establish a prima facie case of ADA retaliation under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must show: "(1) [s]he engaged in protected activity, (2) [her] employer took adverse action against [her], and (3) a causal relationship existed between the protected activity and the adverse employment action."[2] *Thomas v. City of Annapolis, Md.*, 851 F. App'x 341, 350 (4th Cir. 2021). Although a plaintiff does not have to specifically plead every element of a prima facie case of retaliation in her complaint, *Swierkiewicz*, 534 U.S. at 511, she must still plead "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.

A plaintiff engages in a protected activity when she requests an accommodation. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001). Here, Defendants do not dispute that Plaintiff engaged in a protected activity by requesting an accommodation.

Under Fourth Circuit precedent, an adverse employment action exists "when an employer changes an employee's job focuses on metrics like the employee's salary, benefits,

---

[2] Courts use Title VII retaliation case law in examining ADA retaliation claims. *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) ("Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases.").

and opportunity for promotion." *Csicsmann v. Sallada*, 211 F. App'x 163, 168 (4th Cir. 2006). For an act "to constitute an adverse employment action, the 'plaintiff must show that a reasonable employee would have found the challenged action to be materially adverse.'" *Id.* (quoting *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 (2006)). A challenged action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (2006) (internal quotations omitted). An adverse employment action occurs when an employer terminates an employee. *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003). To the contrary, "negative written warnings or reviews have generally been rejected as not sufficiently adverse to constitute an adverse employment action." *Cummings v. Bank of Am., N.A.*, C.A. No. 608-2236-HMH-BHH, 2010 WL 412549, at *9 (D.S.C. Jan. 27, 2010) (citing *Byra–Grzegorczyk v. Bristol-Myers Squibb Co.*, 572 F. Supp. 2d 233, 252 (D. Conn. 2008)).

Here, neither party disputes that Plaintiff suffered an adverse employment action when she was terminated. Rather, in her response, Plaintiff argues that she also suffered adverse employment actions by receiving a negative performance review and being placed on the PIP. (ECF No. 16 at 13–14.) Plaintiff's negative performance reviews do not constitute an adverse employment action. *See Cummings*, 2010 WL 412549, at *9. Nor has Plaintiff alleged facts to show how being placed on the PIP is materially adverse and affects her salary, benefits, or opportunity for promotion. Therefore, this Court finds that the only adverse employment action that Plaintiff alleged that she suffered was her termination.

A plaintiff may establish a causal relationship "by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and

(2) the employer took adverse action against the employee soon after becoming aware of such activity." *Strothers v. City of Laurel*, 895 F.3d 317, 336 (4th Cir. 2018). The Fourth Circuit has held that a "six-month lag is sufficient to negate any inference of causation." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001); *see also Graves v. Bank of Am., N.A.*, 54 F. Supp. 3d 434, 443 (M.D.N.C. 2014) (finding seven months to be too long to establish a causal relationship); *Booth v. Maryland*, 337 F. App'x 301, 310 (4th Cir. 2009) (finding nine months to be "'too remote' to prove the causal connection alone.").

According to Plaintiff's Amended Complaint, on June 26, 2018, she "inquired about the possibility of finding another position at [UNC-CH] that would be more accommodating of her brain injury and FMLA needs." (ECF No. 4 ¶ 117.) Reviewing the allegations in the light most favorable to Plaintiff, and resolving all inferences in her favor, the Court construes this allegation as a request for an accommodation. Therefore, June 26, 2018, was the last time Plaintiff alleges that she engaged in a protected activity. Plaintiff was terminated almost eight months later on February 22, 2019. The approximately eight months between Plaintiff requesting an accommodation and her termination is too long to establish a causal relationship on its own, and Plaintiff has failed to allege any additional facts to raise the reasonable inference that she was terminated because of her protected activity. Thus, Plaintiff has failed to allege sufficient facts to establish causation and to state a claim for ADA retaliation.

