IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:20-cv-1072-LCB-LPA

| | | |
|---|---|---|
| MARTHA HOELZER and all similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | **MEMORANDUM IN SUPPORT PLAINTIFF'S** |
| v | ) ) | **MOTIONS UNDER RULE 23** |
| . | ) | **(CLASS ACTION)** |
| DANIEL LEBOLD, | ) ) | |
| Defendant. | ) ) | |

 

Plaintiff Martha Hoelzer (Plaintiff or Hoelzer), on behalf of herself and all others similarly situated, through her undersigned attorneys, hereby shows the Court the following arguments in support of her Motions under Rule 23:

## I.  THE PROPOSED CLASS AND PROPOSED CLASS COUNSEL

Plaintiff  brings this Motion for Class Certification (the "Motion") on behalf of:

1.     all former employees of the University of North Carolina's sixteen constituent institutions who:

   a.     were hired into permanent positions and had twelve

months of service[1] prior to July 8, 2021,[2] and

b.     were not:

     i.     "[i]nstructional" staff of "[t]he University of North Carolina" under N.C. G.S. § 126-5(c1)(8); or

     ii.     "research" staff of "[t]he University of North Carolina" under N.C. G.S. § 126-5(c1)(8); or

     iii.     "information technology professionals" of "[t]he University of North Carolina" under N.C. G.S. § 126-5(c1)(8); or

     iv.     "physicians" of "[t]he University of North Carolina" under N.C. G.S. § 126-5(c1)(8); or

     v.     "dentists" of "[t]he University of North Carolina" under N.C. G.S. § 126-5(c1)(8), or

     vi.     "faculty of the North Carolina School of Science and Mathematics" under N.C. G.S. § 126-5(c1)(8); or

     vii.     "[e]mployees whose salaries are fixed under the

---

[1] Under N.C. G.S. § 126-1.1, career state employees include a "State employee . . . who . . . [i]s in a permanent position with a permanent appointment, and . . . [h]as been continuously employed by the State . . . in a position subject to" Chapter 126 "for the immediate 12 preceding months."

[2] N.C. G.S. § 126-5(c1)(8) was amended effective July 8, 2021, to include "finance professionals, business office professionals, auditor professionals."

authority vested in the Board of Governors of [t]he University of North Carolina by the provisions of G.S. 116-11(4), 116-11(5), and 116-14" under N.C. G.S. § 126-5(c1)(9); or

viii. "[e]mployees of the North Carolina Cooperative Extension Service of North Carolina State University who are employed in county operations and who are not exempt pursuant to subdivision (8) or (9) of this subsection" under N.C. G.S. § 126-5(c1)(9a); and,

c. were told they were, or were not told but were actually, classified as "exempt" from the N.C. G.S. Chapter 126[3] (EHRA); and

d. were terminated from their employment; and

e. were not provided with any **pre**-deprivation due process; and

f. were not provided with any **post**-deprivation due process.

Hereinafter, the proposed class shall be referred to as "erroneously designated EHRA UNC employees." Plaintiff Martha Hoelzer seeks to be

---

[3] Chapter 126 was known as the "State Personnel Act" prior to the passage of H.B. 1133, § 55.4(c) which changed all references to "State Personnel System" to "State Human Resources system." After this change, all employees designated as exempt from Chapter 126 were described as exempt from the Human Resources Act or EHRA.

appointed as class representative. The undersigned attorneys seek to be appointed as Class Counsel.

