Hoelzer et al v. Lebold, 1:20-cv-1072
MemISOMotClassCert (Rule 23)
Exhibit 2
Page 1 of 16

The UNC Policy Manual
300.2.1
Adopted 02/13/81
Amended 09/14/84
Amended 05/08/87
Amended by AM254
Amended 02/18/94
Amended 04/12/01
Amended 03/21/03
Amended 02/08/08
Amended 10/17/08
Technical Corrections 01/06/22

**Policy on Employees Exempt from the North Carolina Human Resources Act**

I. Scope and Applicability of Employment Covered by this Policy

   A. Scope of Category. Employment positions with constituent institutions of the University System that are covered by this policy (hereinafter "covered positions"), are those positions that are not subject to the North Carolina Human Resources Act (N.C. Gen. Stat. 126 [hereinafter G.S.]) and are not otherwise categorized. This category does not include: (1) faculty positions subject to institutional tenure regulations; (2) positions within administrative categories of employment subject to G.S. 116-11(4), G.S. 116-11(5), or G.S. 116-14; (3) positions within the "physicians or dentists" category under G.S. 126-5 with faculty appointments; and (4) University students who are employed incident to their status as students, as in graduate teaching assistantships, or work-study positions. Those areas of institutional activity (as identified in the Uniform Chart of Accounts) that may include covered positions are:

   1. Instruction
   2. Organized Research
   3. Agricultural Research and Agricultural Extension Service Public Service
   4. Academic Support
   5. Student Services
   6. Student Health Service Physicians (without faculty appointments)
   7. Institutional Support
   8. Area Health Education Centers
   9. Library
   10. Information Technology Professionals [1]
   11. Commissioned Police Officers [2]
   12. Finance Professionals and Business Officers [3]
   13. Audit Professionals[2]

   B. Applicability of Policy. This policy applies to all permanent covered positions.

II. Appointments to Covered Positions

Case 1:20-cv-01072-LCB-LPA   Document 30-2   Filed 05/02/22   Page 1 of 16

Hoelzer et al v. Lebold, 1:20-cv-1072
MemISOMotClassCert (Rule 23)
Exhibit 2
Page 2 of 16

A. Every appointment to a covered position within a constituent institution shall be made by the chancellor by means of a letter of appointment that fulfills the requirements of this section.[4]

B. Every letter of appointment to a covered position shall include: (1) the title of the position; (2) the initial salary; (3) provision for periodic review of compensation;[5] (4) provision consistent with paragraphs II.C. and II.D., below, if contingencies based on availability of funding are applicable; (5) the annual leave entitlement of the employee; (6) notice that the employment conferred is either for a stated definite term, is an "employment at will" subject to continuation of discontinuation at the discretion of the chancellor, or in a commissioned police officer role subject to disciplinary and discharge procedures as provided in this policy; and (7) notice that the employment is subject to these policies (viz., institutional policies adopted pursuant to paragraph IX of this policy), as originally adopted and as they may be periodically revised from time to time, and a copy of the institutional policies shall be attached to the letter of appointment.

C. When a covered position is funded in whole or substantial part from sources other than continuing state budget funds or permanent trust accounts, the letter of appointment shall state that continuation of the employee's service in that position is contingent upon the continuing availability of funds from such other sources to support that position, shall specify the source of such funds, and shall state that the effect of such contingency may apply without the additional notice otherwise required by sections III.A., III.B., and III.C.; provided, that the affected employee shall be informed at the earliest practicable date of the occurrence of such a funding contingency.

1. When an employee is to serve simultaneously in both a covered position and a position of University employment not covered by these policies, with the result that two different prescriptions may appear to obtain with respect to a particular condition of employment or a right or responsibility of the employee, one position shall be designated the base position to determine the conditions of employment and the rights and responsibilities of the employee. If appointment to a covered position occurs subsequent to appointment to a position not covered by these policies, the letter of appointment to the covered position shall embody the required designation of base employment; conversely, if appointment to a covered position precedes appointment to the other category of University employment, the letter of appointment or contract establishing the second employment shall embody the required designation of base employment. In either case, the designation of base employment shall specifically describe the different rights, duties, and compensation for each position and the relationship, if any, between the two positions.

2. Any funding contingency of the type referred to in paragraph II.C., shall be set forth separately for the covered position and for the other position, since the operation of any such contingencies may be independent.

