# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CIVIL ACTION NO: 1:20-CV-1072

MARTHA HOELZER and all
similarly situated individuals,

      Plaintiff,

      v.

DANIEL LEBOLD, in his
individual capacity,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)

**PLAINTIFF'S RESPONSE
IN OPPOSITION TO
DEFENDANT'S
MOTION FOR JUDGMENT
ON THE PLEADINGS**

**Fed. R. Civ. P. 12(c)**

COMES NOW the Plaintiff and shows this Court the following reasons why Defendant's Motion for Judgment on the Pleadings based on Defendant's asserted affirmative defense of "qualified immunity" should be denied:

## ARGUMENT

Defendant argues that Plaintiff's due process claim against Defendant should be dismissed because Defendant claims qualified immunity. He claims this immunity because he states, but only in his motion, not his Answer, that he relied upon a Board of Governors ("BOG") policy manual provision which designated development positions as exempt from the protections of Chapter 126 of the North Carolina General Statutes. As a result of this reliance, he asserts that he reasonably believed that Plaintiff was not a career State

employee. He further claims that his belief was the reason that Plaintiff (and countless of other similarly situated employees) has been denied her rights to due process.

In fact, Defendant's reliance on a classification of Plaintiff as exempt based on a BOG policy manual was not reasonable, and there is no colorable argument that at the time of her discharge that Plaintiff (and other similarly misclassified employees) was exempt. State law regarding the definition of a Career State employee was clearly established in 2016 and in 2019 at the time the constitutional injury occurred. Federal law was likewise well established that for career State employees with a property interest in continued employment, Plaintiff and those similarly situated to her were entitled to both pre-deprivation and post-deprivation due process under the U.S. Constitution.

## Summary of the Relevant Facts
### for the Qualified Immunity Argument

In December 2015, Hoelzer applied to work for UNC Global Organization at UNC-Chapel Hill. DE4 ¶ 25 At the end of May 2016, UNC Global offered Hoelzer the position. DE4 ¶ 9 Hoelzer started working for UNC Global at the end of August 2016 and was told that she was exempt from the protections of the State Human Resources Act. DE4 ¶52 Plaintiff was terminated on February 22, 2019, and told she was "exempt" and therefore

not entitled to appeal her termination. DE4 ¶135  She was not provided with any pre-termination or post-termination due process. DE4 ¶152

**Legal Standard for Motion for Judgment on the Pleadings**

In this district, the law on evaluating a Rule 12(c) motion is settled and plentiful. In evaluating a Rule 12(c) motion, the Court considers only the pleadings, (i) taking all factual allegations in the Complaint as true, (ii) taking all factual allegations in the Answer as "true only where and to the extent they have not been denied or do not conflict with the [C]omplaint," and (iii) drawing all reasonable inferences in favor of the nonmoving party. *Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011) (quoting *Jadoff v. Gleason*, 140 F.R.D. 330, 331 (M.D.N.C. 1991)). "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." *Smith v. McDonald*, 562 F. Supp. 829, 842 (M.D.N.C. 1983), *aff'd*, 737 F.2d 427 (4th Cir. 1984), *aff'd,* 472 U.S. 479 (1985).

I.    **The Evaluation of a Qualified Immunity Affirmative Defense is a Two-Pronged Inquiry.**

In *Ridpath v. Bd of Gov of Marshall Univ.*, 447 F.3d 292 (4th Cir. 2006), the Court considered whether the defendant university administrators were

3

entitled to qualified immunity with regard to plaintiff's due process liberty claims. *Id.* at 307 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573 and n.12 (1972)). The Court found the inquiry to be two-pronged: first, did the plaintiff sufficiently allege a violation of a Fourteenth Amendment right and second, whether at the time of the alleged conduct, was the right "a clearly established one of which a reasonable person would have known." *Id. Accord Pearson v. Callahan,* 555 U.S. 223, 232, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). *See also Booker v. S.C. Dep't of Corr.,* 855 F.3d 533, 538 (4th Cir. 2017) ("Courts have discretion to take these steps in either order.") (citing *Pearson,* 555 U.S. at 236)).

