# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CIVIL ACTION NO: 1:20-CV-1072

MARTHA HOELZER and all
similarly situated individuals,

       Plaintiff,

   v.

THE BOARD OF GOVERNORS OF
THE UNIVERSITY OF NORTH
CAROLINA, THE UNIVERSITY OF
NORTH CAROLINA AT CHAPEL
HILL and RAYMOND FARROW, in
his individual and official capacity,
BARBARA J. STEPHENSON, in her
individual and official capacity,
DANIEL LEBOLD, in his individual
and official capacity, DAVID
ROUTH, in his individual and official
capacity, and DEBBIE DIBBERT, in
her individual and official capacity,

       Defendants.

**DEFENDANT'S BRIEF IN
OPPOSITION TO
HOELZER'S MOTION FOR
CLASS CERTIFICATION**

## Introduction

Plaintiff Martha Hoelzer believes that she is the right plaintiff to

challenge the designation of employees working at the constituent

institutions that make up the University of North Carolina (UNC) as exempt

from the protections of the State Human Resources Act. She is mistaken.

1

Specifically, Hoelzer is asking for certification of a class composed of any former employee of 16 constituent institutions of UNC who was terminated and improperly classified as an exempt State employee. Yet, neither UNC nor any of the 16 constituent institutions are parties to this lawsuit.[1] The only remaining defendant is Daniel Lebold, an employee of the University of North Carolina at Chapel Hill, who is sued in his individual capacity.

In fact, Hoelzer's section 1983 claim against Lebold survived a motion to dismiss because she alleged that Lebold had personal knowledge of and involvement in the alleged deprivation of her due process rights. It is not possible that Lebold could have personal knowledge or involvement in the alleged deprivation of rights of the potential class members. As a result, Hoelzer's motion for class certification should be denied.

---

[1]     The Court has dismissed all of Hoelzer's claims except for her section 1983 due process claim against Lebold in his individual capacity. ECF 24 at 33-34.

## Summary of the Facts

### A.     The University of North Carolina

UNC is a multicampus university. N.C. Gen. Stat. § 116-1(b). Sixteen constituent institutions of higher education make up UNC. *Id.* These institutions are:

1.     the University of North Carolina at Chapel Hill,

2.     North Carolina State University at Raleigh,

3.     the University of North Carolina at Greensboro,

4.     the University of North Carolina at Charlotte,

5.     the University of North Carolina at Asheville,

6.     the University of North Carolina at Wilmington,

7.     Appalachian State University,

8.     East Carolina University,

9.     Elizabeth City State University,

10.     Fayetteville State University,

11.     North Carolina Agricultural and Technical State University,

12.     North Carolina Central University,

13.     University of North Carolina School of the Arts,

14.     University of North Carolina at Pembroke,

15.     Western Carolina University, and

3

16.    Winston-Salem State University.

N.C. Gen. Stat. § 116-4.[2]

The Board of Governors of the University of North Carolina governs UNC as set forth in Chapter 116. N.C. Gen. Stat. §§ 116-3, -11(a). In addition, each constituent institution has its own board of trustees. N.C. Gen. Stat. § 116-31.

Neither UNC nor any of the constituent institutions are parties to this litigation. *See* ECF 24 at 33-34.

## B.    North Carolina State Human Resources Act

Under the North Carolina State Human Resources Act, there are three categories of employees: (1) probationary State employees, (2) career State employees, and (3) exempt State employees. *See* N.C. Gen. Stat. §§ 126-1.1, -5.

A probationary State employee is "a State employee who is in a probationary appointment and is exempt from the provisions of the North Carolina Human Resources Act only because the employee has not been

_____

[2]    There is one constituent high school, the North Carolina School of Science and Mathematics. N.C. Gen. Stat. § 116-4. However, Hoelzer's brief appears to references only the 16 institutions of higher education. ECF 30 at 1, 6.

Case 1:20-cv-01072-LCB-LPA    Document 35    Filed 05/23/22    Page 4 of 30

continuously employed by the State for" the 12 preceding months. N.C. Gen. Stat. § 126-1.1(b).

A career State employee is an employee "in a permanent position" who has been "continuously employed" "for the immediate 12 preceding months." N.C. Gen. Stat. § 126-1.1(a).