Accordingly, Defendants' Motion to Dismiss Plaintiff's ADA retaliation claim will be granted.

3.    FMLA Retaliation Claim (Count Four)

Defendants finally move to dismiss Plaintiff's FMLA retaliation claim arguing that, similar to her ADA retaliation claim, Plaintiff likewise has failed to allege facts showing a causal connection between her FMLA leave and termination. (ECF No. 15 at 26.) Plaintiff asserts her FMLA "claims against Defendants only in their official or representative capacity." (ECF No. 16 at 4.) However, as discussed above in Part II.B.1.i, these claims against the individual Defendants in their official capacities are wholly duplicative and redundant because Plaintiff has sued UNC-CH. Accordingly, Plaintiff's FMLA claims against Individual Defendants in their official capacities will be dismissed.

To state a FMLA retaliation claim capable of surviving a motion to dismiss, a plaintiff must allege facts sufficient to permit the court to plausibly infer that: (1) she "engaged in a protected activity"; (2) her employer "took adverse action against [her]"; and (3) "the adverse action was causally connected to [her] protected activity."[3] *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006); *Snipes v. Sw. Virginia Reg'l Jail Auth.*, 350 F. Supp. 3d 489, 494 (W.D. Va. 2018). Although a plaintiff does not have to specifically plead every element of a prima facie case of retaliation in her complaint, *Swierkiewicz*, 534 U.S. at 511, she must still plead "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570. "The Fourth Circuit has held that taking FMLA leave is a protected activity under the FMLA and recognizes a cause of action for retaliation where an employee alleges

---

[3] Courts use Title VII retaliation case law in examining FMLA retaliation claims. *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 429 (4th Cir. 2015) ("Retaliation claims brought under the FMLA are analogous to those brought under Title VII.").

25

that he was discharged for taking FMLA leave." *Moss v. City of Abbeville*, 740 F. Supp. 2d 738, 744 (D.S.C. 2010).

Again, here, Defendants do not dispute that Plaintiff participated in a protected activity by taking FMLA leave. Nor do they dispute that her termination was an adverse employment action.[4] Rather, Defendants contest the third element, arguing that Plaintiff has failed to allege a causal connection between her taking FMLA leave and her termination. (ECF No. 15 at 26.) As mentioned above, a plaintiff may satisfy the third element of her retaliation claim by alleging a sufficiently close temporal proximity between the adverse employment action she suffers and the protected activity she engages in. *Yashenko*, 446 F.3d at 551. Again, the Fourth Circuit has held that a "six-month lag is sufficient to negate any inference of causation." *Hooven-Lewis*, 249 F.3d at 278; *see also Graves*, 54 F. Supp. 3d at 443 (finding seven months to be too long to establish a causal relationship); *Booth*, 337 F. App'x at 310 (finding nine months to be "'too remote' to prove the causal connection alone.").

Here, Plaintiff began her FMLA leave on February 14, 2018. (ECF No. 4 ¶ 87.) On April 5, 2018, she returned to work part-time with a schedule where she worked four hours a day, and "remained on FMLA for the other four hours of the day." (*Id.* ¶ 93.) This work schedule continued until June 5, 2018. (*Id.* ¶ 107.) On June 5 and June 6, 2018, Plaintiff's schedule changed and she "worked two 6-hour days, taking 2 hours of FMLA on each of those days." (*Id.* ¶ 107.) She returned to work full-time on June 7, 2018, "taking FMLA for intermittent medical appointments." (*Id.* ¶¶ 107, 109.) Although Plaintiff alleges that she took

---

[4] Plaintiff also alleges that she suffered adverse employment actions by receiving a negative performance review and being placed on a PIP. (ECF No. 16 at 13–14.) For the reasons provided in Part II.B.2.iii, this Court finds that her negative performance review and being placed on a PIP do not constitute adverse employment actions.