## II. BACKGROUND ON CAUSE OF ACTION (42 U.S.C. § 1983)

After previously working for the University of North Carolina in various capacities which are not relevant to the current posture of this matter, in May 2010, Plaintiff was hired by the Kenan-Flagler Business School, a part of the University of North Carolina at Chapel Hill (UNC-CH). DE4, ¶25. In December 2015, she sought a new position as a development officer with UNC Global and was interviewed by Defendant in February 2016. DE4, ¶25. In May 2016, Plaintiff was notified that she had been selected for the development officer position for which she interviewed. DE4, ¶49. On or about August 29, 2016, Plaintiff started with UNC Global and was told that she was exempt from the protections of the State Human Resources Act (HRA) or EHRA. DE4, ¶ 52. On February 22, 2019, Plaintiff met with Lisa Waldeck and Defendant. DE4, ¶135. At this meeting, they informed her that she was an "at will" employee and that her employment was ending. *Id.* They did not give her a notice an opportunity to be heard prior to her termination (pre-deprivation due process). Nor did they offer her any right to appeal her termination (post-deprivation due process).

Plaintiff's position as a development officer was not a position which falls into any of the categories of statutorily exempt UNC employees.[4]  Therefore, she should have been classified as subject to the protections of Article 8 of the State Human Resources Act (N.C. G.S. § 126-34 – 36) ("Employee Appeals of Grievances and Disciplinary Action").  Employees subject to Article 8 also receive the protections of Subchapter J ("Employee Relations" of Chapter 1 ("Office of State Human Resources") of Title 25 of the North Carolina Administrative Code (NCAC).  These rules include but are not limited to provisions such as Section .0600 ("Disciplinary Action:  Suspension and Dismissal").  Section .0600 provides various procedural requirements which meet the constitutional requirements for due process[5] that must be met **before** a career State employee[6] may be dismissed for either unacceptable personal misconduct, unsatisfactory job performance, or grossly inefficient job performance.  *See, e.g.,* 25 NCAC 01J .0604 ("Just Cause for Disciplinary

---

[4] Exemptions for employees of the University of North Carolina and its various constituent institutions can be found at:  N.C. G.S. § 126-5(c1)(8), (9), (9a) and N.C. G.S. § 126-5(c8).

[5] *See Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S. Ct. 1487, 1493 (1985) (finding pre-deprivation due process as "some kind of hearing" prior to discharge).

[6] Career State employees have a property interest in their employment because they can not be terminated except for just cause as defined by statute, administrative rule, and common law.  *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972) (property interests are created by State law, not the Constitution).  *Accord Bishop v. Wood*, 426 U.S. 341, 345, 96 S. Ct. 2074, 2077 (1976)("A property interest in employment can . . . be created by ordinance . . . .")

Action"), 25 NCAC 01J .0605 ("Dismissal for Unsatisfactory Performance of Duties"), 25 NCAC 01J .0606 ("Dismissal for Grossly Inefficient Job Performance"), 25 NCAC 01J .0608 ("Dismissal for Personal Conduct"). This section also provides for post-deprivation due process[7] in the form of an appeal through the internal grievance procedure of the State employer and an appeal to the Office of Administrative Hearings (NC OAH). 25 NCAC 01J .0603 ("Appeals").

Plaintiff was a career State employee as defined by N.C. G.S. Chapter 126. But for the erroneous classification of her as exempt from the protections of Chapter 126 and the rules adopted pursuant to the authority in that Chapter, she would have been entitled to both pre-deprivation and post-deprivation due process. She got neither. Thus, Defendant violated Plaintiff's constitutional rights to due process, as well as all of the other erroneously designated EHRA employees of the University of North Carolina's sixteen constituent institutions.

---

[7] *See Loudermill,* 470 U.S. at 545, 105 S. Ct. at 1495 (""[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."") (quoting *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786 (1971)). In addition, the Loudermill Court also noted that "'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action," *id. (citing Mathews v. Eldridge,* 424 U.S. 319, 343, 96 S.Ct. 892, 907 (1976)) and that because "respondents were later entitled to a full administrative hearing and judicial review" that "notice and an opportunity to respond" were sufficient to meet the constitutional requirements for pre-deprivation due process, *id.* at 546, 105 S. Ct. at 1495.