3. When an appointment to a covered position is to be accompanied by appointment to a faculty position that is intended to be nominal or honorary, or to create a faculty affiliation not entailing significant duties or compensation, the term "adjunct," or similar nomenclature, shall be used to identify the faculty appointment.

III. Discontinuations of Employment in Covered Positions

Case 1:20-cv-01072-LCB-LPA   Document 30-2   Filed 05/02/22   Page 2 of 16

Hoelzer et al v. Lebold, 1:20-cv-1072
MemISOMotClassCert (Rule 23)
Exhibit 2
Page 3 of 16

A.   Discontinuation of Appointment with Notice or Severance Pay. Employment within a covered position (excluding positions covered in paragraph III.E.) that is established by the letter of appointment to be an employment at will is subject to discontinuation at any time at the discretion of the chancellor; provided, that such a discontinuation (as distinguished from discharge for cause, paragraph III.D., below), shall be subject to advance timely notice of discontinuation or the payment of severance pay, in calendar days, as follows: (1) during the first year of service, not less than 30 days' notice prior to discontinuation of employment or the payment of severance pay for 30 days; (2) during the second and third years of service, not less than 60 days' notice prior to discontinuation of employment or the payment of severance pay for 60 days; and (3) during the fourth and all subsequent years of continuous service, not less than 90 days' notice prior to discontinuation of employment or the payment of severance pay for 90 days.

The determination of whether the employee shall receive notice of discontinuation of the appointment or severance pay shall be in the sole discretion of the respective chancellor or the president.

B.   Expiration of Term Appointment. Employment within a covered position that is established by the letter of appointment to be for a stated definite term expires automatically at the conclusion of the stated term; such an appointment may be renewed or extended at the option of the employer, by written notice satisfying the requirements of paragraph II., above. If the employer intends not to renew or extend the term contract, (1) with respect to a term of one year or less, no notice of intent not to renew shall be required; (2) with respect to a term of more than one year but less than four years, notice of intent not to renew shall be transmitted in writing at least 60 days prior to this expiration date of the term; (3) with respect to a term of four years or more, notice of intent not to renew shall be transmitted in writing at least 90 days prior to the expiration date of the term. Failure to provide written notice as required in subsections (2) and (3) shall result in the automatic extension of employment for a period, respectively, of either 60 days or 90 days, beyond the scheduled expiration date of the term.

C.   Termination of Employment Because of Financial Exigency or Program Curtailment or Elimination. Employment within a covered position that is established by the letter of appointment to be for a stated definite term may be terminated prior to expiration of the stated term because of (1) demonstrable, bona fide institutional financial exigency, or (2) major curtailment or elimination of a program. "Financial exigency" is defined to mean a significant decline in financial resources of the University that compels a reduction in the institution's budget. The determination of whether a condition of financial exigency exists or whether there shall be a major curtailment or an elimination of a program shall be made by the chancellor, with advance notice to and approval by the president and the Board of Governors. If the financial exigency or curtailment or elimination of a program is such that the contractual obligation to an employee within a covered position cannot be met, the employment of the individual may be terminated, subject to the following notice requirements: (1) during the first year of service, not less than 30 days' notice prior to termination; (2) during the second and third years of employment, not less than 60 days' notice prior to termination; and (3) during the fourth and all subsequent years of service, not less than 90 days' notice prior to termination.

D.   Discharge for Cause. Any employee occupying a covered position (excluding positions covered in paragraph III.E.) may be discharged for stated cause. Discharge for cause is to be distinguished from discontinuation with notice (paragraph III.A.), automatic expiration of term

Hoelzer et al v. Lebold, 1:20-cv-1072
MemISOMotClassCert (Rule 23)
Exhibit 2
Page 4 of 16

(paragraph III.B.) and termination (paragraph III.C.). Stated causes for discharge shall include, but not necessarily be limited to, incompetence, unsatisfactory performance, neglect of duty, or misconduct that interferes with the capacity of the employee to perform effectively the requirements of his or her employment. Discharge for cause is to be preceded by written notice of intent to discharge and is subject to invocation by the affected employee of the review procedures of paragraph IV., below. When an employee occupying a covered position has been notified of the intention to discharge him or her for cause, the president or chancellor may suspend the employment at any time and continue the suspension until the president or chancellor, as applicable, makes a decision concerning discharge; any suspension shall be with full pay. If the final presidential or chancellor decision is to discharge the employee, then the employee may be discharged without further pay without regard to whether there is an appeal to a Board of Trustees or the Board of Governors in accordance with Section 611 of *The Code.* No provision of this policy shall be interpreted to extend an employee's right to pay beyond the expiration of the employee's term of appointment while an appeal is pending under this policy.