The Court determined that the action taken by the administrators did implicate the employee's liberty interest, satisfying the first part of the inquiry. In evaluating the second prong of the inquiry, the Court noted the following:

> As the Court explained, a constitutional right is clearly established when "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." That is, "'in the light of pre-existing law the unlawfulness must be apparent,'" but "the very action in question [need not have] previously been held unlawful," because "'general statements of the law are not inherently incapable of giving fair and clear warning, and ... a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question.'" Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." The "salient question" is whether the state of the law at the time of the events in question gave the officials "fair

4

warning" that their conduct was unconstitutional.

*Id.* at 313 (citations and quotations omitted). The Court noted that the law was settled: "decided decades earlier . . . the Supreme Court recognized the 'notice and an opportunity to be heard are essential' when a public employee's liberty interest is infringed by a charge" implicating the employee's reputation." *Id.* at 314 (citing *Roth* and multiple cases in which the Fourth Circuit had given "concrete examples of the types of public statements" that violated an employee's liberty interest).

In the case at bar, the classification of Plaintiff as "exempt" from the protections of the State Human Resources Act in 2016 and her termination as "exempt" in 2019 were intended to and did deprive her of exactly the pre-deprivation and post-deprivation due process that a career State employee was entitled to under Chapter 126. *See Soles v. City of Raleigh Civil Service Comm'n*, 345 N.C. 443, 446-47, 480 S.E.2d 685, 687 (1997) (rejecting a municipal employee's claim that he was entitled to have the city's personnel policy incorporated into his employment contract, which would provide him with a property interest and therefore the rights to due process comparable to those provided State employees provided in Chapter 126 of the General Statutes). The *Soles* Court cited to *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491, 84 L.Ed.2d 494, 501 (1985) for the

5

proposition that "[w]hether an individual has a constitutional right to due process protection with respect to an occupation depends on whether that individual possesses a property interest or right in continued employment." *Soles,* 345 N.C. at 448, 480 S.E.2d at 688. The Court noted that Chapter 126 "is, by statute, a part of each qualifying state employee's contract." *Id.* The Court also noted that the United States Supreme Court "had stated that retaining employment is an important private interest" and that "'[s]ubstantial weight must therefore be accorded [the employee's] interest in retaining the employment in which he possessed a constitutionally protected property right'." *Id.* [citation omitted]. Thus, as long ago as 1997, public employers in North Carolina were on notice that the appropriate classification of employees as having a property interest in employment was critical. Defendant as much as acknowledges that correctly distinguishing between exempt and non-exempt employees was of paramount legal significance by citing *Wang v. UNC- CH Sch. of Med.*, 216 N.C. App. 185, 202, 716 S.E.2d 646, 657 (2011) (holding when the employee is an exempt State employee under N.C. G.S. § 126-5, she lacks "a property interest in her continued and future employment" but when non-exempt she has a property interest" entitling her to due process).

In making the decision to classify Plaintiff as exempt from Chapter 126,

Defendant knew or should have known that Chapter 126 plainly stated that the only university employees exempt from the due process protections contained therein and under duly promulgated rules providing for those protections were the following:

- "[i]nstructional" staff of "[t]he University of North Carolina" under N.C. G.S. § 126-5(c1)(8),

- "research" staff of "[t]he University of North Carolina" under N.C. G.S. § 126-5(c1)(8);

- "information technology professionals" of "[t]he University of North Carolina" under N.C. G.S. § 126-5(c1)(8);

- "physicians" of "[t]he University of North Carolina" under N.C. G.S. § 126-5(c1)(8);

- "dentists" of "[t]he University of North Carolina" under N.C. G.S. § 126-5(c1)(8),"faculty of the North Carolina School of Science and Mathematics" under N.C. G.S. § 126-5(c1)(8);

- "[e]mployees whose salaries are fixed[1] under the authority vested in the Board of Governors of [t]he University of North Carolina by the provisions of G.S. 116-11(4), 116-11(5), and 116-14" under N.C. G.S. § 126-5(c1)(9); or

---

[1] This exception is the provision upon which Defendant hangs his hat and is discussed *infra*.

- "[e]mployees of the North Carolina Cooperative Extension Service of North Carolina State University who are employed in county operations and who are not exempt pursuant to subdivision (8) or (9) of this subsection" under N.C. G.S. § 126-5(c1)(9a).

Plaintiff's position fell in none of these categories.