An exempt State employee is an employee covered by one of the exceptions listed in section 126-5. If an employee is exempt, then the provisions of the State Human Resources Act do not apply to the employee. N.C. Gen. Stat. § 126-5.  In addition, if an employee disputes whether he "is subject to the provisions of" the State Human Resources Act, "the dispute *shall* be resolved as provided in Article 3 of Chapter 150B." N.C. Gen. Stat. § 126-5(h) (emphasis added).

In 2016, UNC-Chapel Hill posted the position of Assistant Director of Development-Global Programs. Decl. of Butler ¶ 5. This posting indicated that the position was exempt from the State Human Resources Act. Decl. of Butler Ex. A at 1. In August 2016, UNC-Chapel Hill hired Hoelzer as a development officer. Am. Compl. ¶¶ 49, 52, ECF 4. Her appointment letter explained that her position was at-will consistent with the "policies for EHRA[3] Non-Faculty employees." Decl. of Butler ¶ 6; *see also* Am. Compl. ¶

---

[3]      "EHRA" stands for Exempt from State Human Resources Act.

52. Regardless, Hoelzer argues that she should be considered a career State employee. Am. Compl. ¶ 151.

### C. Plaintiff's section 1983 due process claim

As an Assistant Director of Development, Hoelzer reported directly to Daniel Lebold who was the Director of Development. Decl. of Lebold ¶¶ 3, 6. After Hoelzer had worked for Lebold for approximately two-and-a-half years, he terminated her. Am. Compl. ¶¶ 25, 135. Lebold gave Hoelzer a letter that explained her at-will appointment was ending and that she would be given 90 days of salary in lieu of advanced notice. Decl. of Butler Ex. C.

While Lebold disagrees, Hoelzer claims that her termination violated her due process rights because she was not provided with the procedural protections that apply to career State employees under the State Human Resources Act. Am. Compl. ¶¶ 149-54. The Court has determined that Hoelzer has alleged facts sufficient to state a due process claim against Lebold. ECF 24 at 15.[4]

The only claim pending before the Court is Hoelzer's due process claim against Lebold in his individual capacity. ECF 24 at 34. Based on this claim, Hoelzer is asking the Court to certify a class that is composed of all former

---

[4] Lebold has filed a motion for judgment on the pleadings that argues he is entitled to qualified immunity. ECF 27-28.

6

employees of 16 constituent institutions who were classified as exempt State employees and terminated. ECF 29.

## Question Presented

I.    Whether a class of all former exempt State employees of 16 constituent institutions of UNC should be certified when the only defendant is an employee of UNC-Chapel Hill sued in his individual capacity?

## Argument

## Legal Standard for Class Certification

Under Rule 23(a), class certification may be proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If a plaintiff satisfies all the Rule 23(a) requirements, then the plaintiff must show that class certification is proper under one of the subdivisions of Rule 23(b).

Here, Hoelzer is seeking certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Hoelzer's motion for class certification should be denied because she has not established "by a preponderance of the evidence that the action complies with each part of" Rule 23(a) and 23(b)(3). *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 405 (E.D. Va. 2015) (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 931 (4th Cir. 2015) (Agee, J. dissenting)).

## Summary of the Argument

Hoelzer's motion for class certification should be denied for at least four reasons.

First, a class action allows individuals who have suffered the same injury to sue the same defendant as a group. Here, Lebold could not have caused harm to the potential class members because he has only terminated Hoelzer and only works for UNC-Chapel Hill.

Second, Hoelzer's proposed class is not ascertainable because at least four different fact-specific inquiries will have to be conducted to identify the potential class members.

Third, the proposed class does not satisfy the requirements of Rule 23(a). Specifically:

- The class cannot be sufficiently numerous because Lebold has only supervised nine employees and has only terminated Hoelzer.

8

- The class members all have different injuries because the process that they would be entitled to is linked to the reason for their termination.

- Hoelzer's claim is not typical of her proposed class because she worked for only one of the 16 institutions and is the only person Lebold terminated.

- Hoelzer cannot adequately represent the class because she does not share the same legal and factual positions with the potential class members.

Finally, the requirements of Rule 23(b)(3) are not satisfied because individual questions of law and fact will predominate over common questions. For these reasons, Hoelzer's motion should be denied.