FMLA intermittently for medical appointments after June 7, 2018, Plaintiff neglects to allege any specific dates which she did so. Thus, according to Plaintiff's Amended Complaint, the last day she engaged in the protected activity of taking FMLA leave was June 7, 2018. Plaintiff was terminated over eight months later on February 22, 2019. As above, the eight months between Plaintiff taking FMLA leave and her termination is too long to establish a causal relationship on its own. Thus, Plaintiff has failed to allege sufficient facts to establish a causal relationship and to state a claim for FMLA retaliation.

Accordingly, Defendants' Motion to Dismiss Plaintiff's FMLA retaliation claim will be granted.

In sum, review of the allegations in Plaintiff's Amended Complaint, taken in the light most favorable to her and resolving all inferences in her favor, leads the Court to conclude that Plaintiff has made sufficient allegations to plausibly allege that she had a property interest in her continued employment and that her termination without procedural due process deprived her of her constitutional rights in violation of § 1983. However, the allegations in Plaintiff's Complaint were insufficient to plausibly allege a claim of disability discrimination for failure to accommodate under the ADA, ADA retaliation, FMLA retaliation, and deprivation of due process under § 1983 against the UNC Board, UNC-CH, all Individual Defendants in their official capacities, and Individual Defendants Farrow, Stephenson, Routh, and Dibbert in their individual capacities.

## III. PLAINTIFF'S MOTION TO AMEND AMENDED COMPLAINT

Plaintiff moves to amend her Amended Complaint to include as part of her § 1983 suit the names of the individual members of the current UNC Board, and to specify that these

27

members are being sued in their individual capacity.  (ECF No. 17.)

## A.    Standard of Review

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure a party may amend a pleading by obtaining consent of the opposing party or leave of the court.  Fed. R. Civ. P. 15(a)(2).  The determination of whether to grant or deny a motion to amend a pleading lies within the sound discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987).  While the court has discretion to grant or deny leave to amend a pleading, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Supreme Court has made clear that the Federal Rule of Civil Procedure declaring that leave to amend shall be freely given when justice so requires is a "mandate ... to be heeded."  *Foman*, 371 U.S. at 182.  "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities."  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  Indeed, motions to amend are "[s]o useful . . . and of such service in the efficient administration of justice that they ought to be allowed as a matter of course, unless some particular reason for disallowing them appears."  *New Amsterdam Cas. Co. v Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963).

"[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182).  A plaintiff's request to amend a complaint is futile if the proposed amended complaint could not satisfy the appropriate requirements of the Federal Rules of Civil Procedure, including Rule 12(b)(6).  *See United States ex rel. Wilson v. Kellogg Brown*

*& Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).  The Fourth Circuit has cautioned that "[l]eave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.

### B.    Discussion

Plaintiff claims that she neglected to name the members of the UNC Board and note that she was suing them in their individual capacities in her initial complaint and Amended Complaint, "due to their numerosity and the fact that the identity of the particular members serving at the time of Plaintiff's termination . . . was not known."  (ECF No. 17 ¶ 5.)  She also acknowledges that her previous complaints did not "make it crystal clear that Plaintiff sought to hold the unnamed members of the [UNC Board] responsible individually for the due process deprivations by either approving or delegating the approval of the policy designating the Plaintiff and other similarly situated as exempt."  (*Id.* ¶ 6.)

Defendants, in response, argue that Plaintiff's "motion should be denied because a previous amendment failed to fix this issue, this motion was not promptly filed, the requested amendment is futile, and the amendment is unduly prejudicial."  (ECF No. 19 ¶ 2.)  Defendants claim that the amendment is futile for five reasons: (1) the "claim is barred by the statute of limitations"; (2) Plaintiff is "attempting to add the wrong parties" by adding the current UNC Board members rather than the members at the time of her termination; (3) the *Ex Parte Young* exception does not apply, because the UNC Board members do not have a "special relation" to the policy in question; (4) the individual members of the UNC Board "do not have the authority to approve the policy or delegate the authority 'that resulted in the deprivation of due process suffered by Plaintiff'"; and (5) "the purpose of this amendment

29

must be to harass the current members of the [UNC] Board." (*Id.* ¶¶ 8–15.)