### III. Plaintiff Is a Proper Class Representative and Her Claim Meets the Requirements of Rule 23(a) and (b).

#### A. Plaintiff's Claims Meets the Requirements to be Certified as a Class Action Under Fed. R. Civ. P. 23 (a).

The law on class certification is well established; the devil is in the details. "In order to be certified under Rule 23, a class must first comply with the four prerequisites established in the Rule's subsection (a): '(1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation.'" *Mebane v. GKN Driveline NA,* 337 F.R.D. 479, 488 (M.D. N.C. 2020)(quoting *Gunnells v. Healthplan Servs.*, Inc., 348 F.3d 417, 423 (4th Cir. 2003) (citing Fed. R. Civ. P. 23(a)). Courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and ... promote judicial efficiency.' " *Gunnells*, 348 F.3d at 424 (quoting *In re A.H. Robins*, 880 F.2d 709, 740) (4th Cir. 1989)). *See also Kidwell v. Transp. Comm. Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991); *Rodger v. Electronic Data Systems Corp*, 160 F.R.D. 532, 535 (E.D.N.C. 1995).

#### 1. Plaintiff's claim meets the requirements of Rule 23(a).

##### a. <u>Numerosity</u>

- 7 -

Plaintiff is an employee who was designated as EHRA non-faculty serving in a position not covered by any of the statutory exemptions in N.C. G.S. § 126-5 for University employees at the time of her termination[8]. Exhibit A contains the data identified by Plaintiff related to the calculation of how many class members might exist. Plaintiff estimates that between 53 and 117 class members exist per year. This number is based on the number of university employees being approximately the number identified by the UNC General Administration for each constituent institution as of Fall 2020 (10679), ***Exhibit 1, p1***, or as of October 2021 (10,827), ***Exhibit 1, p40***. This number is also based on an average involuntary turnover rate of between .05 and 1.1 identified by the Bureau of Labor Statistics for two industries related to the provision of public education. ***Exhibit 1, pp34-37***.

" 'No specified number is needed to maintain a class action.' " *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir.1984) (quoting *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir.1967)). *Accord McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 475 (E.D.N.C. 2010).

> Rule 23(a)(1) permits a class action only when "the class is so numerous that joinder of all class members is impracticable." No

---

[8] N.C. G.S. § 126-5(c1)(8) was amended to include "finance professionals, business office professionals, auditor professionals" in 2021 in

definite standard exists as to what size class satisfies the requirements of Rule 23(a)(1). Courts have, however, certified classes composed of as few as eighteen, *Cypress v. Newport News General and Nonsectarian Hospital Ass'n.*, 375 F.2d 648, 653 (4th Cir.1967) and twenty-five members, *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa.1968).

*Haywood v. Barnes*, 109 F.R.D. 568, 576–77 (E.D.N.C. 1986)(quoting *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S. Ct. 923, 66 L.Ed.2d 842 (1981)). "Furthermore, the fact that the precise number of potential members of the class can not be ascertained does not bar class certification." *Id. (*citing *Meyer v. Citizens & Southern Nat'l Bank*, 106 F.R.D. 356, 360 (M.D.Ga.1985); *see also Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir.1975) (holding it is not necessary that the members of the class be so clearly and completely identified that any member can be presently ascertained).

While Plaintiff has estimated that between around 50 and possible 100 potential employees erroneously classified as EHRA have been involuntarily terminated each year, Plaintiff cannot identify particular individuals who have been terminated in the class. However, the fact that Plaintiff cannot in fact immediately identify all class members, "supports rather than bars the bringing of a class action, because joinder is impractical." *Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638, 645 (4th Cir.1975).

**b. <u>Commonality of factual and legal issues.</u>**

Rule 23 (a)(2) requires a determination that there are "questions of law or fact, common to the class" to unite the potential plaintiffs in the case. *See* Fed. R. Civ. P. 23 (a). ). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal- Mart Stores, Inc., v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Stated another way, there must be some "glue" holding the claims together. *See Wal-Mart Stores, Inc.*, 131 S. Ct. at 2554.