E. Disciplinary Action and Grievance Procedures for Commissioned Police Officers. Any employee occupying a covered commissioned police officer position shall be subject to the disciplinary and grievance procedures as prescribed in Article 8 of G.S. 126 for employees subject to the North Carolina Human Resources Act.

IV. Reviews

A. Each constituent institution and the UNC System Office shall adopt and publicize procedures under which employees in covered positions may secure review of decisions concerning discharge for cause or other disciplinary action, or review concerning the interpretation and application of any provision of this policy; provided, however, that reviews concerning discontinuations, expiration of term appointments, or terminations of employment with notice, pursuant to paragraphs III.A., III.B., or III.C., below, may be brought only upon allegations of violations of applicable notice requirements or violations of any provision of paragraphs V. or VI. of this policy.

B. Decisions reached pursuant to such review procedures concerning the discontinuation, expiration of term appointment, or termination of employment may be had in accordance with the provisions of Section 611 of *The Code*.

V. Equal Employment Opportunity. It is the policy and intention of the University of North Carolina that there be equal employment opportunity and freedom from unlawful discrimination in all employment within the University, as set out in Section 103 of *The Code*.[6] Employment in covered positions shall be conducted in accordance with all provisions of state or federal law or regulation prohibiting any such discrimination, and in accordance with applicable affirmative action plans.

VI. Protected Activity. Employment in covered positions (excluding positions covered in III.E.) shall not be adversely affected by the exercise of rights guaranteed by the First Amendment to the United States Constitution or by Article I of the North Carolina Constitution; provided, that employees in covered positions shall be subject to any limitations on political activity established by Article 5 of G.S. 126. The Board of Governors' policies concerning political activity, Section 300.5 of the UNC Policy Manual as they may be revised from time to time, shall apply to positions covered by those policies.

VII. Holiday and Leave Entitlement

Case 1:20-cv-01072-LCB-LPA   Document 30-2   Filed 05/02/22   Page 4 of 16

Hoelzer et al v. Lebold, 1:20-cv-1072
MemISOMotClassCert (Rule 23)
Exhibit 2
Page 5 of 16

A.     Holidays. Employees in covered positions shall be subject to the same state-prescribed holidays given employees subject to the North Carolina Human Resources Act.

B.     Annual Leave [7]

   1.    Basic leave policy. The amount of annual leave to which a permanent full-time employee (1.00 FTE) in a position covered by these regulations shall be entitled to accrue is 24 workdays per year. Annual leave is accrued at a monthly rate and is adjusted proportionately for permanent part-time employees who work halftime or more (0.50 - 0.99 FTE). The monthly earnings amount is equal to one-twelfth of the annual rate for each month the employee works or is on approved leave with pay. Monthly leave is earned when an employee works or is on approved leave with pay at least half the working days of a month. An employing institution shall define a year as either "fiscal year" (July 1 - June 30) or "calendar year" (January 1 - December 31). Employing institutions that have previously defined a year as "contract year" may continue to do so. The scheduling of an employee's annual leave shall be subject to the approval of the employee's supervisor. With respect to an incumbent employee who is earning more than 24 days per year as of the date this policy becomes effective, such employee shall be entitled to continue to earn leave at the current rate.

   The maximum number of unused days of annual leave that may be carried forward from one year to the next shall be 30 workdays. Annual leave in excess of 30 days will be automatically converted to sick leave at the end of the year.

   2.    Transfer of accrued annual leave. An employing institution must establish campus-wide uniform guidelines regarding the transfer of accrued annual leave from a UNC System constituent institution or state or local governmental agency whose leave is currently transferable in accordance with the policy prescribed for employees subject to the North Carolina Human Resources Act. Upon discontinuation of employment from the employing institution, the employee may either elect a payout of accrued annual leave (see 4., below) or transfer the remaining balance of any unused annual leave to another state or local governmental agency, subject to the receiving agency's approval.