Defendant argues that it was not clearly established under State law that Plaintiff was entitled to be classified as a Career State employee. This argument fails for the reasons pointed out by the Fourth Circuit in *Ridpath*: "the very action in question [need not have] previously been held unlawful" given that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question" and thus "official can still be on notice that their conduct violates established law even in more novel factual circumstances." *Ridpath*, 447 F.3d at 313 [citations omitted].

Moreover, allowing Defendant to focus on each particular position misclassified and whether Defendant knew that that position was clearly subject to the Act would encourage wanton misclassification of employees as exempt, with the intention of avoiding any liability that might arise from those questioning the classification based on willful blindness to the plain language of the statute describing the very few categories of employees exempt from

coverage under Chapter 126. The language of N.C. G.S. § 126-5 could not be clearer as to the categories designated exempt. In *Roncales v. County of Henrico*, 451 F. Supp. 3d 480 (2020), the Court recently considered whether an employer was on notice of the rights of public employees to procedural due process and noted that "[f]or a right to be clearly established, there need not be "'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* at 506 (quoting *Cannon v. Village of Bald Island, NC*, 891 F.3d 489, 497 (4th Cir.) (2018)(which quoted *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). The *Roncales* Court noted that "[c]ase law has long recognized the right to a name-clearing hearing prior to termination of public employment." *Id.* (citing *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990).

In *Fields*, the Fourth Circuit noted that to satisfy constitutional pre-deprivation due process "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 909 F.2d at 97 (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. at 535). In considering the adequacy of post-deprivation due process, "the courts must also examine the postdeprivation remedies provided by a state to determine whether federal due process is satisfied." *Id.* at 98. "This is so because "'t]he [federal procedural

due process] violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983 (1990)).

In *Arnett v. Kennedy,* 416 U.S. 134, 94 S. Ct. 1633, 40 L.Ed.2d 15 (1974), a federal employee argued that prior to his termination he was entitled to a full evidentiary hearing. In rejecting this argument, the United States Supreme Court noted that the precedents in other dissimilar cases requiring pre-termination evidentiary hearings were distinguishable: "[t]he types of 'liberty' and 'property' protected by the Due Process Clause vary widely, and what may be required under that Clause in dealing with one set of interests which it protects may not be required in dealing with another set of interests." *Id.* at 155. In the context of a federal employee's right to procedural due process, the Court upheld the regulatory provisions for pre-termination "notice and opportunity to be heard" in conjunction with the post-deprivation "evidentiary trial-type hearing" together "comport[ed] with [the] procedural due process" required by the Constitution. *Id.* at 142-146, 163-64.

State employees subject to Chapter 126 have also been found to be entitled to procedural due process standards including a pre-termination "notice and opportunity to be heard" and a post-termination "evidentiary trial-

type hearing" such as those provided in State law and administrative regulations. In *Faulkner v. N.C. Dep't of Corr.*, 428 F. Supp. 100 (W.D.N.C. 1977), the court held that "North Carolina General Statutes § 126-35 provides that no permanent employee shall be discharged or suspended except for just cause. This statute creates a reasonable expectation of continued employment and a property interest within the meaning of the due process clause." *Id.* at 103 (citing *Roth*, 408 U.S. at 577 and declining to decide "whether the process must be that required by the statute or whether the sufficiency of the process is to be measured by some other standard" because neither standard had been met. *Id.) Accord Meyers v. N.C. Dept of HHS,* 704 F. Supp. 616, 619 (1987); *Blue v. Etheridge*, No. 93-262-CIV-5-D, 1994 WL 273399, at *6 (E.D.N.C. Jan. 27, 1994). This statutory language creates a "reasonable expectation of continued employment and a property interest within the meaning of the due process clause" of the United States Constitution. *Faulkner*, 428 F. Supp. at 103.

However, in *Loudermill,* the Supreme Court clarified that state statutes and regulations did not control the amount and kind of due process due, but instead clarified that the genesis of due process protections is the Constitution. 470 U.S. at 541 ("In short, once it is determined that the Due Process Clause applies, "the question remains what process is due." [citation omitted.] The

answer to that question is not to be found in the Ohio statute.") In upholding the Ohio law pre-termination and post-termination provisions as providing adequate constitutional due process, the Court explained that pre-termination due process "required notice and an opportunity to respond" and the "opportunity to present reasons, either in person or in writing, why [the] proposed action should not be taken." *Id.* at 546. The Court explained that its "holding rests in part on the provisions in Ohio law for a full post-termination hearing." *Id.* "We conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statute." *Loudermill*, 470 U.S. at 547–48.