## I. Hoelzer's proposed class should not be certified because Lebold could not have harmed the potential class members.

Generally, a class action allows "persons who have suffered a wrongful injury, but are too numerous for joinder of their claims alleging the same wrong committed by the *same defendant or defendants* to be feasible, to obtain relief as a group, a class as it is called." *Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014) (emphasis added).

Here, Hoelzer is asking the Court to certify a class of all former exempt State employees of 16 constituent institutions of UNC. Yet, neither UNC nor those constituent institutions are defendants. ECF 24 at 34. The only defendant is Lebold. *Id.* Thus, for the Court to certify this class, Lebold would have had to wrong all the potential plaintiffs. *See Eubank*, 753 F.3d at 719.

The facts do not support an inference that Lebold has harmed all of the potential plaintiffs. Lebold is the director of development for UNC Global, which supports the global activities of UNC-Chapel Hill, like global internships. Decl. of Lebold ¶¶ 3-4. Lebold currently oversees two employees. Decl. of Lebold ¶ 5. While he makes recommendations about who to hire as his direct reports, he does not ultimately decide to make the offer of employment. Decl. of Lebold¶ 8. Further, in his time as director, Lebold has terminated only one employee: Martha Hoelzer. Decl. of Lebold ¶ 6.

These facts are insufficient to show that Lebold caused the same injury, much less any injury, to all the potential class members. As the Court has explained, "to sufficiently allege personal liability under § 1983, a plaintiff must assert [that] a defendant acted directly in violating the plaintiff's constitutional rights." ECF 24 at 14 (quoting *Miller v. Union Cnty. Pub. Schs.*, No. 3:16-cv-00666, 2017 WL 3923977, at *7 (W.D.N.C. Sept. 7, 2017)). This means that for Lebold to injure the potential plaintiffs, he must have

10

been involved and had personal knowledge of the alleged depravation of each of their rights. *See* ECF 24 at 15.

There is no indication that Lebold could have personal knowledge or any involvement in the potential deprivation of due process rights of anyone other than his direct reports. Lebold has only terminated one employee: Hoelzer. Decl. of Lebold ¶ 6. Thus, Lebold has not committed the same wrong against the other potential class members.

For these reasons, the Court should deny Hoelzer's motion for class certification.

## II. Even if a class could be certified against Lebold, the motion for class certification still fails because the class is not ascertainable.

Even if Lebold could have injured all the potential plaintiffs, Hoelzer's motion for class certification would still fail because the proposed class is not ascertainable.

To be ascertainable, a court should be able to "readily identify the class members in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). This does not mean that a plaintiff must have a list of every class member to obtain certification. *Id.* But, "extensive and individualized fact-finding or 'mini-trials'" should not be required to identify

class members. *Id.* (quoting *Marcus v. BMW of N. Am. LLC*, 687 F.3d 586, 592 (3rd Cir. 2012)).

Here, the proposed class is not ascertainable because extensive fact-finding will be required to identify the members of the class. Specifically, mini-trials will be needed to resolve at least four separate issues.

First, there will need to be a determination of whether a former employee of a constituent institution was "hired into a permanent position[] and had twelve months of service." ECF 30 at 1-2. While this inquiry may seem simple at first, it will likely be fact intensive.

For instance, there will need to be a determination about how to treat certain time-limited appointments. *See* 25 N.C. Admin. Code 1C.0402. A time-limited appointment is an appointment for a fixed period. This would occur if a research assistant agreed to work in a position that was funded for only 18 months. This employee would have more than 12 months of service, but likely would not have a permanent position. *See id.*

However, Hoelzer might disagree with this assessment or might advocate for a different result if the time-limited position lasted for more than three years. *See id.* In addition, the parties would likely disagree over how to treat an employee who held multiple time-limited positions for more

12

than three-years. Thus, a court will need to resolve these issues and possibly others before the parties are able to identify potential class members.

The second determination will be whether the former employee who held a permanent position was properly classified as exempt from the provisions of the State Human Resources Act under sections 126-5(c1)(8), (9), or (9a). ECF 30 at 2-3.[5] To do so, a court will have to review position descriptions for each of the former employees and evaluate whether that person was properly in a position that is exempt from the provisions of the State Human Resources Act under section 126-5(c1)(8), (9), or (9a).