The Court concludes that Plaintiff's proposed amended complaint is futile because it fails to allege facts to establish that the individual members of the UNC Board are personally liable for violating her constitutional rights. "In order to sufficiently allege personal liability under § 1983, a plaintiff must assert [that] a defendant acted directly in violating the plaintiff's constitutional rights." *Miller*, 2017 WL 3923977 at *7 (citing *Vinnedge*, 550 F.2d at 928); *see also Loughlin*, 2015 WL 11117120, at *4 ("Suits against officials in their individual capacities require allegations of personal involvement in the deprivation of rights."). To prevail in a § 1983 personal capacity suit, Plaintiff must show that the defendant acted personally in the deprivation of her constitutional rights. *See Wright*, 766 F.2d at 850 ("In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." (internal quotation marks omitted)). The defendant "must have had personal knowledge of and involvement in the alleged deprivation of [the plaintiff's] rights in order to be liable." *Id.*

Defendants argue that the individual UNC Board members cannot be held liable for actions taken by the UNC Board as a whole. (ECF No. 19 at 5–6.) This issue was recently addressed by the U.S. District Court for the District of Maryland in *Willey v. Board of Education of St. Mary's County*, No. PWG-20-161, 2021 WL 3857950 (D. Md. Aug. 30, 2021). In *Willey*, the Court held that individual board members can only be held liable for actions of the whole board, stating that:

30

Surely no *individual* board member or board employee may be held liable for the actions of a board as a whole. If, however, a plaintiff can make 1) specific allegations regarding the *individual* conduct of a member of board, and 2) that individual action is found to have deprived the plaintiff of a federal right, then the individual member of that board may be held liable for his or her actions under § 1983.

*Id.* at *10. The court further provided that "the plaintiff must do more than make conclusory claims of individual member conduct; specific allegations of individual conduct are required." *Id.* In addition, "allegations that refer generally to the group, without identifying specific individuals or conduct, are insufficient to state a claim against any individual board member." *Id.*

Here, Defendants claim that "only the Board as an official entity can vote to approve, amend, or withdraw a policy," and that the "individual members of the Board in their individual capacities cannot take actions that bind the Board." (ECF No. 19 at 5.) To support this contention, Defendants cite to the Scope of Authority provision of the UNC Policy Manual 200.7(III)(C) which provides:

Board members' authority is collective, not individual, and only arises from their participation with other members of the board when officially convened. Individual board members hold no inherent authority under applicable law or University policy to exercise administrative or executive functions on behalf of their institution. Individual board members may not bind the board or the institution, enter into contracts on behalf of the board or the institution, or otherwise act on behalf of or in the name of the board or institution unless clearly authorized to do so in a particular matter by the board itself or the chief executive officer of the institution.

(*Id.* ¶ 13.)

In her proposed amended complaint, Plaintiff only names the individual members of the UNC Board in two footnotes. (ECF No. 17-1 at 1 n.1–2.) She then proceeds to assert the following allegations against the UNC Board in their individual capacities for her § 1983

claims:

> 3. This is also an action brought against _each individual member of_ the Board of Governors of the University of North Carolina[ ] with regard to its constituent institutions and the University of North Carolina at Chapel Hill, one of the constituent institutions, pursuant to § 1983 of Title 42 of the United States Code Annotated (42 U.S.C.A. § 1983) for procedural due process violations suffered by Plaintiff Hoelzer and also by other similarly situated individuals consisting of a class of former employees of the constituent institutions of the University of North Carolina who have been erroneously designated as exempt from the due process protections of the State Human Resources Act (N.C. G.S. Chapter 126) and specifically under N.C.G.S. § 126-5(c1)(8), and as a result, upon involuntary termination and taking of their property rights to State employment, deprived of both pre-deprivation and post-deprivation due process, _pursuant to policies approved, or the approval of which was delegated and therefore approved, by the individual members of the Board of Governors as have served on the Board during the relevant times in this Complaint._