The analysis of commonality and typicality of representation requires a discussion of often overlapping facts, as the two requirements tend to merge. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982) ("[b]oth help determine whether 'the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected.'"); *see also Kidwell v. Transp. Com. Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991) (quoting *id*.). Moreover, "the threshold requirements of commonality and typicality are not high; Rule 23 (a) requires only that resolution of the common questions affect all or a substantial number of the class members." *See McLaurin*, 271 F.R.D. 465, 475-76 (citing *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009)).

In this case, all of the proposed class members have in common the fact that their positions did not meet any of the statutory exclusions for career State

employees after one year of employment. The fact that they might have different bases for appealing their termination is of no consequence; they were all deprived of both pre-deprivation and post-deprivation due process. Commonality of claims may be found even if there are some factual distinctions between the claims of the named plaintiffs and those of other class members. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998) (finding the commonality and typicality elements of Rule 23 do not require members of the class have **identical** factual and legal claims).

### c. <u>Typicality of claims and defense of class representative.</u>

"The requirement of typicality overlaps considerably with the requirements of commonality, adequacy of the class representatives, and Rule 23(b)(3)." *DeLoach v. Philip Morris Companies, Inc.*, 206 F.R.D. 551, 555 (M.D.N.C. 2002) (citing *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1034 (N.D.Miss.1993) and *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982)). "The second Rule 23(a)(3) requirement is that the representative claims be typical of the other members of the class. This has consistently been held to mean that his claim cannot be antagonistic to the claims of other members." *Deloach,* 206 F.R.D. at 555 (citations omitted).

Moreover, as the Fourth Circuit has observed, "Wal–Mart instructs that plaintiffs must present a common contention capable of being proven or disproven in 'one stroke' to satisfy Rule 23(a)(2)'s commonality requirement. *Brown v. Nucor Corp.*, 785 F.3d 895, 909 (4th Cir. 2015) (citing *Wal–Mart*, 131 S. Ct. at 2551.) "Thus, a class-wide proceeding must be able to generate common answers that drive the litigation." *Id.* (also citing *Wal–Mart*, 131 S. Ct. at 2551 and *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir.2014) (observing that "a class meets Rule 23(a)(2)'s commonality requirement when the common questions it has raised are apt to drive the resolution of the litigation, no matter their number" (internal quotation marks omitted)).

The common questions for all the proposed class members is whether they were improperly classified as exempt and deprived of career State employee status such that they would have been entitled to pre-deprivation and post-deprivation due process. While Plaintiff and her fellow class members might have been in different positions and might have been discharged for different reasons, the commonality and typicality of their claims is that they were improperly classified as exempt from the HRA appeal provisions to which they would have been entitled by virtue of their 12 months of service as "career State employees" prior to their discharge. Thus, Plaintiff's

- 12 -

claim is typical of the claims of all proposed class members and

## d. <u>Adequacy of representation</u>

Lastly, Rule 23 (a) requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). Specifically, Plaintiffs must demonstrate that, as class representative, they (1) "will vigorously prosecute the interests of the class through qualified counsel," and (2) have "common interests with unnamed members of the class." *See Olvera-Morales v. Intern. Labor Mgmt. Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc., v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Falcon*, 457 U.S. at 157-58 n.13). In order for a conflict to defeat class certification, the conflict "must be more than merely speculative or hypothetical," but rather "go to the heart of the litigation." *Gunnells,* 348 F.3d at 430-31 (internal quotations and citations omitted). The importance of the adequacy requirement is based on the principle of due process, which "requires that named plaintiff possess undivided loyalties to absent class members." *See Broussard,* 155 F.3d 331.

Here, there is no conflict or antagonistic interests of the named Plaintiff to the interests of any other proposed class members. Plaintiff has the same

interests as all other class members: recovering damages from being discharged and deprived of their property interest in their employment as a career State employee without any pre-deprivation or post-deprivation due process.