   3.    Advancement of annual leave. Subject to institutional policy and approval by the employee's supervisor, an employee may be advanced the amount of leave that can be accrued during the remainder of the year or during a 12-month period. If an employee separates from the employing institution and has taken more annual leave than has been accrued, the employing institution must determine the amount of leave that the employee must repay to the institution and make deductions from the employee's final salary check accordingly.

   4.    Payout of accrued annual leave. An employee in a position covered by this policy who has accrued unused annual leave upon discontinuation of employment from the employing institution and who either does not elect or is not eligible to transfer such accrued leave to another state or local governmental agency, shall be paid for such unused annual leave. The amount paid to an employee who has been employed an aggregate of 24 months or less by one or more state or local governmental agencies is equal to one day for

Hoelzer et al v. Lebold, 1:20-cv-1072
MemISOMotClassCert (Rule 23)
Exhibit 2
Page 6 of 16

each month worked less the number of days of annual leave taken during the employment period. An employee who has been employed for more than 24 months shall be paid subject to a maximum of 30 such days. Each institution shall establish guidelines for payout of leave if a change in employment status occurs and such employee is no longer covered by this policy.

C. Sick Leave, Family and Medical Leave, Paid Parental Leave, Family Illness Leave, Civil Leave, Military Leave, Community Service Leave, and Special Annual Leave Bonus. Employees in positions covered by this policy shall be subject to the same policies concerning sick leave, family and medical leave, paid parental leave, family illness leave, civil leave, military leave, community service leave, and special annual leave bonus as may be prescribed for employees subject to the North Carolina Human Resources Act. However, with respect to sick leave, subject to institutional policy and approval by the employee's supervisor, an employee may be advanced the amount of sick leave that can be accrued during the remainder of the year or during a 12-month period.

D. Leave of Absence Without Pay. Employees in positions covered by this policy may request a leave of absence without pay, subject to approval of such leave by the president or by the chancellor, as applicable.

E. Voluntary Shared Leave. Employees in positions covered by this policy shall be subject to the same provisions concerning shared leave as are applicable to employees subject to the North Carolina Human Resources Act with the exception that the donation and acceptance of such leave shall be computed on the basis of days rather than hours.

F. Educational Leave. Employees in covered positions are entitled to the same opportunities as other University employees to invoke the privilege of tuition waiver conferred by Section 1000.2.2 of the UNC Policy Manual.

VIII. Statutory and Other Rules of Employment

A. Privacy of Personnel Records. Employees in covered positions enjoy the protections of and are subject to the provisions of Article 7 of G.S. 126 entitled, "The Privacy of State Employee Personnel Records."

B. Employment preference for veterans. Employees in covered positions enjoy the protections of and are subject to the provisions of G.S. 128-15, which provide for preference in employment for veterans of United States military service and their spouses and widows or widowers.

C. Employment of Related Persons. Employees in covered positions are subject to the policy concerning employment of related persons as adopted by the Board of Governors on April 13, 1973, and as it may be revised from time to time.

D. Retirement. Employees in covered positions may retire in accordance with the provisions of G.S. 135.

IX. Implementation. The board of trustees of each constituent institution shall adopt for the institution personnel policies for covered positions within the institution that are consistent with all provisions of these policies. Any proposed provision in an institutional policy statement that in any manner adds to or modifies

Case 1:20-cv-01072-LCB-LPA   Document 30-2   Filed 05/02/22   Page 6 of 16

Hoelzer et al v. Lebold, 1:20-cv-1072
MemISOMotClassCert (Rule 23)
Exhibit 2
Page 7 of 16

the provisions of these policies must be submitted for review and approved by the president prior to its adoption and implementation.

X.        Other Matters

   A.        Effective Date. The requirements of this policy shall be effective on the date of adoption of this policy of the Board of Governors.

   B.        Relation to State Laws. The foregoing policy as adopted by the Board of Governors is meant to supplement and does not purport to supplant or modify, those statutory enactments which may govern or related to the subject matter of this policy.

   C.        Regulations and Guidelines. This policy shall be implemented and applied in accordance with such regulations and guidelines as may be adopted from time to time by the president.

Case 1:20-cv-01072-LCB-LPA   Document 30-2   Filed 05/02/22   Page 7 of 16

Hoelzer et al v. Lebold, 1:20-cv-1072
MemISOMotClassCert (Rule 23)
Exhibit 2
Page 8 of 16

---

[1] Pursuant to G.S. 126-5(c1)(8). Cf. S.L. 2017-57 Section 35.18C.