Had Plaintiff not been erroneously designated as exempt, as a Career State employee she would have been entitled to the same constitutional procedural due process provisions under State law and the administrative regulations because these provisions, like Ohio law in *Loudermill,* provide for pre-deprivation process and post-deprivation due process that also comport with the required constitutional due process.

Specifically, pre-deprivation procedures which comply with the constitutional requirements are described in State laws and duly adopted regulations. *See* N.C. G.S. § 126-35(a) ("No career State employee subject to the

12

North Carolina Human Resources Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause. In cases of such disciplinary action, the employee shall, before the action is taken, be furnished with a statement in writing setting forth the specific acts or omissions that are the reasons for the disciplinary action and the employee's appeal rights." *See also* 25 N.C.A.C. 01J .0613 (suspensions and dismissals require that "[a]dvance oral or written notice of the appropriate pre-disciplinary conference shall be given to the employee of the time, location, and the issue for which discipline has been recommended. The amount of advance notice shall be as much as is practical under the circumstances . . . ."

In addition, post-deprivation procedures which comply with the constitutional requirements are also described in State laws and duly adopted regulations. *See* N.C. G.S. §§ 126-34.01 ("Any State employee having a grievance arising out of or due to the employee's employment shall first discuss the problem or grievance with the employee's supervisor unless the problem or grievance is with the supervisor. Then the employee shall follow the grievance procedure approved by the State Human Resources Commission. The proposed agency final decision shall not be issued nor become final until reviewed and approved by the Office of State Human Resources. The agency grievance procedure and Office of State Human Resources review shall be completed

13

within 90 days from the date the grievance is filed.") and N.C. G.S. § 126-34.02 ("Once a final agency decision has been issued in accordance with G.S. 126-34.01, an applicant for State employment, a State employee, or former State employee may file a contested case in the Office of Administrative Hearings under Article 3 of Chapter 150B of the General Statutes."). *See also* 25 N.C.A.C. 01J .1302 ("General Agency Grievance Procedure Requirements")

Thus, there is no dispute but that a career State employee had a clearly established right to both pre-termination and post-termination due process at the time Plaintiff was terminated. There is no dispute that Plaintiff was not provided either. The only question raised by Defendants' motion for judgment on the pleadings is whether Plaintiff was a career State employee at the time of her termination.

Defendant argues that he is entitled to qualified immunity because State law was not clear that Plaintiff was a career State employee at the time of Plaintiff's dismissal. But Plaintiff's pleading establishes asserts that she was a career State employee because none of the exceptions in § 126-5 provide for her exemption. Her position was that of a fundraiser or "development officer" in the UNC Global Development office. DE4, ¶¶ 10, 11, 12, 15, 16, 25, 36, 39, 40, 49, 58, 60, 62, 72, 79, 81, 83, 89, 97, 100, 104, 128 (references to development duties and organization). Defendant's argument that it was not obvious or

clearly established on its face that Plaintiff met none of the applicable exceptions at the time of her termination[2] to being a "career State employee" under N.C. G.S. § 126-5(a) is incredible on its face. *Cf.* N.C. G.S. § 126-5(a)(2019) ("The provisions of this Chapter shall apply to: (1*) **All*** State employees not herein exempt . . . .") and N.C. G.S. § 126-5(c1) (2019) (emphasis added). *See Hillis v. Winston-Salem State Univ.*, 144 N.C. App. 441, 443, 549 S.E.2d 556, 557 (2001) (position of occupation therapy program coordinator required teaching duties which exempted employee as "instructional" staff under § 126-5(c1)(8)); *McCallum v. N.C. Coop. Ext Service of NCSU*, 142 N.C. App. 48, 542 S.E.2d 227, *appeal dismissed, review denied* 353 N.C. 452, 548 S.E.2d 527 (2001) (finding that extension agent was "instructional" staff and exempt from Chapter 126). The only way that Defendant can possibly show that Plaintiff was not a Career State employee under N.C. G.S. § 126-5 is to import the Board of Governors ("BOG") policy manual into the contract provisions of Chapter 126. *See Whitesell v. Town of Morrisville*, 446 F. Supp. 2d 419, 423 (E.D.N.C. 2006) ("the Fourth Circuit noted that North Carolina courts have recognized a property interest under North Carolina law when a personnel policy has been enacted as an ordinance or statute.")(citing *Knight v. Vernon*, 214 F.3d 544 (4th Cir.2000) (which cited *Soles* for the proposition that

---

[2] Plaintiff was terminated on February 22, 2019.  DE4 ¶135.