This evaluation will be similar to the fact-specific inquiry in *EQT*, where a court would have to review deeds from different counties to determine who owned land. 764 F.3d at 359. As a result of this fact-specific inquiry, the Fourth Circuit held that resolving ownership issues based on land records was "a significant administrative barrier to ascertaining the ownership class." *Id.*

---

[5]     When discussing Rule 23(b)(3), Hoelzer acknowledges that there will need to be "individual inquiries" to evaluate "the particular position in which each proposed class member worked and whether that position fell under a then-applicable statutory exemption from the definition of career State employee." ECF 30 at 17.

Here, a court will have to review job descriptions from 16 institutions, what the former employee actually did, the version of section 126-5 applicable at the time of the job posting, and evaluate whether that position should have been classified as exempt from the State Human Resources Act.[6] This fact-intensive inquiry also requires a legal determination that poses "a significant administrative barrier" to ascertaining the class members. *EQT*, 764 F.3d at 359.

Third, there will have to be an evaluation of whether the former employee was terminated. ECF 30 at 3. Again, this will be a fact-specific inquiry.

For instance, some employees may have been given the opportunity to resign instead of being terminated. Others may have retired early instead of being terminated. It is unclear whether employees in these situations should be considered terminated. Further, other employees may have been terminated because they simply stopped showing up for work without resigning. *See* 25 N.C. Admin Code 1C.1006. Thus, a court will have to separately evaluate the circumstances of each employee's separation to determine if the employee was terminated.

---

[6] This inquiry could also raise collateral-attack issues if the former employee has already challenged her exempt designation under section 126-5(h).

Finally, there will need to be an evaluation of whether the employee was provided with any pre or post-termination due process. ECF 30 at 3. This inquiry will require a fact-specific review of the policies and procedures from each of the 16 institutions, as well as the circumstances surrounding each separation.

At least some of the 16 institutions have policies that provide exempt State employees with appeal rights under certain circumstances. *See, e.g.*, *EHRA Non-Faculty Grievances*, Policy Manual Appalachian State University, https://policy.appstate.edu/EHRA_Non-Faculty_Grievances (last visited May 18, 2022); *REG 05.25.06 EHRA Non-Faculty Employee Reviews and Appeals*, NC State Policies Regulations and Rules, https://policies.ncsu.edu/regulation/reg-05-25-06/, (last visited May 18, 2022); *102.1 Policy for EHRA Non-Faculty Employees*, Policies and Procedures, https://www.wssu.edu/about/offices-and-departments/legal-affairs/policies-and-procedures/chapter-100-personnel-policies/102-ehra-employees/102.1.html (last visited May 18, 2022). Initially, each of these policies will need to be reviewed to determine if they provide adequate due process to exempt State employees. Then, it will have to be determined if any of the potential class members took advantage of or could have taken advantage of these appeal rights. These fact specific inquiries present "a

15

significant administrative barrier" to ascertaining the class members. *EQT*, 764 F.3d at 359.

In sum, Hoelzer's proposed class would require at least four separate, fact-specific inquiries that present a significant barrier to ascertaining the class members.[7] Given all of these issues with ascertaining the class, the motion for class certification should be denied.

## III. Hoelzer's proposed class does not satisfy the requirements of Rule 23(a).

Even if Holezer had defined an ascertainable class that could be certified against Lebold, her motion would still fail because the proposed class does not satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure.

Under Rule 23(a), a class should be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[7] This ascertainability issue likely relates to the fact that Hoelzer has defined the class as a fail-safe class. A "fail-safe class 'is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'" *EQT*, 764 F.3d at 360 n.9 (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir.2012)).

Fed. R. Civ. P. 23(a). As explained below, none of these prerequisites are satisfied.

### A. It is possible to join every potential plaintiff Lebold could have harmed.

Hoelzer claims that she satisfies the numerosity requirement because there are "around 50 and possibl[y] 100 potential" plaintiffs "each year." ECF 30 at 9. There are two flaws in Hoelzer's argument.

First, Lebold could not have harmed 50 to 100 potential plaintiffs each year. Lebold currently supervises two employees. Decl. of Leblod ¶ 5. He has only supervised a total of approximately nine different people. Decl. of Lebold ¶ 6. Of those nine employees, Hoelzer is the only person he terminated. Decl. of Lebold ¶ 6.