> 6. The Board of Governors of the University of North Carolina is now a body politic and corporate, an entity the State of North Carolina, and is capable of suing and being sued, as set out in N.C. Gen. Stat. § 116-3. _The Board of Governors is also composed of 24 individual members elected and selected from time to time pursuant to the provisions of N.C. Gen. Stat. §§ 116-1, -2, 4, 5, and -6._

> 7. Pursuant to N.C. Gen. Stat. § 116-11, the Board of Governors _and its individual members in their individual capacity_ are responsible for the general determination, control, supervision, management and governance of all affairs of the constituent institution, which includes control over the approval of policies and designations related to the status of employees of the constituent institutions as career state employees under Chapter 126 of the State Human Resources act entitled to due process for the deprivation of the property rights belonging to such employees. Defendant UNC-CH has been and is now one of the constituent institutions of the University of North Carolina as set out in N.C. Gen. Stat. § 116-4 and employed Plaintiff at all relevant times as an employer all relevant statutes.

(_Id._ ¶¶ 3, 6–7.) These are the only allegations against the individual members of the UNC Board in Plaintiff's proposed amended complaint.

Notably absent from Plaintiff's proposed amended complaint are specific allegations regarding the individual conduct of any individual board member. Plaintiff's allegations only

32

refer to the individual members of the UNC Board generally as a group and fails to identify specific individuals and conduct attributable to that individual. These allegations are insufficient to show that the individual members acted directly or personally to sufficiently allege personal liability under § 1983. She also has failed to allege that the individual members had personal knowledge or personal involvement in the deprivation of Plaintiff's constitutional rights. Thus, Plaintiff's proposed amended complaint is clearly insufficient and fails to satisfy the requirements of Rule 12(b)(6).

Accordingly, Plaintiff's Motion to Amend Amended Complaint will be denied for futility.

## IV. CONSENT MOTION TO EXTEND TIME

The last motion before the Court is Plaintiff's Consent Motion to Extend Time to File Motion Under Local Rule 23.1(b) to Certify Class. (ECF No. 21.) In this motion, Plaintiff seeks an extension of time for filing "a motion to certify a class until 90 days after the Court rules on" Defendants' Motion to Dismiss and Plaintiff's Motion to Amend Amended Complaint. (*Id.* at 2.) To the extent that Plaintiff intends to pursue its motion to certify class in light of this Court's ruling, the Court will extend Plaintiff's deadline for filing such motion for no more than 30 days following entry of this Order.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (ECF No. 14), is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** with respect to Plaintiff's claims for Count One: Discrimination Based on Disability (Failure to Engage in

33

the Interactive Process); Count Two: Discrimination Based on Disability (Failure to Accommodate); Count Three: Retaliation (For Requesting a Reasonable Accommodation Under the ADA); Count Four: FMLA Violation (Retaliation); and Count Five: 42 U.S.C. § 1983 (Deprivation of Due Process) against UNC Board, UNC-CH, Individual Defendants in their official capacities, and Individual Defendants Farrow, Stephenson, Routh, and Dibbert; in their individual capacities and those claims are **DISMISSED**. Defendant's Motion is **DENIED** as to Plaintiff's Count Five: 42 U.S.C. § 1983 (Deprivation of Due Process) claims against Individual Defendant Lebold in his individual capacity only.

  **IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Amended Complaint, (ECF No. 17), is **DENIED.**

  **IT IS FURTHER ORDERED** that Plaintiff's Consent Motion to Extend Time to File Motion Under Local Rule 23.1(b) to Certify Class, (ECF No. 21), is **GRANTED** in part, and Plaintiff shall have 30 days following the entry of this Order to file her Motion to Certify Class.

  This the 31st day of March 2022.


       /s/ Loretta C. Biggs
       United States District Judge