### B. Plaintiff's Claims Meets the Requirements to be Certified as a Class Action under Fed. R. Civ. P. 23 (b).

If the prerequisites under Rule 23 (a) are met, the action must then satisfy one of the three alternative sets of requirements under Rule 23 (b). *Romero*, 796 F. Supp. 2d at 700. "Once that baseline is established, the class action 'must fall within one of the three categories enumerated in Rule 23(b).'" *Id*. (quoting *Gunnells* and citing Fed. R. Civ. P. 23(b)). Specifically:

(b) **Types of Class Actions**.

A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) **inconsistent or varying adjudications** with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) **adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties** to the individual adjudications or would substantially impair or

- 14 -

impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that **final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole**; or

(3) the court finds that the **questions of law or fact common to class members predominate over any questions affecting only individual members,** and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

F.R. Civ. P. 23(b).

The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *See Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). First, the questions of law or fact common to putative class members must predominate over any

questions affecting only individual members. Here, as discussed previously, the same basic factual circumstances apply to each putative class member— each employee would have been a career State employee subject to pre-deprivation and post-deprivation due process but for the erroneous classification of the employee as EHRA. While Employees' claims may involve some individualized assessment of damages, this is not a situation where "the functional equivalent of a full-blown trial on . . . causation" would be required for each putative class member. *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 149 (4th Cir. 2001)).

The predominance requirement may also be met when defendant has implemented a common, uniform policy. *See Gomez v. Tyson Foods, Inc.,* 295 F.R.D. 397, 403 (D. Neb. 2013). *See also MacGregor v. Farmers Ins. Exch., No. 2:10-CV-03088,* 2011 WL 2981466, at *2 (D.S.C. July 22, 2011) ("Plaintiffs are similarly situated if they "were victims of a common policy or plan that violated the law.") (quoting *Purdham*, 629 F.Supp.2d at 549 (citing *Choimbol v. Fairfield Resorts, Inc.,* 475 F.Supp.2d 557, 563 (E.D.Va.2006) and *Marroquin v. Canales,* 236 F.R.D. 257, 259–60 (D.Md. 2006). *Accord D'Anna v. M/A–COM, Inc.,* 903 F. Supp. 889, 893 (D. Md.1995) (holding putative plaintiffs are "similarly situated [if] they were victims of a single

- 16 -

decision, policy, or plan." *Id*.).

Plaintiff has shown, in Exhibit 2, that there was a uniform policy or practice to misclassify various University employees system wide as exempt under N.C. G.S. § 126-5(c1)(8) who were not "instructional" or "research" staff, physicians, dentists, or information technology employees or in any other category exempt under N.C. G.S. § 126-5. The only individualized inquiries that may be required would be the evaluation of the particular position in which each proposed class member worked and whether that position fell under a then-applicable statutory exemption from the definition of career State employee, and thus whether they were properly designated as exempt and lacking a property interest in their employment. Accordingly, Plaintiff has met the predominance requirement of Rule 23 (b)(3).

A class action is the superior method for litigating this matter because the alternative would be lawsuits filed by each class member. Even if the putative class members were inclined to pursue individual actions, there is no doubt that such individual litigation would be more burdensome on the putative class members, and it would likely be a less efficient use of judicial resources. Additionally, Rule 23(b)(3)'s four non-exclusive factors are pertinent to the predominance and superiority determinations. *See* Fed. R.

Civ. P. 23 (b)(3). The four factors are: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Romero,* 796 F. Supp. 2d at 716. *See generally Amchem*, 521 U.S. at 616.

With respect to the first factor, "[s]uch individualized lawsuits would be financially burdensome, and many plaintiffs may not have the means or ability to prosecute their claims separately. *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 478 (E.D.N.C. 2010). On the other hand, the advantages of determining the common issues by means of a class action are evident, as all employees in the class could finalize their claims in one proceeding, rather than in dozens of individual suits.

The second factor is inapplicable, and with respect to the third factor, the General Administration of the University of North Carolina is located in this district and is the source of the policies which resulted in the misclassification of the proposed class members. Thus, the United States District Court for the Middle District of North Carolina will provide an

excellent forum for this matter. The Court should seek to effectuate the public policy expressed in Rule 23, in favor of having all similar cases "disposed of where feasible, in a single lawsuit." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 n. 11 (1981).