[2] Pursuant to G.S. 126-5(c16). Cf. S.L. 2020-56 Section 7.

[3] Pursuant to G.S. 126-5(c1)(8). Cf. S.L. 2021-80 Section 1.

[4] Pursuant to G.S. 116-11(13), and notwithstanding *The Code* or any other Board of Governors policy, the Board of Governors has delegated the appointment of EHRA employees serving within the UNC System Office to the president. See Section 200.6 of the UNC Policy Manual.

[5] Subject to any compensation policies adopted by the Board of Governors or the board of trustees.

[6] Bona fide occupational qualifications or other exceptions to those general prohibitions, specifically provided for by state or federal law, may be applied to covered positions.

[7] Effective July 1, 2001.

Hoelzer et al v. Lebold, 1:20-cv-1072
MemISOMotClassCert (Rule 23)
Exhibit 2
Page 9 of 16

The UNC Policy Manual
300.2.5[G]
Adopted 02/18/02
Amended 01/31/04
Amended 07/01/07
Amended 12/19/12*

**Guideline on Interpreting General Statute § 126-5(c1) (8): Instructional Research and Public Service Staff Exempt from the State Personnel Act**

North Carolina General Statute § 126-5(c1) [State Personnel Act] provides that the following employees are exempt from the provisions of this statute:

> (8)  Instructional and research staff, physicians, and dentists of the University of North Carolina, including the faculty[1] of the North Carolina School of Science and Mathematics.

The Office of State Personnel and the University of North Carolina have agreed that the following shall govern the interpretation and application of the terms "instructional" and "research" as used in N.C.G.S. § 126-5(c1)(8)

> 1.  Instructional, Research, & Public Service[2] (IRPS)
>
> EPA non-faculty Instructional, Research, and Public Service positions deliver the core-mission activities of the University: creating and disseminating knowledge through direct instruction, research, and public service; or performing professional-level duties that are integral to and uniquely supportive of that work. The purpose of each such position must be substantially engaged in the regular academic, educational, research, or public-service/extension activities of the University. Such positions require the exercise of professional expertise and discretion in determining the nature and content of the instructional-, educational-, research-, or public-service-related activities, and in evaluating the effectiveness of such activities, and/or involve significant and independent interaction with participants in the University's instructional, educational, research, or public-service programs.
>
> The ongoing job responsibilities for such positions must:
>
> > a.  Engage in or be uniquely supportive of instruction, student success, and/or the direction or coordination of education or academic-supportive activities; AND/OR
> >
> > b.  Engage in or be uniquely supportive of original scholarship, creativity, or scientific research efforts, and the dissemination of such research/scholarship results (including dissemination through extension/public service). The ongoing job responsibilities must be involved with independent research design, implementation of research procedures, analysis of data, interpretation of research results, and/or dissemination of results through publication or public service; AND/OR

  c. Serve as a staff physician or staff veterinarian (without faculty rank), providing clinical healthcare services to human or animal populations.

Minimum Education and Experience

EPA non-faculty IRPS positions generally require post-baccalaureate credentials (e.g., Master's degree or higher), although a bachelor's degree plus alternative or equivalent professional training and experience may be substituted for the advanced degree. It is recognized that in some areas such as information technology, admissions, financial aid, and athletics coaching and athletics management, appropriate qualified candidates may hold baccalaureate rather than advanced degrees. Positions for which post-baccalaureate credentials are not required, or for which specific degrees or certification are required, have education and experience requirements listed.

For purposes of reporting and workforce administration, these positions are subcategorized below. The individual EPA IRPS subcategories below may include example statements of minimum education and experience for positions which would not require a Master's degree or higher, or where specific degrees/certification/licensure is required.

The following roles represent these characteristics:

Academic Advising & Assessment:
  Positions whose primary purpose is to advise students on academic matters such as selection of a major area of study, course selection, and academic performance. Such positions may include individuals who provide student testing and assessment a part of the academic advising process.

Academic Preparation & Enhancement:
  Positions whose primary purpose is to improve student academic preparation through such means as tutoring and supplemental instruction, or to direct programs designed that enhance the educational experience of enrolled university students or targeted secondary school students to help prepare them for post-secondary education. This includes positions focused on enhancing the academic preparation of "at risk" student populations.