"in North Carolina 'an employer's personnel manual or policies are not part of an employee's contract of employment unless expressly included in that contract'" when rejecting the argument that the City's personnel policies were incorporated into the employee's contract, 345 N.C. at 446, 480 S.E.2d at 687.)

In *McCallum*, the Court noted that under North Carolina law, "[a]n at-will employee has no protected property right in his employment, unless such right is created by statute, ordinance or contract." *Id.* at 56-57, 542 S.E.2d at 234 (citing *Evans v. Cowan*, 132 N.C. App. 1, 6–7, 510 S.E.2d 170, 174 and *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 321, 507 S.E.2d 272, 277 (1998)). *Accord Soles,* 345 N.C. at 448, 480 S.E.2d at 688. While the *McCallum* Court found that the employee in that case was explicitly exempted under Chapter 126, it also noted that "[a] property interest may also be created if there are " 'mutually explicit understandings that support [a] claim of entitlement . . . . ' " *McCallum,* 142 N.C. App. at 57, 480 S.E.2d at 234 (quoting *Woods v. City of Wilmington*, 125 N.C. App. 226, 232–33, 480 S.E.2d 429, 433 (1997) (which quoted *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S. Ct. 2694, 33 L.Ed.2d 570, 580 (1972)). The *Woods* court rejected plaintiff's argument that statements by his superior were sufficient to create a "mutually explicit understanding" in the absence of the superior having the actual authority to make the representations. *Woods,* 125 N.C. App. at 233,

480 S.E.2d at 433-34.

Likewise, in *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S. Ct. 2694, 2699, 33 L.Ed.2d 570, 580 (1972), the Supreme Court made it clear that "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit." In this case, however, Defendant has not alleged that Plaintiff and Defendant had a "mutually explicit understanding" that Plaintiff was exempt as a "senior academic and administrative officer" or that the BOG policy manual was part of Plaintiff's contract with the University. *Id.* ("A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a claim of entitlement to continued employment unless sufficient 'cause' is shown.") *See also Soles,* 345 N.C. at 447, 480 S.E.2d at 687 ("The State Personnel Act is, by statute, a part of each qualifying state employee's contract.")

The BOG UNC Policy Manual 300.1.2(3) is neither a "mutually explicit understanding" between the parties, nor does it comprise a part of the Plaintiff's employment contract. Defendant argues that Plaintiff was properly designated as exempt under the BOG UNC Policy Manual 300.1.2(3) which it argues should be read in conjunction with N.C. G.S. § 126-5(c1)(9)(2019). However this provision exempts only those "[e]mployees

17

whose salaries are fixed under the authority vested in the Board of Governors of The University of North Carolina by the provisions of G.S. 116-11(4), 116-11(5), and 116-14." Thus, the statutory reference must be read to be limited to employees whose salaries are "fixed under the authority vested in the" BOG.

N.C. G.S. § 126-11(4) provides that the BOG shall fix the compensation of the chancellor of each constituent institution elected on the "nomination of the President" of the University. N.C. G.S. § 116-11(5) provides that the BOG shall fix the compensation of "all vice-chancellors, senior academic and administrative officers and persons having permanent tenure" on the "recommendation of the President and the appropriate institutional chancellor." N.C. G.S. § 116-14 provides that the BOG shall fix the compensation of the President of the University system and all employees elected by the BOG on the nomination of the President.

The first problem with Defendant's argument is that the BOG Manual attached to Defendant's motion is not properly considered on Defendant's Rule 12(c) motion. There is no reference to the BOG Manual in the Answer (DE25). Moreover, even if there were, such allegations are deemed denied by the Plaintiff. "For the purposes of this motion [the defendant] cannot rely on allegations of fact contained only in the answer, including affirmative

defenses, which contradict [the] complaint," because "[p]laintiffs were not required to reply to [the] answer, and all allegations in the answer are deemed denied." *Alexander*, 801 F. Supp. 2d at 433 (quoting *Jadoff,* 140 F.R.D. at 332). *Accord Jadoff*, 140 F.R.D. at 332 (citing Fed. R. Civ. P. 8(b)(6), 8(d), and 7(a) ("all allegations in the answer are deemed denied.')