Hoelzer is already a party to this lawsuit. If the eight other employees needed to be joined for some unforecasted reasons, it would be feasible to join them. *See, e.g.*, *Williams v. Henderson*, 129 Fed. Appx. 806, 811 (4th Cir. 2005) (affirming denial of class certification when there were 8 potential plaintiffs). Thus, the class is not so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 26(a)(1).

Second, even if individuals who were not harmed by Lebold could be plaintiffs in this action, Hoelzer's estimate overstates the number of potential

17

plaintiffs. Her estimate is based on the assumption that every non-faculty employee classified as an exempt State employee is improperly classified. ECF 30 at 8-9, ECF 30-1. That simply cannot be the case.

Even in her class definition, Hoelzer acknowledges that certain non-faculty employees are properly classified as exempt State employees. *See* ECF 30 at 2. For example, she specifically lists research staff and information technology professionals as employees who would be properly classified as exempt. *Id.* Yet, she makes no effort to exclude these properly classified individuals from her estimate of potential plaintiffs. ECF 30 at 8-9.

To attempt to exclude these individuals, Hoelzer could have pulled the publicly available salary information for employees, which includes the employee's job title. She did not do this.

With respect to UNC-Chapel Hill, on October 31, 2020, there were 2654[8] exempt State employees who were non-faculty. Decl. of Scupin ¶ 6. Of these 2654 employees, 274 were IT professionals and 665 were research staff. Decl. of Scupin ¶ 6. This means that at least 939 employees are properly classified according to Hoelzer. If we remove these properly classified employees from the overall number of exempt State employees, that number

---

[8]    This number is substantially similar to the 2658 employees listed on page 21 of exhibit 1 to Hoelzer's motion. ECF 30-1 at 21.

decreases by 35% (939/2654) to 1715. This demonstrates that Hoelzer is overestimating the number of potential plaintiffs by assuming that every exempt State employee is misclassified.

If other institutions are similar to UNC-Chapel Hill, then potentially 35% of the 10,679 exempt State employees could be properly classified. If that is the case, then there would be 6941 potentially misclassified employees. Using Hoelzer's termination rate of 0.05% to 1.1%[9] that means there are possibly 3 to 76 potential plaintiffs each year.

For these reasons, Hoelzer has failed to demonstrate that the potential class is numerous.

## B. The potential plaintiffs have not all suffered the same injury.

Hoelzer asserts that the commonality requirement is met because "all of the proposed class members have in common the fact that their positions did not meet any of the statutory exclusions for career State employees after one year of employment." ECF 30 at 10-11. Hoelzer's argument misses the mark.

Hoelzer acknowledges that under *Wal-Mart Stores, Inc., v. Dukes*, the commonality requirement is satisfied when a plaintiff demonstrates "that the

---

[9] ECF 30-1 at 1.

class members 'have suffered the same injury.'" 564 U.S. 338, 350 (2001) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)); *see also* ECF 30 at 10 (quoting *Dukes*). Class members do not suffer the same injury simply because they "have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350. Rather, the claim must depend on a "common contention" that "must be of such a nature that it is capable of classwide resolution." *Id.*

Here, the common injury must be the deprivation of due process at the time of termination. *See* ECF 24 at 12. In fact, the Court previously evaluated whether the harm under Hoelzer's due process claim was the alleged improper exempt classification or the termination without due process. ECF 24 at 11-12. The Court determined that the section 1983 injury occurred when Hoelzer was terminated "without due process." ECF 24 at 12.[10]

Hoelzer's brief acknowledges that termination is insufficient to satisfy the commonality requirement because class members might have "different bases for appealing their termination." ECF 30 at 11. This is significant because a career State employee's appeal rights are tied to the reason for

---

[10]    If the Court agrees that the common issue is whether the employee was improperly classified, there will still be individual factual issues. Under section 126-5(h) of the North Carolina General Statutes, if an employee disputes his exempt classification, he must appeal his classification under Article 3 of Chapter 150B of the General Statutes.

termination. *See* N.C. Gen. Stat. § 126-34.02(b)(3). Thus, there is no common contention that is capable of classwide resolution. *See Dukes*, 564 U.S. at 350.

### C. Hoelzer's claim is not typical of the claims of the potential class.

Hoelzer contends that her claim is typical because all class members share the common question of whether they were improperly classified as exempt State employees. ECF 30 at 12. Contrary to Hoelzer's assertion, her claim is nontypical for at least two reasons.

First, Hoelzer will be focused on facts and circumstances that are unique to her. When that is the case, the typicality requirement is not met. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340-44 (4th Cir. 1998) (analyzing typicality).

As previously discussed, Hoelzer is the only employee that Lebold has terminated. Decl. of Lebold ¶ 6. The facts and circumstances surrounding Hoelzer's termination, like what was said to her by Lebold and the other member of HR, will be unique to her. Further, this information will be irrelevant to the other potential class members because Lebold did not terminate them. As a result, Hoelzer's claim cannot be typical of the class.

Second, Hoelzer's claim as a former employee of UNC-Chapel Hill will be different from the claims of former employees of other institutions.

Case 1:20-cv-01072-LCB-LPA   Document 35   Filed 05/23/22   Page 21 of 30

For example, in *Payton v. County of Carroll*, typicality was not present when each county independently decided its bond fees because "a court would have to examine" "individualized factors" with respect to each county. 473 F.3d 845, 854 (7th Cir. 2007).

The same is true here. The various institutions provide exempt State employees with appeal rights. However, the appeal rights that UNC-Chapel Hill provided Hoelzer with are not the same as the appeal rights granted by other institutions. *Compare* EHRA Non-Faculty Grievance Policy of the UNC-Chapel Hill section 6, https://hr.unc.edu/wp-content/uploads/sites/222/2017/08/EHRA-Grievance-Policy-2017.pdf *with* POL 05.25.03 "What can be reviewed", NC State, https://policies.ncsu.edu/policy/pol-05-25-03/. Thus, Hoelzer's claim will present facts and circumstances that are unique to her as a former employee of UNC-Chapel Hill that are not typical of former employees of other institutions.

For these reasons, Hoelzer's claim is not typical of the claims of the proposed class.

### D.     Hoelzer will not adequately represent the class.

Hoelzer asserts that she is an adequate class representative because she has "the same interests as all other class members: recovering damages

22

from being discharged and deprived of their property interest in their employment as a career State employee without any pre-deprivation or post-deprivation due process." ECF 30 at 13-14. Hoelzer is an inadequate representative.

A class representative is inadequate if all the class members do not share "common objectives and the same factual and legal positions." *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010).

As previously explained, Hoelzer's claim is unique.

- She is the only employee that Lebold has terminated. Decl. of Lebold ¶ 6.

- Her appeal rights as a former employee of UNC-Chapel Hill will be different from the appeal rights provided by other UNC institutions. *See supra* III(C).

- Finally, the reason for her termination will not be the same as the reason all the other potential class members were terminated. *See supra* III(B).

These differences demonstrate that Hoelzer does not share a "common objective" with the potential class members. As a result, Hoelzer is not an adequate class representative.

*        *        *

For all of these reasons, Hoelzer's proposed class does not satisfy the requirements of Rule 23(a).

## IV.    Hoelzer's proposed class does not satisfy the requirements of Rule 23(b)(3).

Even if Hoelzer's proposed class satisfied the requirements of Rule 23(a), her motion would still fail because she has not satisfied the requirements of Rule 23(b)(3).

Under Rule 23(b)(3), a court can certify a class if the "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Hoelzer's proposed class does not satisfy either of these requirements.

### A.    Individual issues predominate over common issues.

Hoelzer acknowledges that at least two individual questions will predominate over common questions.

First, Hoelzer acknowledges that some employees' "claims may involve some individualized assessment of damages." ECF 30 at 16. However, she argues that this individualized issue should not prevent class certification. *Id.* Hoelzer is mistaken.

24

Even if the individualized issue is related to damages, the class should not be certified. In *Comcast Corp., v. Behrend*, the Court held that a class was improperly certified under Rule 23(b)(3) because "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." 569 U.S. 27, 34 (2013); *see also Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 621-22 (8th Cir. 2021).

Here, Hoelzer admits that there will need to be individual determinations about damages. ECF 30 at 16. This is unsurprising. For example, a court will have to determine if a class member mitigated his damages. In addition, a court will have to evaluate whether the class member would have been terminated even if he were provided with the same due process as a career State employee. These individual determinations will likely overwhelm any question common to the class. Thus, a Rule 23(b)(3) class should not be certified.

Second, Hoelzer admits that individualized inquiries "may be required" to evaluate the "particular position in which each proposed class member worked and whether that position fell under a then-applicable statutory exemption from the definition of career State employee, and thus whether they were properly designated as exempt and lacking a property interest in their employment." ECF 30 at 17. As explained above, evaluating position

descriptions from 16 different institutions and the applicable version of section 126-5 to determine if an employee was properly classified as an exempt State employee will be fact intensive. *See supra* II. Further, this inquiry may present issue preclusion, claim preclusion, or collateral attack issues because a former employee could have already challenged her exempt designation. *See* N.C. Gen. Stat. § 126-5(h).

Hoelzer attempts to avoid this result by citing cases for the proposition that the Rule 23(b)(3) predominance requirement is met "when [the] defendant has implemented a common, uniform policy." ECF 30 at 16. This explanation falls short.

It is not enough to have a common policy. Rather, the common policy must cause the harm. *See MacGregor v. Farmers Ins. Exch.*, No. 2:10-CV-03088, 2011 WL 2981466, at *2-3 (D.S.C. July 22, 2011).

Here, the policy relied on by Hoelzer has not harmed the potential class members due process rights. Any potential harm here would have been caused by the termination and procedures offered at that time. ECF 24 at 12; *see also Goichman v. City of Aspen*, 590 F. Supp. 1170, 1173 (D. Colo. 1984), *aff'd and remanded*, 859 F.2d 1466 (10th Cir. 1988) (noting that due process liability depends upon the procedure afforded each potential class member).

Thus, even though UNC has a policy, it is the amount of procedure surrounding the termination—not the policy—that causes the harm.

This leads us to yet another fact specific inquiry: whether the terminated employee was provided with adequate process. As previously explained, the various institutions do provide exempt State employees with appeal rights. *See supra* II. In addition, the institutions have their own separate policies that address these rights. Thus, there will need to be a determination of whether the terminated employee had access to appeal rights that provided the employee with adequate due process.

For these reasons, individualized questions of law and fact will predominate over common questions.

## B.    A class action is not the superior method of adjudicating this dispute because of the individual issues that will arise.

Hoelzer asserts that a class action is a superior method for litigating this matter as opposed to individual lawsuits filed by each class member. ECF 30 at 17. That is not the case.

When, as here, individual issues predominate over common issues, a class action is not a superior method of trying a case. *See, e.g.*, *In re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D. Cal. 2003). This is because individual issues make it difficult to manage the class litigation.

27

Here, some of the individual issues include the reason for the employee's termination, what procedure the employee may have been afforded, whether the employee's classification was correct, and if the employee attempted to mitigate her damages. Due to these individual issues, a class action is not a superior method for litigating this matter.

\* \* \*

For these reasons, Hoelzer's proposed class does not satisfy the requirements of Rule 23(b)(3).

## Conclusion

For all the reasons explained above, Hoelzer's motion for class certification should be denied.

This 23rd day of May, 2022.

JOSHUA H. STEIN
Attorney General

 /s/ Kenzie M. Rakes
Kenzie M. Rakes
Assistant Attorney General
NC State Bar No. 46349
krakes@ncdoj.gov

North Carolina Department of Justice
PO Box 629
Raleigh, NC  27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorney for Defendant*

## CERTIFICATE OF COMPLIANCE

I certify that, in accordance with Rule 7.3(d)(1) of the Local Civil Rules of Practice and Procedure, the attached brief (excluding the parts excluded by rule) contains fewer than 6250 words.

This 23rd day of May, 2022.

 /s/ Kenzie M. Rakes
Kenzie M. Rakes
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing

**DEFENDANT'S BRIEF IN OPPOSITION TO HOELZER'S MOTION**

**FOR CLASS CERTIFICATION** with the Clerk of Court using the CM/ECF

system, which will send notification of such filing to all registered CM/ECF

users, including Plaintiff's counsel, Valerie Bateman

(valerie@newsouthlawfirm.com).

This 23rd day of May, 2022.

/s/ Kenzie M. Rakes
Kenzie M. Rakes
Assistant Attorney General

30