With respect to the fourth factor, manageability compares the class action device to other methods of adjudicating the controversy only when management difficulties make a class action less fair and efficient than other methods. *See* Newberg on Class Actions § 4.32 at 4-125 (3d ed. 1992). Plaintiff has estimated that this class action would involve between fifty and on hundred and fifty class members, so it is readily manageable, particularly when compared to classes in other larger and more complicated cases that have been managed successfully through settlement or trial. *See, e.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 62 (D. Mass. 1997) (overseeing the class of approximately 1.8 million persons or entities). Given the possible size and scope of this class, joinder and intervention are neither possible nor superior alternatives.

## IV.    Present Counsel Should Be Appointed Class Counsel.

Should the Court grant certification, class counsel must be appointed. *See* Fed. R. Civ. P. 23 (g). To do so, the Court must consider four factors: "[1]

the work counsel has done in identifying or investigating potential claims in the action; [2] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; [3] counsel's knowledge of the applicable law; and [4] the resources counsel will commit to representing the class." *Id.* Class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Romero*, 796 F. Supp. 2d at 715. Likewise, class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Romero*, 796 F. Supp. 2d at 715 (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2nd Cir. 1968)). Plaintiffs also move for appointment of class counsel under Rule 23(g), which requires that the court consider the following:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
> (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)  counsel's knowledge of the applicable law; and
> (iv)  the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A). In sum, "[c]lass counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). *Accord Johnson v. Jessup*, 381 F. Supp. 3d 619, 637 (M.D.N.C. 2019).

      Plaintiffs' counsel is qualified to be appointed as class counsel. See

Exhibit 3. New South Law Firm is composed of three members and one associate. The affidavits of counsel indicate that they each have between 20 and 30 years of experience practicing law; two of the members have extensive experience litigating in federal and state court. One of the proposed counsel for the class has more than 30 years litigating civil rights actions and employment claims involving public employment, and experience with class actions and is therefore competent and capable of conducting this litigation. Accordingly, New South Law Firm will fairly and adequately represent the proposed class in accordance with Rule 23 (a)(4). Plaintiff's counsel has handled this matter from the outset, identifying and investigating the due process claims. Counsel has litigated multiple due process claims and other civil rights employment claims and will commit the necessary resources to representing the class. Plaintiff's counsel should therefore be appointed as class counsel.

## V. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court grant the following relief: (1) certification of this action as a class action under Rule 23(a) and (b)(3) for the claims under 42 U.S.C. § 1983; (2) appointing named Plaintiff Martha Hoelzer as the class representative; and (3) appointing New South Law Firm as class counsel.

Respectfully submitted, this the 3rd day of May 2022.

/S/ VALERIE BATEMAN
NC State Bar: 13417
T:  919-810-3139
F: 919-823-6383
NEW SOUTH LAW FIRM
209 Lloyd St., Ste 350
Carrboro, NC  27510
valerie@newsouthlawfirm

/S/ JUNE ALLISON
NC State Bar: 9673
T: 704-277-0113
F: 919-823-6383
NEW SOUTH LAW FIRM
233 S. Laurel Avenue
Charlotte,  NC  28207
June@newsouthlawfirm

**Attorneys for Plaintiffs**

- 22 -

**CERTIFICATE OF FILING AND SERVICE**

This is to certify that the undersigned has this day electronically filed or caused to be filed the foregoing **Memorandum in Support of Plaintiff's Motion to Certify the Class and Appoint Class Counsel** with the Clerk of Court using the CM/ECF system, which will send notification of such filing all counsel of record, or if not filed, via email, and upon request, by U.S. Mail within 24 hours after the request.

This the 3rd day of May 2022.

/s/    VALERIE L. BATEMAN
NEW SOUTH LAW FIRM