Academic Standards:
  Positions whose primary purpose is to develop and/or administer academic standards, curricula, and degree requirements for degree-granting programs.

Academic / Research IT Management:
  Positions whose primary purpose is to direct staff in providing information technology services that directly support the institution's academic or research missions;

these are typically individuals at the Director-level within a school-wide, college-wide, or campus-wide role, as well as positions in large, specialized research or clinical centers. Note: This category is not intended for individuals who direct staff members who provide generalized or administrative information technology support that is not directly tied to an academic or research activity of the campus.

Athletics Coaching and Athletics Management:

Positions whose primary purpose is to coach student athletes for teams sponsored by the institution, to serve as trainers to student athletes, as well as senior-level professionals with institutional responsibility for in student-athlete programs in areas of compliance, and major sports operations. Note: would not include equipment & facilities managers, or positions ancillary to an athletics program.

Education and Experience: Minimum of a bachelor's degree required with experience in relevant independent instructional or educational activities; specific minimum experience is at the discretion of the Director of Athletics.

Clinical Academic Department:

Administrator (CADA) and Research & Academic Department Administrator (RADA):

CADA and RADA positions are intended for administrators of high-complexity, academic health centers or research-focused academic departments and centers within the University system that are engaged in a substantial amount of externally funded research and feature complex, cross-disciplinary research collaborations and partnerships. Departments supervised by CADA/RADA positions would include Human Resources management; Finance and budget; and Sponsored research administration and compliance. Notes: Positions require individual HRAB review and approval regardless of campus delegated authority for EPA classifications.

Education and Experience: Minimum qualifications of an advanced degree (masters or higher) and no less than 5 to 7 years of management-level experience in the full range of administrative and financial functions of an academic department or research center in a higher

Page 3 of 8

|  |  |
|---|---|
|  | education, research, or health care setting. Candidates with 7 to 10 years of directly comparable experience may substitute for the required advanced. |
| Continuing Education: |  |
|  | Positions whose primary purpose is to design and deliver courses, seminars, etc., that extend the institution's regular academic and research activities to non-degree-seeking participants through targeted programs and short courses. This classification is used for instructors of non-credit courses only. |
| Cooperative Education: |  |
|  | Positions whose primary purpose is to develop cooperative or internship education experiences for students with employers, monitoring student progress and learning, and evaluating student performance. Such positions either have direct impact on grade assignment or are featured as an integral component of institution's student career services activities. |
| Counselors: |  |
|  | Positions requiring credentialed professionals whose primary purpose is to provide clinical and developmental counseling or psychological services to students to enhance their psychological growth, emotional well-being, and learning potential. |
|  | Education and Experience: Relevant professional degree and licensure in the appropriate clinical field of psychology, social work, or mental health. |
| Institutional Research & Assessment Management: |  |
|  | Positions whose primary purpose is to direct and manage institution-wide data, metrics and management information about the institution's students, faculty and staff, enrollment and academic programs, facilities, and related items as required for federal, state, and UNC system reporting. Directly supports the institution's planning and assessment processes. This category may be used for Campus-wide roles or those who direct institutional research and assessment within a large School or College. Note: This is not intended for analysts or other institutional research roles that do not have Director-level responsibility. |
| Instruction: |  |

Page 4 of 8

> Positions whose primary purpose is to determine course content, teach and evaluate enrolled students in courses for academic credit.

Instructional Consulting and Technology:
> Positions whose primary purpose is to assist, advise, and critique faculty and other instructional staff on instructional matters such as course content, curriculum structure, and instructional technique, or whose primary purpose is to plan, design, or implement information technology and/or multimedia approaches that directly support instructional delivery. This includes positions involved in transitioning coursework from traditional "face-to-face" delivery to on-line "distance learning" formats. This category is not to be used for individuals who provide routine information technology support within the instructional enterprise.

Laboratory Management:
> Positions whose primary purpose is to manage research and experiential laboratories and participate in design and selection of experiments, protocols, and procedures that best support the instructional or research goals and in evaluating progress towards goals.

Professional Librarians:
> Positions whose primary purpose is to support the institution's instructional and research activities by advising students and faculty on the selection and effective use of library resource materials and by working with faculty on instructional and research matters such as collection development. Used for professional librarians without faculty rank.
>
> Education and Experience: Requires the Masters in Library Science (MLS) degree. In specialized libraries, may substitute an advanced degree in the field of specialization (e.g., legal degree for a law library, or a history degree for a special historical collection within the library setting).

Public Service & Extension:
> Positions whose primary purpose is to provide the direct delivery of scholarship and research to public audiences and clients and/or to direct staff or programs in the development and administration of such programs, which focus or extend the academic resources and/or research products of the institution on addressing

Page 5 of 8

community and regional issues and incorporate community needs in the institution's academic and research programs, including agricultural extension and industrial extension.

Research Administration & Compliance:

Positions whose primary purpose is to direct and administer the programs and staff of major externally-funded research projects; serve as the chief administrative manager and compliance officer for a large academic department or research center with substantial administrative and financial complexity and which derives a significant portion of its operating budget from sponsored research funding sources; or positions that provide executive leadership of sponsored research activities either campus-wide or within a School/College dean's office. The latter includes individuals who manage project proposals in compliance with the institution's academic and research policy, provide substantive professional advice on the development of project proposals, and negotiate with sponsoring agencies with regard to the terms and conditions that govern the conduct of sponsor research. Notes: These positions do not include first-level contract and grants developers, grant writers, or administrative support.

Research and Clinical Professionals:

Positions whose primary purpose is to serve as non-faculty principal investigators, research project managers, research scholars, research scientists, or research assistants/associates for primary or secondary research projects that may advance or enhance a field of academic learning; as well as licensed clinicians who deliver research demonstration outcomes or who provide direct clinical services to clients in an academic healthcare environment.

These positions function with substantial independence and expertise in original scholarship, research design, research engineering, implementation of research procedures, data analysis and interpretation of results. Research computing professionals whose principal duties involve the exercise of substantial research independence and creativity in discovering new or emerging technologies may also be considered for this category as distinguished from individuals who are operating or supporting existing, well established

Page 6 of 8

information technologies. Note: These positions do not include operational or support related positions.

Education and Experience: Relevant post-Baccalaureate degree required; for candidates demonstrating comparable independent research productivity, will accept a relevant undergraduate degree and 3 or more years of relevant experience in substitution. May require terminal degree and licensure.

Student Support Services:

Positions whose primary purpose is to develop, direct and administer services for students and/or faculty that have a direct impact on the students' educational experiences and/or campus life (e.g., student career services; student life / student housing; student honors programs; student diversity support programs; student conduct; student registration and records). This category also includes student admissions and financial aid positions that exercise decision making authority on behalf of the institution (e.g., admissions officers, financial aid officers) and professional staff who design and deliver programs and instruction that involve direct interaction with students and enhance their academic and learning experiences outside the classroom setting. Note: These positions do not include operational or facility maintenance functions.

Technology Transfer:

Positions whose primary purpose is to manage the flow of research and technology innovation, disclosures, patents, trademarks, copyrights and other aspects of technology transfer. These positions include professional staff members who assess disclosures for technical and commercialization merits; develop relationships with industry or government clients; negotiate business transactions for the exchange of intellectual property rights; collaborate with regional and state economic development agencies; and/or engage in other aspects of technology transfer such as negotiating licensing or equity agreements. These positions also provide outreach services such as training and education to university faculty and students in related activities.

Physicians and Dentists:

While defined separately under NC General Statute 126-5(cl)(8), positions whose required qualifications meeting

    the licensing standards for Physicians and Dentists in the State of North Carolina will be classified as IRPS.

*[Supersedes Policy 300.2.5[G] originally entitled "Guidelines on Interpreting General Statute, § 126-5(c1)(8): Instructional and Research Staff Exempt from the State Personnel Act"]

This is a rewrite of Administrative Memorandum #364[3]

---

[1] "Faculty" positions at the North Carolina School of Science and Mathematics are those positions which are subject to its Regulations on Faculty Employment. Positions directing staff that qualify as "Faculty" also qualify as "Faculty."

[2] Positions directing staff that qualify as "Instructional" also qualify as "Instructional." Positions directing staff that qualify as "Research" also qualify as "Research."

[3] The section of Administrative Memorandum #364 related to the application of guidelines on interpreting North Carolina General Statute § 126-5(c1)(8): Instructional and Research Staff Exempt from the State Personnel Act has been rewritten as Regulation #300.2.5.1[R].

Page 8 of 8