Thus, the question is whether the Complaint and Answer contain sufficient uncontested facts that would allow this Court to find as a matter of law that the Plaintiff was not a career State employee and thus not entitled to due process with regard to her termination as a public employee. In fact, the Complaint and Answer taken together do not establish as a matter of law that Defendant was entitled to qualified immunity when it discharged Plaintiff and failed to provide her with due process required by the U.S. Constitution.

The second problem with relying on the BOG policy Manual to support Defendant's argument for qualified immunity is that there are no uncontroverted factual allegations that the statutory reference in N.C. G.S. § 116-11(5) to "senior academic and administrative officers and persons having permanent tenure" [3] was intended by the General Assembly to include

---

[3] The absence of the Oxford comma creates another ambiguity in the meaning of the statute and can make "proper construction" of a provision "elusive." *See Sourceone, Inc. v. John Zink Co., LLC,* No.

positions such as Plaintiff's nor, assuming such language could be read to include Plaintiff's type of position, whether Plaintiff's compensation was set on the "recommendation of the President and the appropriate institutional chancellor." Even if the BOG policy attempts to amplify the plain language of the statute with additional descriptions such as "other officers of the University having significant administrative responsibilities and duties" and then again amplify that already enhanced description with additional descriptions such as "positions whose primary responsibility is to attract external funds for and/or to market the University," there is no basis for using that additional language in the BOG Manual to exempt Plaintiff from coverage by the explicit contract created by Chapter 126 without some showing that it was in fact part of a contract with Plaintiff. Given the clarity of both State and federal law about the importance of according career State employees with a property interest in their employment, the constitutional due process to which they are entitled, and the attendant risk associated with making a mistake of such import, reliance on the BOG manual provision by Defendant, which was not in any way referenced in any explicit exemption in Chapter 126, nor in any explicit contract with Plaintiff, was

<hr>

3:19-CV-907, 2021 WL 1626256, at *2 n.3 (E.D. Va. Apr. 27, 2021), *appeal dismissed sub nom. Sourceone, Inc. (DE) v. John Zink Co., LLC,* No. 21-1644, 2021 WL 5627105 (4th Cir. June 22, 2021).

clearly not reasonable.. Moreover, the fact that the legislature did not intend to include such a specific category of "positions whose primary responsibility is to attract external funds for and/or to market the University," is clear from its demonstrated ability to amend N.C. G.S. § 126-5(c1)(8) to add "finance professionals, business office professionals, auditor professionals" to the categories of exempt University employees. See NC LEGIS 2021-80 (2021), 2021 North Carolina Laws S.L. 2021-80 (H.B. 602)(Part 1, Sec. 1 amending G.S. 126-5(c1)).

## CONCLUSION

Defendant's motion for judgment on the pleadings should be denied because the exemptions in N.C. G.S. § 126-5(c1) do not include any reference to development officers either in 2016, 2019, or now, and it was not reasonable for Defendant to rely on a BOG policy manual provision which was inconsistent with the clearly stated exemptions in the statute which created Plaintiff's property interest and clearly established the right of career State employees to pre- and post-deprivation due process at the time of Plaintiff's discharge. Defendant is not entitled to qualified immunity.

This 17th day of May 2022.

/S/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM
209 Lloyd Street, Ste 350
Carrboro, North Carolina 27510
Tel:  919-810-3139
Fax: 919-823-6383
NC State Bar No. 13417


/S/ JUNE K. ALLISON
June K. Allison
NEW SOUTH LAW FIRM
233 S. Laurel Avenue
Charlotte, NC  28207
Tel:  704-277-0113
Fax: 919-823-6383
NC State Bar No. 9673

## CERTIFICATE OF COMPLIANCE

I certify that, in accordance with Rule 7.3(d)(1) of the Local Civil Rules of Practice and Procedure, the attached brief (excluding the parts excluded by rule) contains fewer than 6250 words.

This 17th day of May 2022.

/S/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CME/ECF users and counsel of record in this matter.

This 17th day of May 2022.

/S/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM